**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Jason A. Ibey Esq. (SBN: 284607)
jason@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Counsel On Signature Page]

Attorneys for the Plaintiff and Proposed
Settlement Class

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CARRIE COUSER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED**<br><br>PLAINTIFF,<br><br>V.<br><br>**COMENITY BANK,**<br><br>DEFENDANT. | **Case No.: 12-CV-02484-MMA-BGS**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>**DATE**: October 6, 2014<br>**TIME**: 2:30 p.m.<br>**CRTRM**: 3A<br>**JUDGE**: Hon. Michael M. Anello<br><br>[Declaration of Joshua B. Swigart; Declaration of Abbas Kazerounian; Declaration of Todd M. Friedman; Declaration of Carrier Couser; Declaration of Patrick M. Passarella.] |

*Kazerouni Law Group, APC*
*Costa Mesa, California*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................iii

I.      INTRODUCTION ........................................................1

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY ............2

III.    THE SETTLEMENT ....................................................3

        A. The Settlement Class ..........................................3

        B. Settlement Payment ............................................5

                1. Monetary Award To Class Members....................5

                2. Non-Monetary Award To Class Members..............6

        C. Class Notice ....................................................6

                1. Direct Mail Notice ....................................6

                2. Q & A Notice On Settlement Website..................7

                3. Publication Notice ....................................7

                4. Toll-Free Number ......................................7

        D. Scope of Release ..............................................8

        E. Opportunity To Opt Out And Object..........................8

        F. Termination of Settlement ....................................8

        G. Payment of Notice And Administration Costs ................9

        H. Class Representative's Application For Incentive Award........9

        I.  Class Counsel's Application For Attorneys' Fees And Costs..........10

        J.  Cy Pres Distribution ..........................................10

IV.     LEGAL STANDARDS FOR PRELIMINARY APPROVAL OF A
        CLASS ACTION SETTLEMENT ..................................11

        A. Public Policy Favors Settlement..............................11

        B. Conclusions of Fact And Law Are Not Necessary At This Stage......12

        C. Counsel's Experienced Judgment Hold Considerable Weight..........13

V.      THE PROPOSED SETTLMENT IS FAIR, REASOABLE AND
        ADEQUATE AND SHOULD BE PRELIMINARILY APPROVED ....13

Kazerouni Law Group, APC
Costa Mesa, California

A. Liability Is Highly Contested And Both Sides Face Significant Challenges In Litigation The Case ......................................................13

B. The Agreement To Create A $8,475,000.00 Settlement Fund Provides A Fair And Substantial Class Benefit.................................15

C. The Settlement Was Reached As The Result Of Arm's Length Negotiation With The Court's Assistance .........................................16

D. Experienced Counsel Have Determined That The Settlement Is Appropriate And Fair To The Class .............................................17

E. THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS FOR PURPOSES OF SETTLEMENT .................................17

   1. Numerosity..................................................................................18

   2. Commonality ...............................................................................18

   3. Typicality ....................................................................................19

   4. Adequacy Of Class Representative And Her Counsel...........20

   5. Common Question Predominate Sufficient To Certify A Class For Settlement Purposes Only.....................................20

   6. Class Treatment For Settlement Purposes Is Superior To Individual Resolutions Of Millions Of Lawsuits..................21

   7. The Proposed Method Of Class Notice Is Appropriate .........23

      i. Direct Mail Notice ..............................................................24

      ii. Q & A Notice On Settlement Website..............................24

      iii. Publication Notice...............................................................25

      iv. Toll-Free Number ...............................................................25

      v. Notice Database ..................................................................25

   8. The Court Should Appoint The Class Representative And Class Counsel...............................................................................27

   9. KCC Should Be Appointed Claims Administrator................28

   10. A Final Approval Hearing Should Be Scheduled................28

VI. CONCLUSION...................................................................................28

///

Kazerouni Law Group, APC
Costa Mesa, California

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Woodward,*
  521 U.S. 591 (1997) ........................................................22

*Barani v. Wells Fargo Bank, N.A.,*
2014 U.S. Dist. LEXIS 49838 (S.D. Cal. Apr. 9, 2014) ........................23

*Boyd v. Bechtel Corp.,*
  485 F. Supp. 610 (N.D. Cal. 1979) ........................................13

*Connelly v. Hilton Grand Vacations Co., LLC,*
  294 F.R.D. 574 (S.D. Cal. 2013)...........................................14

*Elkins v. Equitable Life Ins. Of Iowa,*
  1998 WL 133741 (M.D. Fla. Jan. 27, 1998) ................................22

*Glass v. UBS Financial Services, Inc.*
  331 Fed. Appx. 452 (9th Cir. 2009) ........................................10

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998).........................................passim

*Harris v. Palm Springs Alpine Estates, Inc.,*
  329 F.2d 909 (9th Cir. 1964)...............................................18

*Hartless v. Clorox Co.,*
  2011 U.S. Dist. LEXIS 5427 (S.D. Cal. Jan. 20, 2011) ....................26

*In re Global Crossing Sec. and ERISA Litig.,*
  225 F.R.D. 436 (E.D. Pa. 2000) ...........................................15

*In re Mego Fin'l Corp. Sec. Litig.,*
  213 F.3d 454 (9th Cir. 2000).............................................15

*In re Omnivision Tech., Inc.,*
  559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) ...........................15

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.,*
  163 F.R.D. 200 (S.D.N.Y. 1995)...........................................11

Kazerouni Law Group, APC
Costa Mesa, California

*In re Wireless Facilities, Inc. Sec. Litig. II,*

   253 F.R.D. 607 (S.D. Cal. 2008)................................................................17, 20

*Knutson v. Schwan's Home Serv.,*

    2014 U.S. Dist. LEXIS 99637 (S.D. Cal. July 14, 2014) ............................28

*Kirkorian v. Borelli,*

   695 F. Supp. 446 (N.D. Cal. 988) ......................................................... 13

*Lemieux v. Schwan's Home Serv.,*

   2013 U.S. Dist. LEXIS 98735 (S.D. Cal. July, 15, 2013)................................19

*Lerwill v. Inflight Motion Pictures, Inc.,*

   582 F.2d 507 (9th Cir. 1978)................................................................27

*Linney v. Cellular Alaska P'Ship,*

   151 F.3d 1234 (9th Cir. 1998)................................................................13

*Lo v. Oxnard European Motors, LLC,*

   2012 WL 1932281 (S.D. Cal. May 29, 2012) ..................................... 6

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*

   244 F.3d 1152 (9th Cir. 2001)................................................................21

*Malta v. Fed. Home Loan Mortg. Corp.,*

   2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 4, 2013) ....................19, 21, 25

*Marshall v. Holiday Magic, Inc.,*

   550 F.2d 1173 (9th Cir. 1977)................................................................24

*Mullane v. Central Hanover Bank & Trust Co.,*

   339 U.S. 306 (1950) ................................................................23

*National Rural Tele. Coop. v. DIRECTV, Inc.,*

  221 F.R.D. 523 (C.D. Cal. 2004) ................................................................15

*Officers for Justice v. Civil Service Comm'n,*

   688 F.2d 615 (9th Cir. 1982)................................................................11, 12

*Picchi v. World Financial Network Bank,*

   Case No.: 11-CV-61797 (S.D. Florida)................................................................4, 22

