1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Counsel On Signature page]

Attorneys for Plaintiff and Proposed
Settlement Class

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

**CARRIE COUSER, individually and on behalf of all other similarly situated,**

　　　　　　Plaintiffs,

　　v.

**COMENITY BANK,**

　　　　　　Defendant.

**Case No.:** 12-CV-02484-MMA-BGS

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE PAYMENT**

**Date**:　April 20, 2015
**Time**:　2:30 p.m.
**Place**:　Courtroom 3A
**Judge**: Hon. Michael M. Anello

**[Filed concurrently with Declaration of Abbas Kazerounian, Declaration of Joshua B. Swigart, Declaration of Todd M. Friedman, Declaration of Jason A. Ibey, Declaration of Carrie Couser, Declaration of Patrick M. Passarella, Declaration of Stephen G. Recordon, and Declaration of Clinton Rooney]**

*KAZEROUNI LAW GROUP, APC*
*245 FISCHER AVENUE, UNIT D1*
*COSTA MESA, CA 92626*

---

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... ii

I.    INTRODUCTION ...................................................................... 1

II.    STATEMENT OF FACTS ........................................................ 3

    A. BRIEF FACTUAL BACKGROUND ......................................... 3

    B. PROCEEDINGS TO DATE .................................................... 4

III.    ARGUMENT ............................................................................ 4

    A. THE REQUESTED FEE AWARD IS FAIR, REASONABLE, AND JUSTIFIED ... 4

        1. The requested fee resulted from arm's length negotiations ..... 5

        2. The requested fees are reasonable, fair and justified under the percentage-of-the-fund method .......................................... 7

            a. *Class counsel have obtained excellent results for the class in comparison to awards made in similar cases…* ..................................................... 8

            b. *The risks of litigation support the requested fees* ........... 9

            c. *The skill required and quality of work performed supports the requested fees* ......................... 11

            d. *Class counsels' undertaking of this Action on a contingency-fee basis supports the requested fees* ...... 12

        3. The requested fees is reasonable, fair and justified under the lodestar method .............................................................. 13

            a. *Class Counsels' lodestar is reasonable* ...................... 14

            b. *Class Counsels' hourly rates are reasonable* ............... 16

    B. THE REQUESTED COSTS ARE FAIR AND REASONABLE ........................ 18

    C. THE REQUESTED INCENTIVE AWARD IS FAIR AND REASONABLE ........ 19

IV.    CONCLUSION ........................................................................ 20

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

# TABLE OF AUTHORITIES

## CASES

*Adams v. AllianceOne Receivables Management, Inc., et al.,*
  No. 08-cv-00248 (S.D. Cal. 2008) ....................................................... 9

*Baird v. Sabre Inc.,*
  2014 WL 320250 (C.D. Cal. Jan. 28, 2014).................................10, 13

*Barani v. Wells Fargo Bank,*
  2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) ..................................... 10

*Blum v. Stevenson,*
  465 U.S. 886 (1994) ........................................................................ 16

*Connelly v. Hilton Grand Vacations, Co., LLC,*
  294 F.R.D. 574 (S.D. Cal. 2013)..................................................... 10

*Davis v. City and County of San Francisco,*
  976 F.3d 1536  (9th Cir. 1992) ........................................................16

*Dennis v. Kellogg Co.,*
  2010 WL 4285011 (S.D. Cal. Oct. 14, 2010) ....................................6

*Di Giacomo v. Plains All Am. Pipeline,*
  2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001) ................15

*Fischel v. Equit. Life Assurance Soc'y,*
  307 F.3d 997 (9th Cir. 2002) ...........................................................14

*Glass v. UBS Fin. Servs.,*
  2007 U.S. Dist. LEXIS 8476,  (N.D. Cal. Jan. 26, 2007)..............13, 14

*Grant v. Capital Mgmt. Servs., L.P.,*
  2014 WL 888665 (S.D. Cal. Mar. 5, 2014)...................................... 10

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998)..................................................2, 5, 13

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*Hartless v. Clorox Co.,*
   273 F.R.D. 630 (S.D. Cal. 2011) .................................................................. 17

*Hensley v. Eckerhart,*
   461 U.S. 424  (1983) ...................................................................................... 8

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ............................................................. 8

*In re Beverly Hills Fire Litigation*,
   639 F. Supp. 915 (E.D. Ky. 1986) .............................................................. 15

*In re Bluetooth Headset Prods. Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) ......................................................................... 5

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ....................................................... 18

*In re Jiffy Lube International, Inc. Text Spam Litigation*,
   Case No. 11-MD-02261-JM-JMA (S.D. Cal. Dec. 30, 2012) ...................... 9, 13

*In re Media Vision Tech. Sec. Litig.,*
   913 F. Supp. 1362 (N.D. Cal. 1996) ........................................................... 18

*In re Mego Fin. Corp. Sec. Litig.,*
   2123 F.3d at 457 (9th Cir. 2000) ................................................................. 19

*In re Mercury Interactive Corp.,*
   618 F.3d 988 (9th Cir. 2010) ......................................................................... 5

*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) .............................................. 8, 9, 11, 13

*In re Washington Pub. Power Supply System Sec. Litig.,*
   19 F.3d 1291 (9th Cir. 1994) ....................................................................... 12

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975) ......................................................................... 14