**Kazerouni Law Group, APC**
Costa Mesa, California

*Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*,

   323 F. Supp. 364 (E.D. Pa. 1970) ....................................................... 12

*Silber v. Mabon*,

   18 F.3d 1449 (9th Cir. 1994) ............................................................. 23

*Smith v. Microsoft Corp.*,

   2014 U.S. Dist. LEXIS 12799 (S.D. Cal. 2014) ............................... 14

*Staton v. Boeing Co.*,

   327 F.3d 938 (9th Cir. 2003) ............................................................. 20

*Strube v. Am. Equity Inv. Life Ins. Co.*,

   226 F.R.D. 688 (M.D. Fla. 2005) ...................................................... 22

*Torrisi v. Tuscon Electric Power Co.*,

   8 F.3d 1370 (9th Cir. 1993) ............................................................... 24

*Utility Reform Project v. Bonneville Power Admin.*,

   869 F.2d 437 (9th Cir. 1989) ............................................................. 11

*Valentino v. Carter-Wallace*,

   97 F.3d 1227 (9th Cir. 1996) ............................................................. 21

*Vandervort v. Balboa Capital Corp.*,

  2014 U.S. Dist. LEXIS 46174 (C.D. Cal. Mar. 27, 2014) ................. 10

*Wehner v. Syntex Corp.*,

   117 F.R.D. 641 (N.D. Cal. 1987) ...................................................... 19

*West Va. V. Chas. Pfizer & Co.*,

   440 F.2d 1079 (2d Cir. 1971) ............................................................ 12

*Wilson v. Airborne, Inc.*,

   2008 U.S. Dist. LEXIS 1104011 (C.D. Cal. Aug. 13, 2008) ............ 26

*Zincser v. Accufix Research Institute, Inc.*,

   253 F.3d 1188 (9th Cir. 2001),

   *amended*, 273 F.3d 1266 (9th Cir. 2001) ......................................... 21

**Kazerouni Law Group, APC**
Costa Mesa, California

**Kazerouni Law Group, APC**
Costa Mesa, California

**Statutes**

28 U.S.C. § 1715 .................................................................28

47 U.S.C. § 227 ...................................................................2

Cal. Civ. Code § 1542 .........................................................8


**Rules**

Fed. R. Civ. P. 23 .................................................11, 17, 20

Fed. R. Civ. P. 23(a) ..........................................................17

Fed. R. Civ. P. 23(a)(1) ......................................................18

Fed. R. Civ. P. 23(a)(4) ......................................................20

Fed. R. Civ. P. 23(b)(3) ........................................2, 18, 20-22

Fed. R. Civ. P. 23(b)(3)(A), (B), (C) ..................................22

Fed. R. Civ. P. 23(b)(3)(C), (D) .........................................22

Fed. R. Civ. P. 23(c)(2) ......................................................25

Fed. R. Civ. P. 23(c)(2)(B) .................................................23

Fed. R. Civ. P. 23(c)(3) ......................................................23

Fed. R. Civ. P. 23(e) .....................................................10, 23

Fed. R. Civ. P. 23(e)(1)(B) ................................................23


**Other**

5 Moore's Federal Practice,
(Matthew Bender 3d ed.) § 23.165[3] ...............................12

Herbert Newberg, Newberg on Class Actions,
(4th ed. 2002 and Supp. 2004) § 11.25 .............................11

Manual for Complex Litigation (Fourth)
(Fed. Judicial Center 2004) § 21.63 ..................................11

Manual for Complex Litigation (Fourth)
(Fed. Judicial Center 2004) §§ 21.632 .........................11, 12

Manual for Complex Litigation (Fourth)

    (Fed. Judicial Center 2004) §§ 21.632, 21.633 & 21.634 ............................ 11, 12

Manual for Complex Litigation (Fourth)

    (Fed. Judicial Center 2004) § 30.21 ................................................................. 25

S. REP. NO. 102-178 (1991),

    As reprinted in 1991 U.S.C.C.A.N. 1968, 1973 ................................................ 15

**Kazerouni Law Group, APC**
Costa Mesa, California

**Kazerouni Law Group, APC**
Costa Mesa, California

# I.     INTRODUCTION

Plaintiff Carrie Couser ("Plaintiff") submits this motion for preliminary approval of a proposed class action settlement (the "Settlement") of this action (the "Action"), which is unopposed by Defendant Comenity Bank ("Defendant").[1] The terms of the Settlement are set forth in the Settlement Agreement and Release (hereinafter the "Agreement" or "Agr.") filed as Exhibit 1 to the Declaration of Abbas Kazerounian In Support of Preliminary Approval of Class Action Settlement and Certification of Settlement Class ("Kazerounian Decl.").[2]

The proposed Settlement provides for a substantial financial benefit of $8,475,000.00 to the approximately 4.3 to 4.4 million Settlement Class Members. Agr. §§ 2.20, 5.01, 8.02.[3] The $8,475,000.00 Settlement Fund to be paid by Comenity Bank is an "all-in, non-reversionary payment." *Id*. at § 2.20. After the Settlement Costs are deducted from the Settlement Fund, the amounts remaining will be available to pay all Approved Claims. *Id*. at §§ 2.20, 5.01-5.02. Each Class Member who timely submits an approved claim will receive a pro rata award from the Claims Fund dependent upon the total number of approved claims. *Id*. at § 5.02.  In return for payment of the Settlement Fund, Plaintiff, on behalf of the proposed Settlement Class, will dismiss the action and the Settlement Class will unconditionally release and discharge Defendant and other related Released Parties from all claims relating to the action.  *Id*. at § 16.01.

While Plaintiff is confident of a favorable determination on the merits, Plaintiff has determined that the proposed Settlement provides significant benefits to the Settlement Class Members and is in the best interests of the Settlement Class members *Id*. at §§ 3.02 and 3.03; Declaration of Joshua B. Swigart ("Swigart

---

[1] Plaintiff and Defendant are collectively referred to as the "Parties."

[2] Unless otherwise specified, defined terms used in this memorandum are intended to have the meaning ascribed to those terms in the Agreement.

[3] Exhibit 3 (Response to Confirmatoy Discovery: Interrogatory No. 1). All Exhibits are to the declaration of Abbas Kazerounian unless otherwise stated.

Decl"), ¶ 37; *see* Declaration of Carrie Couser ("Couser Decl."), ¶ 4 and 10. Plaintiff also believes that the Settlement is appropriate because Plaintiff recognizes the expense and amount of time required to continue to pursue the Action, as well as the uncertainty, risk, and difficulties of proof inherent in prosecuting such claims. Swigart Decl., ¶¶ 36-38; Couser Decl., ¶ 4; Agr. § 3.03. Similarly, as evidenced by the Agreement, Comenity Bank has stated that although it has substantial and meritorious defenses to Plaintiff's claims, it has determined that it is desirable to settle the Action as set forth in the Agreement. *Id.* at § 3.01.

Accordingly, Plaintiff moves the Court for an order preliminarily approving the proposed Settlement, provisionally certifying the Class pursuant to Federal Rule of Civil Procedure 23(b)(3) ("Rule 23(b)(3)") for settlement purposes, directing dissemination of class notice, and scheduling a final approval hearing. The motion is unopposed by Defendant. *Id.* at § 3.01; *see also* § 1.02. A proposed Preliminary Approval Order and Final Approval Order is filed as Exhibit D and E, respectively, to the Agreement (Agreement is Exhibit 1 to the Kazerounian Decl.). The proposed Settlement satisfies all of the criteria for preliminary approval.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Comenity Bank provides bank account servicing, collection and related services. Compl., ¶ 5. In her Complaint, Plaintiff alleged that in its collection efforts, Comenity Bank violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA") by calling the cellular telephones of account-holders without "prior express consent," using an "automatic telephone dialing system"[4] and/or using an "artificial or prerecorded voice". Compl., ¶¶ 9-15. Plaintiff contends that she and the proposed class are entitled to statutory damages pursuant to the TCPA in the amount of $500 per unlawful call. *Id.* at ¶ 29.