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*Knutson v. Schwan's Home Service, Inc.,*
  Case No. 12-CV-00964-GPC-DHB (S.D. Cal. Jul. 14, 2012) ..........................10
*Linney v. Cellular Alaska Part.,*
  1997 U.S. Dist. LEXIS 24300, (N.D. Cal. 1997)................................................19
*Louie v. Kaiser Found. Health Plan, Inc.,*
  2008 U.S. Dist. LEXIS 78314 (S.D. Cal. 2008) ................................................19
*Malta v. Federal Loan Home Mort. Corp.,*
  2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 4, 2013) .....................................10
*Milliron v. T-Mobile USA, Inc.,*
  2009 WL 3345762 (D.N.J. Sept. 14, 2009) ........................................................6
*Mills v. Electric Auto-Lite Co.,*
  396 U.S. 375 (1970) ...........................................................................................18
*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco,*
  688 F.2d 615 (9th Cir. 1982).................................................................................6
*Opson v. Hanesbrands Inc.,*
  2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009)....................................20
*Ordick v. UnionBancCal Corp.,*
  2012 U.S. Dist. LEXIS 171413 (N.D. Cal. Dec. 3, 2012) ..................................20
*POM Wonderful, LLC v. Purely Juice, Inc.,*
  2008 WL 4351842  (C.D. Cal) ...........................................................................17
*Radcliffe v. Experian Info. Solutions, Inc.,*
  2013 U.S. App. LEXIS 9126 (9th Cir. Mar. 4, 2013) ........................................19
*Rodriguez v. West Publishing Corp.,*
  563 F.3d 948 (9th Cir. 2009)...............................................................................18
*Sandoval v. Tharaldson Emp. Mgmt., Inc.,*
  2010 WL 2486346 (C.D. Cal. June 15, 2010) .....................................................6

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*Serrano v. Unruh,*

   32 Cal. 3d 621 (1982) ........................................................................................16

*Smith v. Microsoft Corp.,*

   2014 U.S. Dist. LEXIS 12799 ........................................................................10

*Staton v. Boeing Co.,*

   327 F.3d 938  (9th Cir. 2003) ......................................................................5, 19

*Vanderbort v. Balboa Capital Corp.,*

   2014 U.S. Dist. Lexis 46174 (C.D. Cal. Mar. 27, 2014).....................................20

*Vizcaino v. Microsoft Corp.,*

   290 F.3d 1043 (9th Cir. 2002) ....................................................7, 8, 9, 12, 13

*West v. Circle K Stores, Inc.,*

   2006 U.S. Dist. LEXIS 76558 (E.D. Cal. 2006) ...........................................19

*Wojcik v. Buffalo Bills Inc.,*

   Case No. 8:12-cv-02414-SDM-TBM (M.D. Fla. Aug. 25, 2014).........................9

**STATUTES**

47 U.S.C. § 227 ....................................................................................................3

**RULES**

Fed. R. Civ. P. 23 .................................................................................................2

Fed. R. Civ. P. 23(h) ...........................................................................................4

Fed. R. Civ. P. 30(b)(6)..................................................................................4, 7, 11

**OTHER**

2 Joseph McLaughlin,

   McLaughlin on Class Actions § 6:7 (8th ed. 2011) ...........................................6

Federal Judicial Center,

   *Manual for Complex Litigation,* § 27.71 (4th ed. 2004) ..............................8

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*National Law Journal 2012 Billing Survey,*
   ALM Legal Intelligence ...................................................................................17

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

# I.   INTRODUCTION

Plaintiff moves the Court for an award of attorneys' fees, costs and incentive payment as part of this preliminarily approved class action settlement (*see* Dkt. No. 54) between plaintiff Carrie Couser ("Plaintiff") and defendant Comenity Bank ("Defendant").[1]

The Settlement Agreement provides for a substantial financial benefit of $8,475,000.00 ("Settlement Fund") to the approximately 4.3 to 4.4 million Settlement Class Members.[2] Settlement Agreement ("SA" or "Agr.") §§ 2.20, 5.01 and 8.02. The $8,475,000.00 Settlement Fund to be paid by Comenity Bank is an "all-in, non-reversionary payment." *Id*. at § 2.20. After the Settlement Costs are deducted from the Settlement Fund, including the attorney's fees and costs, claims administration costs and incentive award, the amounts remaining will be available to pay all Approved Claims. *Id*. at §§ 2.20, 5.01-5.02. Each Class Member who timely submits an approved claim will receive a *pro rata* award from the Settlement Fund dependent upon the total number of approved claims. *Id*. at § 5.02. The agreement also provides that Defendant will pay all of the following: (1) all settlement administration costs; (2) attorney's fees in an amount not to exceed 25% of the Settlement Fund (SA § 6.01); (3) litigation costs up to $25,000.00 (*id*.); and (4) an incentive award of $1,500.00 for the Class Representative (*id*. § 6.02). These fees and expenses will be paid from the $8,475,000.00 the Settlement Fund, which will reduce any Class Members' recovery.

On October 2, 2014, the Court granted preliminary approval of the Settlement and its terms enumerated above, observing, "…the Agreement and Settlement appear fair, reasonable and adequate." Dkt. No. 54, 2:5-7. The Court also preliminarily approved the attorneys' fees, costs, and incentive award sought

---

[1] Collectively referred to as the "Parties."

[2] Defined terms are intended to have their meaning in the Settlement Agreement.

by this Motion stating, "[t]he Court preliminarily approves the process set forth in the Agreement for reviewing, approving and paying claims from the Settlement Fund on a pro rata basis, after deducting claims administration costs, attorneys fees, litigations costs, and incentive payment." Dkt. No. 54, 4:7-10.

Federal Rules of Civil Procedure provide that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties agreement." Fed. R. Civ. P. 23. As noted by Plaintiff's Motion For Preliminary Approval of Class Action Settlement and Certification of Settlement Class, which was approved by this Court (Dkt. No. 54), the Settlement Agreement in this action resulted from extensive arm's length negotiations, including an Early Neutral Evaluation before Magistrate Judge Bernard G. Skomal and three full-day mediations sessions before Hon. Judge Leo S. Papas (Ret.). Dkt. No. 52, 16:2-25. The arm's length negotiations, especially those before Hon. Judge Leo S. Papas (Ret.), serve as "independent confirmation" of the reasonableness of the settlement's terms including the attorneys' fees, costs, and incentive award sought by this Motion. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  Under these circumstances, the Court may give deference to the judgment of the parties regarding the reasonableness of the requested fees.