---

[4] *See* Exhibit 2 ( Deposition of Daniel Gervais ("Gervais Depo."), 69:23-70:12, the calls at issue were all debt collection calls placed through Comenity Bank's dialer). Mr. Gervias testified as the Fed. R. Civ. P. 30(b)(6) representative for Comenity Bank. *Id.* at 68:1-7.

Kazerouni Law Group, APC
Costa Mesa, California

1  Comenity Bank has denied and continues to deny that it violated the TCPA, and

2  denies all charges of wrongdoing or liability against it in the Action. Agr. § 1.02;

3  Dkt. No. 4.

4      In February of 2013, counsel for the Parties attended a telephonic Early

5  Neutral Evaluation Conference presided over by Magistrate Judge Bernard G.

6  Skomal (Dkt. No. 9).  With Judge Skomal's guidance, progress was made toward

7  informally determining the parameters of the Class, the number of calls made to

8  persons on cellular phones during the proposed Class period, and consequently the

9  range of potential damages.  Agr. § 1.03.

10     After many months of good-faith negotiations, and three mediation sessions

11  with the Honorable Judge Leo Papas (Ret.), the parties were eventually able to

12  agree on the terms of a settlement agreement. Kazerounian Decl., ¶¶ 6-9; Agr. §§

13  1.03 and 1.04. Plaintiff then conducted confirmatory discovery (including written

14  discovery, and a Fed. R. Civ. P. 30(b)(6) deposition taken on August 21, 2014),

15  confirming the total number of cell phones called, the efficacy of the processes and

16  methodology used by Comenity Bank to assemble the data, and determining the

17  estimated number of class members. Kazerounian Decl., ¶¶ 10-11.  The parties had

18  also conducted informal and formal discovery surrounding Plaintiff's claims and

19  Defendant's defenses. Agr. 1.03; Kazerounian Decl., ¶ 12.

20  **III.   THE SETTLEMENT**

21     **A.    THE SETTLEMENT CLASS**

22     The "Class" or "Settlement Class Members" means the persons in the

23  following definition in the Agreement:

24         All persons whose cellular telephone number's were
25         called by Defendant, released parties, or a third party
           dialing company on behalf of Defendant or the released
26         parties, using an automatic telephone dialing system
           and/or an artificial or prerecorded voice, without consent,
27         from August 1, 2010 through May 26, 2014, excluding
28         those persons whose cellular telephone number/s were

Kazerouni Law Group, APC
Costa Mesa, California

marked with a "wrong number" code in Defendant's database (which persons are included in the putative class in Picchi v. World Financial Network Bank, et al., Case No.: 11-CV-61797, currently pending in the Southern District of Florida.)

Agr. § 2.08.

Excluded from the Class is Defendant, its parent companies, affiliates or subsidiaries, or any employees thereof, and any entities in which any of such companies has a controlling interest; the judge or magistrate judge to whom the Action is assigned; and, any member of those judges' staffs and immediate families, as well as persons who validly request exclusion from the Settlement Class. *Id.*

The "Class Period" is the period of time during which Defendant is alleged to have placed the unlawful telephone calls via an automatic telephone dialing system, ranging from August 1, 2010 through May 26, 2014. *Id.* The Class List consists of Class Members' cell phone numbers prepared by Defendant and provided as part of the settlement process to the Claims Administrator and Class Counsel. *Id.* at § 2.09.

The Class consists of approximately 4.3 to 4.4 million persons, and is not expected to exceed 4.4 millions persons. *Id.* at § 8.02; Gervais Depo., 71:1:-72:2; 72:15-25. The exact number of class members is unknown because Comenity Bank had to recreate data for calls prior to September 2012 (*see* Gervais Depo., 73:9-76:25; Exhibit 3, Response to Interrogatory No. 4); however, the approximate number of Class Members is 4,322,812 with a 95% accuracy rate (*Id.* at 76:2-15; 87:19-88:3; *see also* 79:18-24; 80:7-82:15; Exhibit 3, Response to Interrogatory Nos. 2 and 3). Upon receiving notification from the Claims Administrator (Kurtzman Carlson Consultants or "KCC"), each Settlement Class Member who does not timely and validly request exclusion from the Settlement shall be entitled to make only one claim per cellular telephone number called, regardless of the

Kazerouni Law Group, APC
Costa Mesa, California

number of calls received by each cellular telephone number.  *Id.* at § 10.01.

## B.   SETTLEMENT PAYMENT

Under the Settlement, Comenity Bank agrees to establish a Settlement Fund in an amount of $8,475,000.00. Agr. § 5.01.  The $8,475,000.00 Settlement Fund is an "all-in, non-reversionary payment." *Id.* at § 2.20. That is the maximum amount payable by Defendant in the Settlement of this Action. *Id.* at § 2.19.   This Settlement Fund will include funds to pay the Settlement Costs. *Id.* at §§ 2.30 and 5.01. This maximum payment is not subject to the number of claims made and approved ("Approved Claims") and is not a reversionary fund.

### 1.   MONETARY AWARD TO CLASS MEMBERS

All of the approximately 4.3 million persons associated with the Class are Settlement Class Members, and all are entitled to a pro rata award for their claims, the amount of which depends only upon the amount of Approved Claims, the Settlement Costs and the resulting Claims Fund. *Id.* at § 8.02. All approved claims will be awarded an equal share of the Claims Fund. *Id.* at § 5.02. The Settlement Class Members have a long time period in which to file claims, which is seventy-five (75) days from the date the direct mail Notice postcards are mailed. *Id.* at §§ 2.05 and 2.06.

The Claims process is as simple as the parties can make it. There are three ways a Settlement Class Member may submit a claim: (1) by calling the toll-free number that will be set up by the Claims Administrator; (2) by submitting a claim online at the settlement website; or (3) by submitting a claim form by mail to the Claims Administrator.  *Id.* at 10.02. If the Settlement Class Member receives a postcard notice with a Claim Identification Number, that number should be provided to the Claims Administrator when making a claim.  *Id.* at § 10.03.

Each Settlement Class member must provide the following to submit a claim: (i) claimant's name, (ii) Claim Identification Number (if a post card notice was received); (iii) the cellular telephone number called by Comenity Bank; (iv)

and a mailing address for the settlement check, if different from the address on the postcard notice. *Id.*

If the claimant's name and/or cellular telephone number matches the Notice Database or Class List generated from Defendant's records, that claim will be approved, subject to the limitation that only one claim will be paid to each Settlement Class Member. *Id.* at § 10.03. If a Settlement Class Member submits a claim and qualifies for a monetary payment, he or she is a Qualified Class Member. *Id.*

### 2. NON-MONETARY AWARD TO CLASS MEMBERS

All Class Members will also benefit from the deterrent effect of this TCPA Settlement. *See Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283, *5 (S.D. Cal., May 29, 2012).

### C. CLASS NOTICE

Notice will be given to the Class by direct mail, a question & answer notice on the settlement website, and by national publication. Agr. §§ 9.01-9.05.