The reasonableness of the requested fees is also supported by the "percentage of-the-fund" and "lodestar" approach. The $2,118,750 in attorneys' fees sought equates to 25% of the $8,475,000.00 Settlement Fund, which falls squarely in line with the Ninth Circuit's benchmark percentage of 25% for attorneys' fee awards in common fund cases, such as the present. Additionally, Class Counsel have incurred a combined total of 766.5 hours litigating this action for a combined lodestar of $419,913.50 (*see* Section III.A.3.a, below).

Through this fee brief, which is unopposed by Defendant, Plaintiff seeks Court approval of the agreed-upon costs and fees as follows: (1) all settlement

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

administration costs of $2,143,942.00 (Declaration of Patrick Passarella, ¶ 5, filed concurrently) to be paid to the Claims Administrator, estimated to be $2,092,278 (Dkt. No. 52-10, ¶ 8);[3] (2) attorneys' fees in the amount of $2,118,750; (3) litigation costs in an amount of $25,000 (actual costs are $28,110.64); and (4) an incentive award of $1,500 for Plaintiff as Class Representative.   As more thoroughly stated herein and as detailed in the supporting declarations filed herewith, these sums are fair and reasonable as they resulted from extensive arm's length negotiations and are further supported by the percentage-of-the-fund and loadstar methodologies. *See* Declaration of Abbas Kazerounian ("Kazerounian Decl.") ¶¶ 6, 17-29; Declaration of Joshua B. Swigart ("Swigart Decl.") ¶¶ 15-19, 22-29; Declaration of Jason A. Ibey ("Ibey Decl.") ¶¶ 3-7.

## II.    STATEMENT OF FACTS

### A.    Brief Factual Background

Comenity Bank provides bank account servicing, collection and related services. Compl., ¶ 5. In her Complaint, Plaintiff alleged that in its collection efforts, Comenity Bank violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA") by calling the cellular telephones of account-holders without "prior express consent," using an "automatic telephone dialing system"[4] and/or using an "artificial or prerecorded voice". Compl., ¶¶ 9-15. Plaintiff contends that she and the proposed class are entitled to statutory damages pursuant to the TCPA in the amount of $500 per unlawful call. *Id*. at ¶ 29. Comenity Bank has denied and continues to deny that it violated the TCPA, and denies all charges of wrongdoing or liability against it in the Action. Agr. § 1.02;

---

[3] Claims Administration costs have exceeded the estimate in light of the substantially higher than anticipated claims rate. *See* p. 9, lines 3-8, below.

[4] *See* Exhibit B-2 (Deposition of Daniel Gervais ("Gervais Depo."), 69:23-70:12, the calls at issue were all debt collection calls placed through Comenity Bank's dialer). Mr. Gervias testified as the Fed. R. Civ. P. 30(b)(6) representative for Comenity Bank. *Id*. at 68:1-7.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1   Dkt. No. 4.

2   **B.    Procedural History**

3   Plaintiff filed the initial Complaint on October 12, 2012, naming Comenity

4   Bank as defendant. Dkt. No. 1. Defendant answered on December 12, 2012. Dkt.

5   No. 2. In February of 2013, counsel for the Parties attended a telephonic Early

6   Neutral Evaluation Conference presided over by Magistrate Judge Bernard G.

7   Skomal (Dkt. No. 9).  With Judge Skomal's guidance, progress was made toward

8   informally determining the parameters of the Class, the number of calls made to

9   persons on cellular phones during the proposed Class period, and consequently the

10  range of potential damages.  Agr. § 1.03.

11  After many months of good-faith negotiations, and three full-day mediation

12  sessions with the Honorable Judge Leo Papas (Ret.), the parties were eventually

13  able to agree on the terms of a final settlement agreement. Kazerounian Decl., ¶ 6;

14  SA §§ 1.03 and 1.04. Plaintiff conducted confirmatory discovery (including written

15  discovery, and two Fed. R. Civ. P. 30(b)(6) depositions), confirming the total

16  number of cell phones called, the efficacy of the processes and methodology used

17  by Comenity Bank to assemble the data, and determining the estimated number of

18  class members. Kazerounian Decl., ¶ 6.  The parties have also conducted informal

19  and formal discovery surrounding Plaintiff's claims and Defendant's defenses.

20  Agr. 1.03; Kazerounian Decl., ¶ 6.

21  **III.   ARGUMENT**

22  Class Counsel respectfully assert that (A) the requested fee award of

23  $2,118,750 is fair, reasonable, and justified; (B) the payment of $23,703.64 (and up

24  to $25,000.00) in costs is fair and reasonable; and (C) the named Plaintiff's modest

25  incentive award of $1,500 is fair and reasonable. Swigart Decl., ¶ 3.

26  **A.    The Requested Fee Award Is Fair, Reasonable And Justified**

27  Federal Rules of Civil Procedure provide that "[i]n a certified class action,

28  the court may award reasonable attorneys' fees and nontaxable costs that are

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1 authorized by law <u>or by the parties agreement</u>." Fed. R. Civ. P. 23(h) (emphasis
2 added). As explained by the Ninth Circuit, "[a]ttorneys' fees provisions included in
3 proposed class action settlement agreements are, like every other aspect of such
4 agreements, subject to the determination whether the settlement is 'fundamentally
5 fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir.
6 2003).