### 1. Direct Mail Notice

Even though the expense of such notice is considerable, the Agreement provides that notice of the proposed Settlement will be mailed by the proposed Claims Administrator, KCC, to Class Members by direct mail postcard notice ("Direct Mail Notice") to all of the estimated 4.3 million persons (*Id.* at § 8.02; Gervais Depo., 70:20-25; 76:23-77:2; 87:19-88:3) in the Class.  Agr. §§ 9.01 and 9.02; *see* Agreement, Ex. B (Direct Mail Notice). This Direct Mail Notice postcard summarizes the Settlement, provides instruction on how to make a claim and opt out or object, and directs the recipient to a toll-free telephone number and the Settlement Website, where the recipient may learn the details of the Settlement. Exhibit A; *see* Kazerounian Decl., ¶ 16.

In order to mail the Direct Mail Notice, Comenity Bank will provide the Claims Administrator with relevant records, listing the last known addresses of the

1  approximately 4.3 million Settlement Class Members ("Notice Database"). Agr. §

2  8.02. However, the Claims Administrator may check each address against the U.S.

3  Post Office's National Change of Address Database to confirm the address prior to

4  the initial mailing. Further, the Claims Administrator will use its best efforts to

5  update any address for whom the mail is returned as undeliverable and re-mail the

6  Notice. *Id*. at §§ 9.01 and 9.02.  Comenity Bank does not have address information

7  for 8,497 Class Members, which is less than 1%. *See* Kazrounian Decl., ¶ 31.

8  ## 2.   Q & A Notice On Settlement Website

9  A Settlement Website will be established to answer questions about the

10  Settlement, to allow the filing of claims and to allow anyone to review the

11  important documents relating to the Settlement, including but not limited to the

12  Settlement Agreement and Exhibits, the Court's Orders, briefs requesting

13  attorneys' fees and costs, and the motion for Final Approval of the Settlement.

14  Agr. §§ 9.04-9.05. The long-form Question & Answer Notice form notice ("Q &

15  A Notice") will be made available on the Settlement Website. *Id.* at § 9.05;

16  Exhibit C; *see* Kazerounian Decl., ¶¶ 13 and 17.

17  ## 3.   Publication Notice

18  To provide additional notice to the Class Members, including the small

19  number for whom there are no names and addresses, the Parties intend to publish

20  notice of the Settlement in the national publication USA Today. Agr. § 9.03; *see*

21  Kazerounian Decl., ¶ 13. That notice will summarize the Settlement, advise the

22  Class Members how to file claims and direct Class Members to the Settlement

23  Website for further information about the Settlement. Agr. § 9.03, Exhibit C to

24  Settlement Agreement; Kazerounian Decl., 32.

25  ## 4.   Toll-Free Number

26  The Toll-Free Number and the Settlement Website will permit Class

27  Members to obtain information and a copy of the Agreement. Agr. §§ 9.05 and 9.06.

28  ///

**Kazerouni Law Group, APC**
Costa Mesa, California

**Kazerouni Law Group, APC**
Costa Mesa, California

**D.    SCOPE OF RELEASE**

The scope of the release by all Class Members, other than those who exclude themselves from the Settlement, tracks the scope of Plaintiff's allegations in the original complaint relating to the prohibition against "the use of an 'automatic telephone dialing system' or an 'artificial or prerecorded voice'" as used in the TCPA. The release also covers known and unknown claims, including California Civil Code Section 1542 claims. *Id.* at §§ 16.01 through 16.03.  The full release will be made available on the Settlement website at the end of the Q & A Notice. *See Id.* at § 9.04; Exhibit C (pp. 7-8).

**E.    OPPORTUNITY TO OPT OUT AND OBJECT**

Under the terms of the proposed Settlement, Settlement Class Members will have the right to opt out of the Settlement or to object to its terms. Agr. §§ 12.01 and 12.02.  The deadline for doing both is ten days after the end of the 75-day Claims Period. *Id.* at §§ 2.22 and 2.23. Settlement Class Members will be informed of these rights through the Direct Mail Notice, the Q & A Notice on the Settlement Website, the Publication Notice, and information available by calling the Toll-Free Number. *Id.* at §§ 9.01-9.06; Exhibits A, B, C.

**F.    TERMINATION OF SETTLEMENT**

The Settlement may be terminated after providing written notice of his, their, or its election to do so ("Termination Notice"), to all other Parties hereto within ten (10) calendar days of any of the following occurrences:

i.    The Court rejects, materially modifies, materially amends or changes, or declines to preliminary or finally approve the Agreement;

ii.    An appellate court reverses the Final Approval Order, and the Agreement is not reinstated without material change by the Court on remand;

iii.    Any court incorporates into, or deletes or strikes from, or modifies, amends, or changes, the Preliminary Approval Order, Final Approval Order, or the Settlement Agreement in a way that Plaintiff or Defendant reasonably considers

material, unless such modification/amendment is accepted in writing by all Parties;

iv.     The Effective Date does not occur; or

v.     Any other ground for termination provided for elsewhere in this Agreement occurs. Agr. 17.01; *see also* Kazerounian Decl., ¶ 20.

If, at the conclusion of the Opt-Out Deadline, more than 3,000 of the Settlement Class Members have opted-out of the Settlement, the Defendant shall have, at its sole and absolute discretion, the option to terminate this Agreement within ten (10) days after the Opt-Out Deadline.  Agr. §§ 17.01 and 17.02. If the Settlement is not finally approved by the Court or is materially modified in the course of approval proceedings, it will be void. *Id*. at §§ 17.01 through 17.03.

### G.     PAYMENT OF NOTICE AND ADMINISTRATIVE COSTS

The Agreement provides that the estimated costs of Direct Mail Notice and establishing the claims administration procedures are to be deposited by Comenity Bank into the Settlement Fund Account administered by the Claims Administrator in trust within ten (10) days after entry of the Preliminary Approval order.  *Id.* at § 8.03.  The funds necessary to fund the Settlement, including the Approved Claims and Settlement Costs, will be paid within ten (10) days of the Effective Date and subject to the terms of the Agreement. *Id.* at §§ 8.03 and 8.04. The Settlement Fund shall be maintained in an interest bearing account at Comenity Bank. *Id*. at § 8.04.

### H.     CLASS REPRESENTATIVE'S APPLICATION FOR INCENTIVE AWARD

The proposed Settlement contemplates that Class Counsel will request an incentive award in the amount of $1,500.00 to be distributed to the Class Representative, Carrie Couser, subject to Court approval, within five days of the Effective Date. *Id.* at § 6.02.  Comenity Bank has agreed not to oppose a request for such incentive award in the agreed-upon amount.  *Id*.

### I.     CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND COSTS

The proposed Settlement contemplates that Class Counsel shall be entitled to apply to the Court for an award of attorneys' fees, costs, and expenses to be paid

Kazerouni Law Group, APC
Costa Mesa, California

from the Settlement Fund. *Id.* at § 6.01.  Comenity Bank has agreed not to oppose an application by Class Counsel for an award of attorneys' fees at the Ninth Circuit Court of Appeals' benchmark of 25% of the Settlement Fund, *see Glass v. UBS Financial Services, Inc.*, 331 Fed. Appx. 452, 457 (9th Cir. 2009). Agr. § 6.01. Class Counsel also intends to request that other costs and expenses be paid from the Settlement Fund. *See Id.* at § 8.03; Kazerounian Decl., ¶¶ 27-29. The costs request will also include payment of any costs of Notice and Claims administration (presently estimated by KCC to be at least $2,092,278 because Direct Mail Notice is required for approximately 4.3 million Class Members), but the final cost will vary depending on a number of factors, including the number of claims submitted. Agr. § 8.03; Declaration of Patrick Passarella ("Passarella Decl."), ¶ 8, filed herewith.  Class Counsel intend to also ask for costs of litigation not to exceed $25,000, to be paid from the Settlement Fund, which request is not opposed by Defendant (Agr. § 6.01).  Kazerounian Decl., ¶ 25(d); Swigart Decl., ¶ 25(d)

### J.   CY PRES DISTRIBUTION

On the Final Distribution Date, which is the earlier of: (i) the date as of which all the checks for the Settlement Awards have been cashed; or, (ii) two-hundred ten (210) days after the date on which the last check for a Settlement Award was issued, the Claims Administrator shall pay any amount remaining in the Settlement Fund Account from uncashed Settlement checks to one or more *cy pres* recipients which are agreed upon by the Parties and approved by the Court. Agr. § 8.05(f). *See Vandervort v. Balboa Capital Corp.*, 2014 U.S. Dist. LEXIS 46174, *6 (C.D. Cal. Mar. 27, 2014) (approving contingent *cy pres* distribution as part of TCPA class action settlement).