7 In common fund cases, Courts within the Ninth Circuit have discretion to use
8 one of two methods to determine whether the fee request is reasonable: (1)
9 percentage-of-the-fund; or, (2) lodestar plus a risk multiplier. *Staton*, 327 F.3d at
10 967-68; *see also In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010).
11 "Though courts have discretion to choose which calculation method they use, their
12 discretion must be exercised so as to achieve a reasonable result." *In re Bluetooth
13 Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

14 Class Counsel maintain the request for attorneys' fees is reasonable based
15 solely upon the arm's length formal negotiations that serve as independent
16 confirmation of the fairness of the settlement, including attorneys' fees. *See
17 Hanlon*, 150 F.3d at 1029. However, the requested fees are also fully supported
18 under the percentage-of-the-fund and lodestar approach, which Class Counsel offer
19 as an additional and optional means of cross-checking the requested fees.

20 **1.   The requested fees resulted from arm's length negotiations**
21

22 While attorneys' fee provisions included in class action settlements are
23 subject to the determination of whether the provision is fundamentally fair,
24 adequate and reasonable, the Ninth Circuit has opined that "the court's intrusion
25 upon what is otherwise a private consensual agreement negotiated between the
26 parties to a lawsuit <u>must be limited to</u> the extent necessary to reach a reasoned
27 judgment that the agreement is not the product of fraud or overreaching by, or
28 collusion between, the negotiating parties, and that the settlement, taken as a

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

whole, is fair, reasonable and adequate to all concerned" *Hanlon*, 150 F.3d at 1027; citing *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); (emphasis added); *see also, Lundell v. Dell, Inc.*, CIVA C05-3970 JWRS, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006).

In *Hanlon*, the Ninth Circuit went on to state that where settlement terms, including attorneys' fees, are reached through formal mediation, the Court may rely upon the mediation proceedings "as independent confirmation that the fee was not the result of collusion or a sacrifice of the interests of the class." *Hanlon*, 150 F.3d at 1029. *See also Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("the participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties"); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Dennis v. Kellogg Co.*, 2010 WL 4285011, at *4 (S.D. Cal. Oct. 14, 2010) (the parties engaged in a "full-day mediation session," which helped to establish that the proposed settlement was noncollusive). *See also* 2 McLaughlin on Class Actions, § 6:7 (8th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion").

Here and as previously stated in Plaintiff's Motion For Preliminary Approval of Class Action Settlement and Certification of Settlement Class, which this Court has approved (Dkt. No. 54), the Settlement Agreement resulted from extensive arm's length negotiations." Dkt. No. 52. 16:2-25; Kazerounian Decl., 6. More specifically, the Parties attended a telephonic Early Neutral Evaluation Conference presided over by Magistrate Judge Bernard G. Skomal (Dkt. No. 9), where progress was made toward informally determining the parameters of the Class, the number of calls made to persons on cellular phones during the proposed

Class period, and consequently the range of potential damages. SA § 1.03. Furthermore, the Parties attended two full-day mediation sessions with the Honorable Judge Leo Papas (Ret.), where the parties were able to agree on the terms of a settlement agreement. Kazerounian Decl., ¶ 6; SA §§ 1.03 and 1.04. Plaintiff then conducted confirmatory discovery, including written discovery and a Fed. R. Civ. P. 30(b)(6) deposition taken on January 21, 2014. *Id.* Following that deposition, the Parties went back to mediation before the Honorable Judge Leo Papas (Ret.) for an additional full day of mediation to renegotiate the settlement agreement, which was followed by a second Fed. R. Civ. P. 30(b)(6) deposition taken on August 21, 2014, confirming the total number of cell phones called, the efficacy of the processes and methodology used by Comenity Bank to assemble the data, and determining the estimated number of class members. Kazerounian Decl., ¶¶ 6 and 26. The parties had also conducted informal and formal discovery surrounding Plaintiff's claims and Defendant's defenses. Agr. 1.03; Kazerounian Decl., ¶ 6. Under these circumstances, the Court may give deference to the mediation proceedings and the judgment of the Parties regarding the reasonableness of fees.

However, the requested fee is wholly supported by the both the percentage-of-the-fund and lodestar methods, which the Court may employ as a means of assessing the reasonableness of the requested fee.

## 2. The requested fees are reasonable, fair, and justified under the percentage-of-the-fund method

Courts consider a number of factors to determine the appropriate percentage of the fund to awarding as attorneys' fees in a common fund case including: (a) the results achieved; (b) the risk of litigation; (c) the skill required and the quality of work; (d) the contingent nature of the fee; and, (e) awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047, 1048-1050 (9th Cir. 2002). The "benchmark" percentage for attorney's fees in the Ninth Circuit is 25% of

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

the common fund with costs and expenses awarded in addition to this amount. *Vizcaino*, 290 F.3d at 1047. "However, in most common fund cases, the award exceeds that [25%] benchmark." *In re Omnivision Techs*., 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007) (citing *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1998)). Both the *Omnivision* and *Activision* Courts concluded that "Absent <u>extraordinary circumstances</u> that suggest reasons to lower or increase the percentage, the rate should be set at 30%." *Omnivision*, 559 F. Supp. 2d at 1048.

Class Counsel's request for attorneys' fees in the amount of $2,118,750 equates to 25% of the $ 8,475,000.00 Settlement Fund (Agr. § 6.01), which falls squarely within the Ninth Circuit's benchmark and is considerably less than more recent precedent. In most cases, the benchmark 25% in attorneys' fees are most often paid *from the fund*, thereby reducing class members' recovery, as is this case.

In addition, the fee request is fully supported by the factors enunciated in *Vizcaino* including: (a) the results achieved; (b) the risk of litigation; (c) the skill required and the quality of work; (d) the contingent nature of the fee; and, (e) awards made in similar cases.

    a.  ***Class Counsel have obtained excellent results for the Class in comparison to awards made in similar cases***

The results obtained for the class are generally considered to be the *most important factor* in determining the appropriate fee award in a common fund case. *See Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983); *Omnivision*, 559 F. Supp. 2d at 1046; *see also* Federal Judicial Center, *Manual for Complex Litigation*, § 27.71, p. 336 (4th Ed. 2004) (the "fundamental focus is on the result actually achieved for class members") (citing Fed. R. Civ. P. 23(h) committee note). Standing alone, this factor supports Class Counsel's fee request.