## IV.   LEGAL STANDARDS FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT

A class action may not be dismissed, compromised or settled without the approval of the Court. Fed. R. Civ. Proc. 23(e).   Judicial proceedings under

Kazerouni Law Group, APC
Costa Mesa, California

Rule 23 have led to a defined procedure and specific criteria for settlement approval in class action settlements, described in the Manual for Complex Litigation (Fourth) (Fed. Judicial Center 2004) ("Manual") § 21.63, *et seq.*, including preliminary approval, dissemination of notice to class members, and a fairness hearing.  Manual, §§ 21.632, 21.633, 21.634.

The purpose of the Court's preliminary evaluation of the settlement is to determine whether it is within the "range of reasonableness," and thus whether notice to the class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile.  *See* 4 Herbert B. Newberg, Newberg on Class Actions § 11.25 *et seq.*, and § 13.64 (4th ed. 2002 and Supp. 2004) ("Newberg").  The Court is not required to undertake an in-depth consideration of the relevant factors for final approval.  Instead, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." Manual, § 21.632 (4th ed. 2004).

### A.    Public Policy Favors Settlement

As a matter of public policy, settlement is a strongly favored method for resolving disputes. *See Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).  This is especially true in class actions such as this. *See Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982).  As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims."  *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995). To make the preliminary fairness determination, courts may consider several relevant factors, including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of

Kazerouni Law Group, APC
Costa Mesa, California

counsel ... ." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Furthermore, courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id*. at 1027.

### B. Conclusions of Fact And Law Are Not Necessary At This Stage

Preliminary approval does not require the Court to make a final determination that the settlement is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. *See* 5 James Wm. Moore, Moore's Federal Practice – Civil § 23.165[3] (3d ed.). Thus, in considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law, which underlie the merits of the dispute, *West Va. v. Chas. Pfizer & Co*., 440 F.2d 1079, 1086 (2d Cir. 1971), and need not engage in a trial on the merits, *Officers for Justice v. Civil Service Comm'n*, 688 F.2d at 625. Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement ... may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).

Preliminary approval of the settlement should be granted if there are no "reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys." Manual for Complex Litigation § 21.632, at 321 (4th ed. 2004). This proposed settlement

Kazerouni Law Group, APC
Costa Mesa, California

satisfies those standards. Furthermore, the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See*., *e.g.*, *Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal.1988) (opinion of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

### C.   Counsel's Experienced Judgment Holds Considerable Weight

The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge[.]" *See Hanlon*, 150 F.3d at 1026. This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted).

Based on these standards, Plaintiff's counsel respectfully submits that, for the reasons detailed below, the Court should preliminarily approve the proposed Settlement as fair, reasonable and adequate. This motion is not opposed by Defendant. Agr. §§ 3.02; *see also* § 1.02; Kazerounian Decl., ¶¶ 3, 9 and 15.

### V.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, ADEQUATE AND SHOULD BE PRELIMINARILY APPROVED

### A.   LIABILITY IS HIGHLY CONTESTED AND BOTH SIDES FACE SIGNIFICANT CHALLENGES IN LITIGATING THIS CASE

Comenity Bank has vigorously contested the claims asserted by Plaintiff in this Action. Agr. § 3.01; Answer (Dkt. No. 4). While both sides strongly believe in the merits of their respective cases, there are risks to both sides in continuing the Action. *See* Agr. §§ 3.01-3.03.  Class Counsel understands there are uncertainties associated with complex class action litigation and that no one can predict the outcome of the case. Kazerounian Decl., ¶¶ 36-38.  Nevertheless, Class Counsel is

1   confident that a class would be certified here, should the case proceed, even though

2   Defendant vigorously contends that a class would not be certified. If the Action

3   were to continue, challenges would likely be made to any class certification motion

4   made by Plaintiff, thereby placing in doubt whether a class could be certified in the

5   Action, and additional substantive challenges to the claims might be raised.

6        In considering the Settlement, Plaintiff and Class Counsel carefully balanced

7   the risks of continuing to engage in protracted and contentious litigation against the

8   benefits to the Class including the significant Settlement Fund and the deterrent

9   effects it would have. Kazerounian Decl., ¶¶ 8, 36-38;  Swigart Decl. ¶ 36-39;

10  Couser Decl., ¶ 4; *see also* Agr. § 3.03. Similarly, Comenity Bank has to recognize

11  that if a class is certified, the potential amount of damages could be substantially

12  higher than the Settlement agreed upon here.  The Settlement avoids that risk.

13  Because of the costs and risks to both sides, and delays of continued litigation, the

14  Settlement presents a fair and reasonable alternative to continuing to pursue the

15  Litigation as a class action for the alleged violations of the TCPA.

16       This proposed settlement is unlike the requests for class certification that

17  were denied in *Smith v. Microsoft Corp.*, 2014 U.S. Dist. LEXIS 12799 (S.D. Cal.

18  2014) and *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 579

19  (S.D. Cal. 2013). In *Smith*, the defendant lacked call data for much of the period;

20  however, Comenity Bank was able to recreate call data that was unavailable for the

21  Class Period prior to September 2012. Gervais Depo., 73:9-76:2; 72:15-18. And,

22  unlike *Connelly* where there were different methods to obtain prior express

23  consent, Comenity Bank has eliminated the telephone numbers that were provided

24  on its customer application, which means that consent is not an issue here. *Id*. at

25  85:1-25.

26  **B.   THE AGREEMENT TO CREATE A $8,475,000.00 SETTLEMENT FUND PROVIDES A FAIR AND SUBSTANTIAL CLASS BENEFIT**

27       As set forth above, Comenity Bank has agreed to pay $8,475,000.00 to settle

28  this Action. Agr. § 5.02. Class Members will be paid a pro rata amount for their

**Kazerouni Law Group, APC**
Costa Mesa, California

Approved Claims, with the amount paid for each claim dependent upon the total dollar amount of all Approved Claims and the amount of Settlement Costs deducted from the Settlement Fund. *Id.* at §§ 5.01-5.03; *see also* Kazerounian Decl., ¶¶ 23-25.

The settlement award that each Settlement Class Member will receive (estimated to be $32.67 at a 3% claims rate[5], or $0.98 at a 100% claims rate) is fair, appropriate, and reasonable given the purposes of the TCPA and in light of the anticipated risk, expense, and uncertainty of continued litigation. *See* Exhibit 4 (TCPA Settlement Matrix regarding claim rates). The purpose of the TCPA is to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls. S. Rep. No. 102-178, at 6 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1973.

Although the TCPA provides for statutory damages of $500 for each negligent violation and $1,500 for each willful violation, it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to the class members at trial. *See e.g., National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of strength of the claims"); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-approved settlement amount that was just over 9% of the maximum potential recovery); *In re Mego Fin'l Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000).