The settlement secured by Plaintiff and Class Counsel provides an excellent recovery for Class Members as compared to similar TCPA cases, despite the uncertainty of recovery in TCPA class actions. The Settlement Agreement provides

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

for $8,475,000.00 in recovery for the Class. SA § 2.20. Every Class Member who makes a timely and valid claim will be entitled to a pro rata distribution of the Settlement Fund. SA § 8.02.

The current estimated recovery for the Class Members is $15.76 per claim, as approximately 6.67% of the Class have filed claims as of December 30, 2014, which significantly exceeds Class Counsels' expectations regarding the claims rate for this case. Kazerounian Decl., ¶ 33.  In the Preliminary Approval Motion, Class Counsel estimated a 3% claims rate, which would have provided for approximately $32.67 per claim. Dkt. No. 52-1, 15:4-7.

The Class Members' anticipated recovery here is in line with other TCPA class action settlements. Notably, the settlement obtained here is similar to the settlement in a nearly identical TCPA class action, *In re Jiffy Lube*, in which each class member received a single voucher (rather than cash) for an oil change valued at $20.00.  *In re Jiffy Lube International, Inc. Text Spam Litigation*, Case No. 11-MD-02261-JM-JMA, Dkt. No. 90-1, p. 7-8 (S.D. Cal. Dec. 30, 2012). *See also Adams v. AllianceOne Receivables Management, Inc., et al.*, No. 08-cv-00248, Dkt. No. 137 (S.D. Cal. 2008) (actual recovery of approximately $40.00, or a pro rata share of the settlement fund).[5]   While the total number of claimants will be identified after the claims filing deadline, the recovery is in line with other TCPA settlements.

### b.   *The risks of litigation support the requested fees*

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of a

---

[5] In *Wojcik v. Buffalo Bills Inc.,* No. 8:12-cv-02414-SDM-TBM, Dkt. No. 79 (M.D. Florida Aug. 25, 2014), the court very recently finally approved a settlement in a TCPA action with a gift card value of $57.50 to $75.00 for each class member, redeemable at Buffalo Bills stores. [Exhibit C].

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

requested fee).

As this Court recently observed, "[t]he law interpreting the TCPA and its consent requirement has been in flux, making it difficult for Class Members to prove lack of consent under the TCPA." *Knutson v. Schwan's Home Service, Inc.,* Case No. 12-CV-00964-GPC-DHB, Dkt. No. 139, p. 4 (S.D. Cal. Jul. 14, 2012) (citing *Baird v. Sabre Inc.*, 2014 WL 320250 (C.D. Cal. Jan 28, 2014)). The difficulty of proving lack of consent, the gravamen of a TCPA claim, is reflected in TCPA settlements yielding recoveries that equate to a small fraction of the full $500 statutory recovery. For example, this Court has approved TCPA settlements, which could yield as little as approximately $3 per class member. *See Malta v. Fed. Home Loan Mortgage Corp.*, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013); *see also Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) (approving a TCPA settlement where claimants would receive approximately $7 if all class members made a claim). The uncertainty of recovery under the TCPA is further reflected by the fact this Court has approved a settlement, and awarded $475,000 in attorneys fees, in a TCPA action where class members received *no* monetary relief, only an injunction. *See Grant v. Capital Mgmt. Servs., L.P.*, 2014 WL 888665 (S.D. Cal. Mar. 5, 2014).

Courts have also refused to certify TCPA class actions, which is an additional risk that is avoided by settlement. *See Smith v. Microsoft Corp.*, 2014 U.S. Dist. LEXIS 12799, *28 (S.D. Cal. Jan. 28, 2014) (Class certification denied); *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 579 (S.D. Cal. 2013) (Class certification denied).

Additionally, the presence of an arbitration clause in the cardholder agreements for many of the Class Members presents a substantial risk in seeking class certification and successfully litigating the action in a court of law. *See* Exhibit B-1, 45:6-10, and Exhibit B-2, 87:14-18. *See Lundell v. Dell, Inc.*, 2006 U.S. Dist. LEXIS 90990, *10 (N.D. Cal. Dec. 4, 2006) ("While the Court makes no finding

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

as to whether it would have enforced that [arbitration] clause here, it is an issue that is complex and difficult and added to Class counsel's risk."); *Boyd v. Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 162880, *14 (C.D. Cal. Nov. 18, 2014) ("[c]ertain class members signed arbitration or severance agreements that Defendant could attempt to enforce, potentially reducing the size of the class. *Id*. It is not clear that the Plaintiff could have maintained its class status through trial. The Settlement protects the class from these additional risks.").

Thus, the risks of continued litigation not only depicts the high degree of results obtained for the Class, but also further support the reasonableness of the requested fees.

### c.   *The skill required and quality of work performed support the requested fees*

The "prosecution and management of a complex [] class action requires unique legal skills and abilities" that are to be considered when evaluating fees. *Omnivision*, 559 F. Supp. 2d at 1047.  Class Counsel are experienced class action litigators who have been appointed "class counsel" in numerous TCPA and related consumer class actions. Class Counsel have successfully prosecuted numerous TCPA and other complex consumer class actions, and have secured noteworthy recoveries for those classes.  *See* Swigart Decl., ¶¶ 6-14; Kazerounian Decl. ¶¶ 7-15; Friedman Decl., ¶¶ 7-10; *see also* Ibey Decl. ¶¶ 10-15. Class Counsel's proven track record demonstrates not only the quality of work performed, but also the skill required to successfully prosecute large complex class actions.