---

[5] Settlement Fund ($8,475,000) – Attorney Fees (25% of $2,118,750 = $6,356,250) – Costs ($25,000) – Admin. Costs ($2,092,278) – Incentive Payment ($1,500) = Fund Remaining ($4,237,472). 4,322,812/129,684 (3% claim rate) = $32.67.

Kazerouni Law Group, APC

Costa Mesa, California

**C.    The Settlement Was Reached as the Result of Arm's Length Negotiation With The Court's Assistance**

The proposed Settlement is the result of a series of spirited arm's length negotiations, including an Early Neutral Evaluation conference held before Magistrate Judge Bernard G. Skomal, followed by three days of mediation with and Hon. Leo S. Papas (Ret.) and further negotiations between the Parties.  With the guidance of Hon. Leo S. Papas (Ret.), and Magistrate Judge Skomal, who assisted in the informal discovery procedures that permitted the Parties to facilitate this Settlement, and working independently of the Court, the Parties were able to reach a Settlement. *See* Agr. §§ 1.03-1.04; Kazerounian Decl., ¶¶ 6-9. Defendant provided Plaintiff with information concerning the claim, including data regarding the number of putative class member's called, and such information was analyzed by a third party expert engaged by Plaintiff. Agr. § 1.03; *see* Kazerounian Decl., ¶¶ 10-11.

Additionally, informal discovery was provided to Class Counsel and later, after settlement, confirmatory discovery was reviewed by Class Counsel. Kazerounian Decl., ¶¶ 11-12.  Confirmatory discovery, including written discovery and a deposition pursuant to Fed. R. Civ. P. 30(b)(6)), verified the parameters of the broader Class and the number of cell phones called making up the number of Class Members. *See id*. With counsel for both sides also participating, there were several conference calls regarding methodology, databases used, technical details of database searches and other questions related to the parameters of the Settlement Class, and how the number of cell phones called was determined. *Id*. at ¶¶ 8-12; *see also* Gervais Depo., 73:9-76:21; 76:7-25; 80:7-82:15; 79:18-24. Plaintiff's counsel is satisfied the information provided about the number of persons in the Settlement Class and the number of cell phones called is correct (*see id*. at 79:1-17).  Kazerounian Decl., ¶ 10.

Moreover, after reaching an agreement in principle during the mediations to settle the case, the Parties' counsel engaged in extensive discussions for several more months. These discussions were necessary to work out the many details of

*Kazerouni Law Group, APC*
*Costa Mesa, California*

the Settlement including: data production, total number of Class Members, the claims process and notice procedures. *See* Kazerounian Decl., ¶ 10; *see also* Gervais Depo., 73:9-76:21; 76:7-25; 80:7-82:15; 79:18-24. The time and effort spent on settlement negotiations, as well as the time spent with the retired judge in mediation, and obtaining the necessary data in the settlement process, militate in favor of preliminary approval of the proposed Settlement, as they strongly indicate there was no collusion. *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

### D. EXPERIENCED COUNSEL HAVE DETERMINED THAT THE SETTLEMENT IS APPROPRIATE AND FAIR TO THE CLASS

The Parties are represented by counsel experienced in complex class action litigation.  Class Counsel has extensive experience in class actions, as well as particular expertise in class actions relating to consumer protection and specifically the TCPA.  Kazerounian Decl., ¶¶ 41-54; Swigart Decl., ¶¶ 41-47; Declaration of Todd M. Friedman ("Friedman Decl."), ¶¶ 41-45.  Similarly, Counsel for Comenity Bank has extensive experience based upon a long track record in complex class actions (*see* http://www.cmtlaw.com/david_j_kaminski.html). They have vigorously defended Comenity Bank throughout this case. *See* Agr. § 3.01. Class Counsel believe that under the circumstances, the proposed Settlement is fair, reasonable and adequate and in the best interests of the Class Members. *See* Kazerounian Decl., ¶¶ 3, 15, 23-34, 37; Swigart Decl., ¶¶ 3 and 15; Friedman Decl. ¶¶ 3 and 15.

### E. THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS FOR PURPOSES OF SETTLEMENT

Courts have long acknowledged the propriety of class certification for purposes of a class action settlement.  *See In re Wireless Facilities*, 253 F.R.D. at 610 ("Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes").  Like any other class certification decision, certification of a class for settlement purposes requires a determination that the requirements of Rule 23 are met.  *Id.*  As explained below,

Kazerouni Law Group, APC
Costa Mesa, California

certification of a settlement class is appropriate here because the action meets the requirements of Rule 23(a) and Rule 23(b)(3).

### 1.   NUMEROSITY

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be impracticable.  "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.'"  *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted).  Here, the Notice Database that will be used to provide notice to the Class contains information relating to approximately 4,322,812 individuals with unique cellular telephone numbers. Gervais Depo., 87:19-88:3; 70:1-72:2; 72:15-18. Thus, the proposed Class is sufficiently numerous for purposes of certifying a settlement class, as it would be impractical to maintain millions of nearly identical TCPA actions.

### 2.   COMMONALITY

The commonality requirement is met if there are questions of law and fact common to the class.  *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent legal factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.").

Here, for purposes of settlement, the proposed Class Members' claims all stem from the same factual circumstances, specifically that debt collection calls were made or would be made by Comenity Bank to Class Members between August 1, 2010 and May 26, 2014 using autodialing equipment or with a prerecorded voice message. Compl., ¶¶ 10 and 14; Agr. § 2.08.  Plaintiff's claims also present a number of questions of law that are common to all members of the Class for settlement purposes, including: (1) whether Comenity Bank called "cellular"[6] telephone numbers; (2) using an ATDS or a prerecorded voice; (3)

---

[6] Comenity Bank hired a third party to scrub the list of telephone numbers for cell phone numbers only. *See* Gervais Depo., 77:21-25.

Kazerouni Law Group, APC
Costa Mesa, California

without the called party's "prior express consent"; (4) for debt collection purposes[7] (Compl., ¶ 21). *See Lemieux v. Schwan's Home Serv.*, 2013 U.S. Dist. LEXIS 98735, *22 (S.D. Cal. July 15, 2013) ("The common question is thus, 'were we all called on our cellular telephones, by an autodialer or artificial or prerecorded voice, on behalf of [defendant], without having given express consent?'"). The Class Members all seek the same remedies, including statutory damages and injunctive relief. *Id*. at ¶¶ 26, 29-30. Under these circumstances, the commonality requirement is satisfied for purposes of certifying a settlement class. *See Hanlon*, 150 F. 3d at 1019-20.

### 3.   TYPICALITY

The typicality requirement is met if the claims of the named representatives are typical of those of the class, though "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. For purposes of settlement, Plaintiff's claims are typical of the claims of the whole class because they arise from the same factual basis – debt collection calls made to Plaintiff using autodialing equipment – without prior express consent and are based on the same legal theory as applies to the Class as a whole – that the calls violated the TCPA (Compl., ¶ 22); Agr. § 2.08. *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).  Ms. Couser claims that Comenity Bank contacted her cellular telephone via an automatic telephone dialing system that used an artificial or prerecorded voice without her consent. Compl., ¶¶ 8-15. Accordingly, the Class Representative's claim is typical of those of the Settlement Class Members (*id*. at ¶ 22). Thus, the typicality requirement is satisfied for certifying a settlement class. *See Malta*, 2013 U.S. Dist. LEXIS 15731 at *7 ("Plaintiffs' claims arise from the same factual basis as that of the class: calls made to Plaintiffs using auto-dialing equipment. … In addition, plaintiffs' claims are based on the same legal theory as that applicable to the class").