In the present case, Class Counsel performed significant factual investigation prior to bringing the action, conducted extensive written discovery and took two depositions of Defendant pursuant to Fed. R. Civ. P 30(b)(6). *See* Kazerounain Decl., ¶¶ 6 and 26. Class Counsel participated in protracted negotiations including an Early Neutral Evaluation (Dkt. No. 10) and Case Management Conference (Dkt. No. 12) and three full-day mediation session (two of which resulted in an initial

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

settlement agreement, with the third culminating in the final settlement agreement after the first Fed. R. Civ. P 30(b)(6) deposition) where they vigorously negotiated and ultimately secured a settlement for the benefit of Class Members worth millions of dollars. Swigart Decl., ¶ 5.

Thus, Class Counsels' skill and expertise (*see* Section III.A.3.b., below), reflected in the prompt and significant Settlement, supports the requested fees.

### d.   *Class Counsels' undertaking of this Action on a contingency-fee basis supports the requested fees*

The Ninth Circuit has long recognized that the public interest is served by rewarding attorneys who undertake representation on a contingent basis by compensating them for the risk that they might never be paid for their work. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299 ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for Plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose"); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in contingency cases "for taking risk of nonpayment by paying them a premium over their normal hourly rates").

Class Counsel prosecuted this matter on a purely contingent basis while agreeing to advance all necessary expenses knowing that Class Counsel would only receive a fee if there were a recovery. *See* Kazerounian Decl., ¶ 17; Swigart Decl., ¶¶ 16 and 24. In pursuit of this litigation, Class Counsel have spent considerable outlays of time and money by, among other things, (1) investigating the actions; (2) conducting extensive discovery; (3) negotiating the Settlement over a period of months, including a three full days of private mediation; (4) Class counsel will also be required to oversee administration of the Settlement; and, (5) respond to Class Member inquiries. Class Counsel expended these resources despite the risk that Class Counsel may never be compensated especially in light of the fluctuating

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

interpretations of the TCPA and the difficulty in securing class certification. *See Baird v. Sabre Inc.*, 2014 WL 320250 (C.D. Cal Jan 28, 2014).

Class Counsel here incurred $23,703.64 in costs (as of January 7, 2015) and spent 766.5 hours litigating this action. Kazerounian Decl., ¶ 21. Thus, Class Counsels' "substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees" in this matter. *Omnivision*, 559 F. Supp. 2d at 1047.

As articulated above, the percentage-of-the-fund method is the preferred and most widely used method for determining attorneys' fees in a common fund case. The requested fees are fully supported by the factors enunciated by *Vizcaino* and is commensurate with the excellent results obtained for the Class and is comparable or in excess of awards in other TCPA cases, namely *In Re Jiffy Lube*.

While the requested fees are fully supported by the percentage-of-the-fund method, it should again be noted that the application of the percentage-of-the-fund method is optional and may be applied at the Court's discretion. In addition, the Court may also apply the lodestar method as another optional means of cross-checking the requested fees.

### 3. The requested fee is reasonable, fair, and justified under the lodestar method

A court applying the percentage-of-the-fund method may use the lodestar method as a "cross-check on the reasonableness of a percentage figure." *Vizcaino*, 290 F.3d at 1050. However, a cross-check is *optional*. *See Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476, at *48 (N.D. Cal. Jan. 26, 2007) (finding that "where the early settlement resulted in a significant benefit to the class," there is no need "to conduct a lodestar cross-check"). If the Court chooses to perform such a cross-check in this matter, it will confirm that an approximately 25% fee award of $8,475,000 is reasonable.

The first step in the lodestar-multiplier approach is to multiply the number of

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

hours counsel reasonably expended by a reasonable hourly rate. *Hanlon*, 150 F.3d at 1029. Once this raw lodestar figure is determined, the Court may then adjust that figure based upon its consideration of many of the same "enhancement" factors considered in the percentage-of-the-fund analysis, such as: (1) the results obtained; (2) whether fee is fixed or contingent; (3) the complexity of the issues involved; (4) the preclusion of the other employment due to acceptance of the case; and, (5) the experience, reputation, and ability of the attorneys. *See Kerr v, Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).[6]

### a. *Class Counsels' lodestar is reasonable*

The accompanying declarations of Class Counsel and an associate attorney set forth the hours of work and billing rates used to calculate their lodestar. Plaintiff's attorneys' work is summarized as follows:

|  | HRS. INCURRED | RATE/HR. | TOTAL |
|---|---|---|---|
| **KAZEROUNI LAW GROUP, APC** | - | - | - |
| **A) ABBAS KAZEROUNIAN** | 240.2 | $560 | $134,512 |
| **B) JASON A. IBEY** | 62.1 | $365 | $22,666.50 |
| **HYDE & SWIGART** | - | - | - |
| **A) JOSHUA B. SWIGART** | 239.8 | $595 | $142,681 |
| **LAW OFFICES OF TODD M. FRIEDMAN** | - | - | - |
| **A) TODD M. FRIEDMAN** | 224.4 | $535 | $120,054 |
| **TOTAL COMBINED LODESTAR** | 766.5 | - | $419,913.50 |

As described in the accompanying declarations, Plaintiff's attorneys have devoted a total of 766.5 hours to this litigation, and have a total lodestar to date of

---

[6] The risk inherent in contingency representation is a critical factor. The Ninth Circuit stresses that "[i]t is an abuse of discretion to fail to apply a risk multiplier when...there is evidence that the case was risky." *Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002); *see also Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *16 (N.D. Cal. 2007).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

$419,913.50, which represents approximately a 5.045 multiplier.[7] *See* Kazerounian Decl., ¶¶ 18-29; Swigart Decl., ¶¶ 17-19, 22-30; Declaration of Todd M. Friedman ("Friedman Decl."), ¶¶ 13-24; *see also* Ibey Decl. ¶¶ 3-7. These amounts include a conservative estimate of the additional time that Class Counsel will spend going forward in seeking final approval of, and implementing the Settlement, including assisting Class Members with claims and overseeing claims administration. Generally, these tasks require substantially more hours that those estimated. Class Counsels' lodestar will continue to grow as Class Counsel finalizes the settlement process and closes the litigation.[8]

The Claims Period will last for twenty more days (January 29, 2015), and Class Counsels' commitment of time and labor to this case will continue beyond that date. These responsibilities will require a substantial number of hours of work by Class Counsel over the coming months, as the final approval hearing is scheduled for April 20, 2015. *See* Swigart Decl., ¶ 17; *see also* Kazerounian Decl., ¶ 29; Friedman Decl., ¶ 24; Ibey Decl., ¶ 7.