///

_____

[7] Only debt collection calls were placed using Comenity Bank's dialer during the relevant period. Gervais Depo., 69:23-70:12.

Kazerouni Law Group, APC
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

### 4.   ADEQUACY OF CLASS REPRESENTATIVE AND HER COUNSEL

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The Court must measure the adequacy of representation by two standards: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re Wireless Facilities*, 253 F.R.D. at 611 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003)).

Ms. Couser and her counsel have no conflicts of interest with other Class Members because, for purposes of the Settlement, Plaintiff's claims are typical of those of other Class Members.  *See* Couser Decl., ¶¶ 8; Kazerounian Decl., ¶¶ 34; Swigart Decl., ¶ 34.  Ms. Couser and her counsel have been prosecuting this action vigorously on behalf of the Class*,* and have participated in three mediation sessions. Couser and her counsel share the common goal of protecting and improving consumer and privacy rights throughout the nation, and there is no conflict among them. *See* Couser Decl., ¶¶ 5-10; *see also* Kazerounian Decl., ¶ 15. Plaintiff's counsel have extensive experience in litigation, including the prosecution of class actions seeking to protect privacy and consumer rights, including TCPA actions.  Swigart Decl., ¶¶ 41-47; Kazerounian Decl., ¶¶ 41-54; Friedman Decl., ¶¶ 41-45. Plaintiff's counsel are qualified and able to conduct this Litigation.  Kazerounian Decl., ¶¶ 41-54; Swigart Decl., ¶¶ 41-47; Friedman Decl., ¶¶ 41-45. Thus, Rule 23(a)(4) is satisfied.

### 5.   COMMON QUESTIONS PREDOMINATE SUFFICIENT TO CERTIFY A CLASS FOR SETTLEMENT PURPOSES ONLY

Class certification under Rule 23(b)(3) is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  The inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation."  *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las*

*Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).  Central to this question is "the notion that the adjudication of common issues will help achieve judicial economy."  *Zincser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001) (citation omitted), amended, 273 F. 3d 1266 (9th Cir. 2001).

Here, the central inquiry is whether Comenity Bank violated the TCPA with automated and/or prerecorded debt collection calls made to Class Members' cell phones without consent. Compl., ¶¶ 9-16. *See Malta*, 2013 U.S. Dist. LEXIS 15731 at *10 ("The central inquiry is whether Wells Fargo violated the TCPA by making calls to the class members. Accordingly, the predominance requirement is met.").  Consent is not an issue because Defendant eliminated calls to cell phone numbers that had been provided on customer applications. See Gervais Depo., 85:1-25; 86:8-87:13. Further, considerations of judicial economy favor litigating a predominant common issue once in a class action instead of thousands of times in separate lawsuits.  Thus, class certification in this lawsuit would be appropriate. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

### 6.   CLASS TREATMENT FOR SETTLEMENT PURPOSES IS SUPERIOR TO INDIVIDUAL RESOLUTIONS OF MILLIONS OF LAWSUITS

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement.  "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartenders Trust Fund*, 244 F.3d at 1163.  *See also, Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

Kazerouni Law Group, APC
Costa Mesa, California

Consideration of the factors listed in Rule 23(b)(3) supports the conclusion that, for purposes of a settlement class, certification is appropriate. Ordinarily, these factors are (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3).

However, when a court reviews a class action settlement, the fourth factor does not apply.  In deciding whether to certify a settlement class action, a district court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods. Inc. v. Woodward*, 521 U.S. 591, 620 (1997). "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious . . . ." *Elkins v. Equitable Life Ins. of Iowa*, No. Civ A96-296-Civ-T-17B, 1998 WL 133741, at *20 (M.D. Fla. Jan. 27, 1998); *see also Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (Rule 23(b)(3)(C) and (D) factors are "'conceptually irrelevant in the context of settlement'") (citation omitted).

Here, the Rule 23(b)(3)(A), (B) and (C) factors all favor class certification:

(i)    Any class member who wishes to pursue a separate action can opt out of the Settlement (Agr. § 12.01);

(ii)    The Parties are unaware of any competing litigation regarding the claims at issue, apart from the *Picchi v. World Financial Network Bank, et al.* action that is taken into consideration in defining the class definition in this Action to exclude persons who were called by Comenity Bank where their telephone number was marked as a "wrong number" (Agr. §2.08; *see also* Gervais Depo., 79:1-24);

(iii)    The Parties agree that it would be desirable to resolve Plaintiff's

Kazerouni Law Group, APC
Costa Mesa, California

claims in this forum (Agr. § 3.01-3.03); and

(iv)  It is unlikely that individual actions will be filed because of the small individual claims of Class Members, *Barani v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 49838, *9 (S.D. Cal. Apr. 9, 2014).

### 7.  THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances.  Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received."  *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon*, 150 F.3d at 1025.

Pursuant to Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal". Rule 23(c)(2)(B) also sets forth requirements as to the content of the notice.  The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).

Here, the Direct Mail Notice, the Q & A Notice to be posted on the Settlement Website and the publication notice meet all the requirements.

///

///

**Kazerouni Law Group, APC**
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

### i.   *Direct Mail Notice*

The Claims Administrator will mail individual class notices via first-class mail in postcard-style form ("Direct Mail Notice") with a unique Claim Identification Number to the approximately 4.3 million Settlement Class Members (Agr. § 2.21, 5.05, 8.02, 9.01; Exhibit A; *see* Kazerounian Decl., ¶ 32). This initial mailing of the Direct Mail Notice shall occur within 30 days after entry of the Preliminary Approval Order.  Agr. § 9.01.  The notice procedure also permits searches of the U.S. Post Office National Change of Address Database by the Claims Administrator to obtain current addresses before mailing and for any notices returned by the postal service. *Id.* at § 9.02.  If the Direct Mail Notice sent to any person is returned as undeliverable, and if a new address is obtained for such a person, a second Direct Mail Notice shall be mailed to the new address. *Id.*

### ii.   *Q & A Notice On Settlement Website*

In addition, the Parties have agreed to provide notice through the detailed Q & A Notice that will be posted on the Settlement Website maintained by the Claims Administrator. *Id.* at §§ 9.04-9.05. The Settlement Website will allow visitors to access (and print) a complete copy of the Direct Mail Notice, the Settlement Agreement, and the Q & A Notice. *Id.* at § 9.05.  The website will also allow them to file claims online if they provide the necessary identifying information as set forth in the Notice, i.e., their Claim Identification Number. *Id*; *see also* Kazerounian Decl., ¶ 33.

Also, the notices will be disseminated and posted on the website sufficiently prior to the Final Approval hearing to give Class members the opportunity to comment on the settlement, or to opt out and preserve their rights. *Id.  See Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1374-1375 (9th Cir. 1993) (31 days is more than sufficient, as Class as a whole had notice adequate to flush out whatever objections might reasonably be related to the settlement) *citing Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) (approving timing of a notice

which was mailed 26 days before the deadline for opting out of a settlement).

### iii.   *Publication Notice*

"No later than thirty (30) days after entry of the Preliminary Approval Order, or as soon as practicable thereafter, the Claims Administrator shall cause a Publication Notice, substantially in the form attached hereto as Exhibit B, to be published once on a nationwide basis, in a national edition of USA Today on any day from Monday through Thursday, and to be published on the Settlement Website on the same date, and retained on the website thereafter." Agr. § 9.03.