Thus, Class Counsel's lodestar is reasonable. Class Counsel prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work that might have resulted from having multiple firms working on this case. In this regard, tasks were reasonably divided among firms to ensure

---

[7] *See In re Beverly Hills Fire Litigation*, 639 F. Supp. 915 (E.D. Ky. 1986) (awarding multiplier of 5 for lead counsel); *Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001) (approving 5.3 multiplier).

[8] Class Counsel file this fee brief thirty (30) days prior to the deadline for Class Members to object to the settlement, which is February 9, 2015. As the deadline to file all briefing regarding a request for attorneys' fees and costs is March 23, 2015 (Dkt. No. 54), Class Counsel intend to file a supplemental brief closer to that deadline. To date, one Class Member (Chairman Alicer Abrazado) has filed an objection; however, that objection was withdrawn after Class Counsel took the deposition of the objector on January 7, 2015 in San Francisco, California (Exhibit D). Kazerounian Decl., ¶ 34.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

avoiding the replication of work.  Further, tasks were delegated appropriately among partners, associate attorneys, paralegals, and other staff according to their complexity such that the attorneys with higher billing rates billed time only where necessary. [9]  In addition, Class Counsels' contemporaneous time records were carefully reviewed. *See* Kazerounian Decl., ¶ 24-24; Swigart Decl., ¶ 30; Friedman Decl., ¶ 19-23; Ibey Decl., ¶ 6.

### b.  *Class Counsels' hourly rates are reasonable*

Similarly, Class Counsels' hourly rates are also reasonable.  In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stevenson*, 465 U.S. 886, 895, n.11 (1994).  *See also Davis v. City and County of San Francisco*, 976 F.3d 1536, 1546 (9th Cir. 1992); and, *Serrano v. Unruh*, 32 Cal. 3d 621, 643 (1982).  Class Counsel here are experienced, highly regarded members of the bar with extensive expertise in the area of class actions and complex litigation involving consumer claims like those at issue here. *See* Kazerounian Decl., ¶¶ 7-15; Swigart Decl., ¶¶ 6-14; Friedman Decl., ¶¶ 7-11; *see also* Ibey Decl. ¶¶ 4-16.

Both Mr. Kazerounian and Mr. Swigart are considered experts in the area of the TCPA and have lectured on the TCPA. *See* Kazerounian Decl. ¶¶ 7-15; Swigart Decl. ¶¶ 6, 8, 10, and 12. Mr. Kazerounian is also an adjunct professor at California Western School of Law teaching a consumer law course featuring the TCPA, and has successfully argued an appeal before the Ninth Circuit Court of Appeals. Kazerounian Decl., ¶¶ 9 and 15. Mr. Swigart has previously been approved for $595 per hour (Swigart Decl., p. 14, n. 4), and Mr. Kazerounian has previously been approved for $545 per hour (Kazerounian Decl., p. 9, n. 5). Mr. Friedman is also vary experienced in litigation TCPA cases, including class

---

[9] Hours for paralegals and support staff at Hyde & Swigart were zeroed. Swigart Decl., ¶¶ 15 and 30.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

actions. Friedman Decl., ¶¶ 7-11. Further, Plaintiff submits declarations from other experienced attorneys supporting the hourly rates. *See* Declaration of Clinton Rooney, ¶¶ 3-5; Declaration of Stephen G. Recordon, ¶¶ 3-5.

According to a survey from the National Law Journal in 2012 (December 7, 2012), the average hourly rate for a partner at a surveyed law firm in Irvine, California, was $525, with a high of $760 and a low of $425; and the average hourly rate for a partner at a surveyed law firm in Riverside, California was $435, with a high of $625 and a low of $310. *See* Exhibit A to Declaration of Abbas Kazerounian, filed concurrently. Thus, the billing rate for the partners (i.e., Mr. Kazerounian, Mr. Swigart and Mr. Friedman) is well within the normal range of fees charged by firms in Southern California for partner work.[10]

Additionally, associate Jason A. Ibey of Kazerouni Law Group, APC, who has contributed much to this litigation, has significant experience in litigating consumer class actions, especially TCPA class actions, which justifies his hourly rate of $365. *See* Declaration of Jason A. Ibey, ¶¶ 8-15. According to the same 2012 National Law Journal Billing Survey referenced above, the average hourly rate for an associate at a surveyed law firm in Irvine, California, was $330, with a high of $420 and a low of $295; and the average hourly rate for an associate at a surveyed law firm in Riverside, California was $250, with a high of $390 and a low of $225. *See* Exhibit A to Kazerounian Decl. Thus, the billing rate for Jason A. Ibey is well within the normal range of fees charged by firms in Southern California for an associate attorney.

Hence, Class Counsels' combined lodestar of $419,913.50 is reasonable

---

[10] *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 643-44 (S.D. Cal. 2011), *aff'd in part*, 473 F. Appx. 716 (9th Cir. 2012) (approving hourly rates in the San Diego area of $675-795 for partners, up to $410 for associates, and up to $345 for paralegals); *see also POM Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842 at *4 (C.D. Cal) (finding partner rates of $750 to $475 and associate rates of $425 to $275 reasonable).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

and supports the requested fees.