### iv.   *Toll-Free Number*

Anyone can obtain information about the Settlement through the Toll-Free Telephone Number. *Id.* at 9.06. The Claims Administrator shall maintain a Toll-Free Number throughout the ninety (90) day Claims Period and beyond, which will allow callers to request copies of the Direct Mail Notice and the Settlement Agreement. *See* Kazerounian Decl., ¶ 18. Class Members may not file claims by calling that toll, but they may obtain information about how to submit a claim by calling the toll-free number.

Accordingly, the Direct Mail Notice, the longer Q & A Notice posted on the Settlement Website, the publication notice and the press release fulfills all requirements of adequate notice and should be duly approved.  *Torrisi*, 8 F.3d 1370, 1374-35; *Malta*, 2013 U.S. Dist. LEXIS 15731 at *29-30; Fed. R. Civ. P. 23(c)(2); Manual, 3d. 30.21.

### v.   *Notice Database*

Pursuant to the proposed Settlement, Comenity Bank has agreed to provide a Notice Database to the Claims Administrator and to Class Counsel.  Agr. §§ 2.21 and 8.02.  The Notice Database is a database containing the names, current or last known mailing addresses, account numbers and cell phone numbers called that are contained in Comenity Bank's records pertaining to approximately 4.3 million Class Members (Agr. § 8.02).  *See* Kazerounian Decl., ¶¶ 10-12. Defendant has

1   already compiled the Class list. Gervais Depo., 88:4-12.

2       To create the Notice Database, according to representations made

3   throughout the action and in more detail in confirmatory discovery, Comenity

4   Bank reviewed its records of calls made to all persons using the dialer and

5   scrubbed the list for cell phones only during the period of September 2012 through

6   May 26, 2014. *See* Kazerounian Decl., ¶¶ 10-11. For the period of August 1, 2010

7   through September 2012, Defendant did not have call data from the dialer, and so

8   Defendant had to query collection activity tables to obtain the number of phone

9   calls using proprietary software, and then ran a search for delinquent accounts

10  during that period to determine the telephone numbers that were likely sent to the

11  dialer based on Comenity Bank's policies and procedures. *See* Gervais Depo.,

12  73:9-76:21; 76:7-25. By narrowing the time periods to the respective Class

13  Periods, Comenity Bank identified the cell phones called and used those numbers

14  to produce the Notice Database. *See Id*. at 80:7-82:15; 79:18-24. The Notice

15  Database will be utilized by the Claims Administrator to provide notice to the

16  Class Members. Agr. § 8.02.  Not less than fourteen (14) days prior to the Fairness

17  Hearing, the Claims Administrator shall file a declaration certifying that Notice has

18  been properly given, and list the number of persons that request exclusion form the

19  Settlement. *Id.* at § 13.01.

20      This notice program is designed to meaningfully reach the largest possible

21  number of Class Members, despite its expense.  Courts have approved settlements

22  in which notice was calculated to reach 75-83% of the class[8] and 70% of the class,[9]

23  respectively.  The Direct Mail Notice is calculated to reach every member of the

---

[8] *Hartless v. Clorox Co*., 2011 U.S. Dist. LEXIS 5427, at *25 (S.D. Cal. Jan. 20, 2011) (court granted final approval of settlement where notice was estimated to reach 75-83% of the class).

[9] *Wilson v. Airborne, Inc*., 2008 U.S. Dist. LEXIS 110411, at *13-14 (C.D. Cal. Aug. 13, 2008) (court granted final approval of settlement where measurements used to estimate notice reach suggested that 80% of adults learned of the settlement).

Settlement Class Members identified in the Notice Database by Direct Mail Notice. It will almost certainly reach more than the 70% to 80% threshold found to be sufficient in the aforementioned cases. The Direct Mail Notice, combined with the posting of the Q & A Notice on the website, and the publication Notice satisfies the requirements of due process, is the best notice practicable under the circumstances, and constitutes due and sufficient notice.

## 8. THE COURT SHOULD APPOINT THE CLASS REPRESENTATIVE AND CLASS COUNSEL

"[T]wo criteria for determining the adequacy of representation have been recognized.  First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

In this case, the adequacy of representation requirement is satisfied. For settlement purposes, the Parties jointly request that the Plaintiff, Carrie Couser, be appointed as the Class Representative.  The Parties have agreed that Joshua B Swigart of Hyde & Swigart, Abbas Kazerounian of the Kazerouni Law Group, A.P.C., and Todd M. Friedman of the Law Offices of Todd M. Friedman, should be appointed as Class Counsel for Plaintiff Couser and for all other purposes of the Settlement.  Agr. § 4.01.  Plaintiff's counsel all have extensive experience sufficient to be appointed as Class Counsel here.  Swigart Decl., ¶¶ 41-47; Kazerounian Decl., ¶¶ 41-56; Friedman Decl.,  ¶¶ 41-45.  Plaintiff Couser understands the obligations of serving as class representatives, has adequately represented the interests of the putative class, and has retained experienced counsel. Swigart Decl., ¶ 41-47; Kazerounian Decl., ¶ 41-56; Couser Decl., ¶¶ 5-6. Plaintiff has no antagonistic or conflicting interests with the Class Members. Swigart Decl., ¶ 34; Kazerounian Decl., ¶ 34; Couser Decl., ¶ 8. Plaintiff and the Class Members seek the same relief, which includes statutory damages for Defendant's alleged unlawful actions as well as injunctive relief.  Considering the

Kazerouni Law Group, APC

Costa Mesa, California

**Kazerouni Law Group, APC**
Costa Mesa, California

overwhelming similarity of claims, there is no potential for conflicting interests.

### 9. KCC SHOULD BE APPOINTED CLAIMS ADMINISTRATOR

The Parties have agreed upon and propose that the Court appoint KCC to serve as the Claims Administrator. Agr. §§ 2.07 and 8.01. KCC specializes in providing administrative services in class action litigation and has extensive experience in administering consumer protection and privacy class action settlements. *See* Passarella Decl., ¶¶ 3-4; Exhibit A thereto. KCC has been approved in similar TCPA class action settlement. *See Knutson v. Schwan's Home Serv.*, 2014 U.S. Dist. LEXIS 99637, *13 (S.D. Cal. July 14, 2014).

### 10. A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The last step in the settlement approval process is the formal Final Approval Hearing or Fairness Hearing, at which time the Court may hear all evidence and argument, both for and against, the Settlement in order to evaluate its merits and determine whether it should be approved.  Plaintiff requests that the hearing be held not before 144 days after the date of entry of the Preliminary Approval Order to allow sufficient time for providing CAFA Notice[10], direct mail notice and the 75-day claims period (Agr. § 2.06).

## VI.   CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court enter an order preliminarily approving the proposed Settlement, appointing Carrier Couser as Class Representative, and appointing Abbas Kazerounian, Joshua B. Swigart and Todd M. Friedman Class Counsel.

Dated: September 5, 2014

Respectfully submitted,
**KAZEROUNI LAW GROUP, APC**

By:  /s Abbas Kazerounian___
ABBAS KAZEROUNIAN, ESQ.
ATTORNEY FOR PLAINTIFF

---

[10] KCC, on behalf of Defendant, will provide the required CAFA Notice (Agr. § 2.04) pursuant to 28 U.S.C. § 1715 within ten days of this motion. Agr. § 9.07.

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022
*Attorneys for Plaintiff*

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman, Esq. (SBN: 216752)
tfriedman@attorneysforconsumers.com
324 S. Beverly Dr., #725
Beverly Hills, CA 90212
Telephone: (877) 206-4741
Facsimile: (866) 633-0228
*Attorneys for Plaintiff*

**Kazerouni Law Group, APC**
Costa Mesa, California