**B.    The Requested Costs Are Fair And Reasonable**

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970).  The significant litigation expenses Class Counsel incurred in this case were necessary to secure the resolution of this litigation. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in class action litigation).  Based upon the discussion herein, Class Counsel believe that the costs incurred in this matter are fair and reasonable.

Throughout the course of this litigation, Class Counsel had to incur costs totaling $28,110.64 ($9,175.49 by Hyde & Swigart, $14,038.55 by Kazerouni Law Group, APC, and $4,896.60 by Law Offices of Todd M. Friedman, P.C.), which represents a loss to Class Counsel of $3,110.64, as the Settlement Agreement provides for recovery of up to $25,000 (SA § 6.01). *See* Kazerounian Decl. ¶ 21; Swigart Decl., ¶¶ 20-21; Friedman Decl., ¶ 17. These costs were necessary to secure the resolution of this litigation and Class Counsel put forward said costs without assurance that Class Counsel would ever be repaid.

Here, the Class Notice informed Class Members that Class Counsel would seek an award of costs up to $25,000 and the Settlement Agreement authorizes a petition of costs for up to $25,000. SA § 6.01.  In light of the expenses Class Counsel were required to incur to bring this case to its current settlement posture, representing a loss of $3,110.64 as of January 7, 2015, the request for costs of $23,703.64 is reasonable.  Class Counsel will likely incur additional costs as this case moves to the final approval stage, which final approval hearing is set for April

20, 2015.

### C.   The Requested Incentive Award Is Fair And Reasonable

As the Ninth Circuit has recognized, "named Plaintiffs, as opposed to designated class members who are not named Plaintiffs, are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service awards "are fairly typical in class action cases"). Such awards are intended to compensate class representatives for work done on behalf of the class [and] make up for financial or reputational risk undertaken in bringing the action." *Id*. Small incentive awards, such as those requested here, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. The requested modest incentive award of $1,500 for the Plaintiff is well justified.[11] This amount awarded as a service award is well in line with similar awards approved by other federal courts, and supported by the recent Ninth Circuit authority in *Radcliffe v. Experian Info. Solutions, Inc*., 2013 U.S. App. LEXIS 9126 (9th Cir. Mar. 4, 2013).

In addition to lending her name to this matter, and thus subjecting herself to public attention, Plaintiff has actively engaged in this action. Among other things, Plaintiff (1) provided information to Class Counsel for the Complaints and other pleadings; (2) reviewed pleadings and other documents; (3) communicated on a

---

[11] Courts have long recognized that a class representative should be compensated for their service to the class. *In re Mego Fin. Corp. Sec. Lit.*, 2123 F.3d 454, 463 (9th Cir. 2000); *West v. Circle K Stores, Inc.*, 2006 U.S. Dist. LEXIS 76558, at *26 (E.D. Cal. 2006). Such compensation provides the economic motivation to induce potential plaintiffs to lend their names and support to class actions generally. *West*, 2006 U.S. Dist. LEXIS 76558, at *26. And the same incentive fees further ensure that meritorious actions are prosecuted to completion. *Linney v. Cellular Alaska Part.*, 1997 U.S. Dist. LEXIS 24300, at *23 (N.D. Cal. 1997). A court should order an incentive award when it finds that it is not the product of collusion and does not come at the expense of the remaining members of the class. *Louie v. Kaiser Found. Health Plan, Inc.*, 2008 U.S. Dist. LEXIS 78314, at *17-18 (S.D. Cal. 2008).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

regular basis with counsel and kept herself informed of progress in the litigation and settlement negotiations; (4) made herself available telephonically for mediations; (5) and (6) reviewed and approved the proposed settlement. *See* Declaration of Carrie Couser, ¶¶ 4-6, filed concurrently.

Plaintiff's dedication to this action was notable, particularly given the relatively modest personal financial stakes in this case. *See Vandervort v. Balboa Capital Corp.*, 88 Fed. R. Serv. 3d 365 (C.D. Cal. 2014) (awarding an incentive payment of $10,000 for name plaintiffs in a TCPA case); *Opson v. Hanesbrands Inc.*, 2009 U.S. Dist. LEXIS 33900, at *27-28 (N.D. Cal. Apr. 3, 2009) (awarding $5,000 incentive payment and finding that "in general, courts have found that $5,000 incentive payments are reasonable"); *Ordick v. UnionBancCal Corp.*, 2012 U.S. Dist. LEXIS 171413, at *11 (N.D. Cal. Dec. 3, 2012) (awarding $5,000 to named Plaintiffs where "the settlement was reached at the early stages of litigation").

Thus, Class Counsel respectfully request the Court award a modest incentive payment of $1,500 to the named Plaintiff for her efforts as Class Representative.

## IV.   CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court grant Plaintiff's motion for an award of attorneys' fees in the total amount of $2,118,750 (25% of the Settlement Fund), litigation costs of $25,000 (actual costs are $28,110.64); costs of notice and claims administration in the amount of $2,143,942.00 as of December 31, 2014, and an incentive award in the amount of $1,500 for the named Plaintiff. Kazerounian Decl., ¶ 4; Swigart Decl., ¶ 3, Friedman Decl., ¶ 4.

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

Date: January 9, 2015

By:/s/ Abbas Kazerounian
    ABBAS KAZEROUNIAN, ESQ.
    ATTORNEY FOR PLAINTIFF

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022
*Attorneys for Plaintiff*

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman, Esq. (SBN: 216752)
tfriedman@attorneysforconsumers.com
324 S. Beverly Dr., #725
Beverly Hills, CA 90212
Telephone: (877) 206-4741
Facsimile: (866) 633-0228
*Attorneys for Plaintiff*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626