**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Attorneys for Plaintiff and Proposed Settlement Class

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARRIE COUSER, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COMENITY BANK,<br><br>Defendant | Case No.: 12-CV-02484-MMA-BGS<br><br>**DECLARATION OF JOSHUA B. SWIGART IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE PAYMENT**<br><br>**Date**: April 20, 2015<br>**Time**: 2:30 p.m.<br>**Place**: Courtroom 3A<br>**Judge**: Hon. Michael M. Anello |

SWIGART DECL. IN SUPP. OF MTN. FOR ATTORNEYS' FEES, COSTS AND INCENTIVE PAYMENT
CASE NO. 12-CV-02484-MMA-BGS

# DECLARATION OF JOSHUA B. SWIGART

1. I, Joshua B. Swigart, hereby declare under penalty of perjury, and pursuant to the laws of the State of California and the United States of America, that the foregoing is true and correct. If called as a witness, I would competently testify to the matters herein from my own personal knowledge.

2. I am a partner of the law firm of Hyde & Swigart and co-counsel of record for plaintiff Carrie Couser ("Plaintiff") in the above-captioned action against defendant Comenity Bank ("Defendant"). I am a member in good standing of the bars of the State of California and District of Columbia. I am also admitted in every federal district in California and have handled federal litigation in Arizona, Washington, Minnesota, Tennessee and Texas. I am writing this declaration in support of Plaintiff's Motion for Award of Attorneys' Fees, Costs, and Incentive Award. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

3. Plaintiff seeks the Court's approval of the following to be paid from $8,475,000 Settlement Fund:

    a. Attorneys' fees in the amount of $2,118,750, representing 25% of the $8,475,000 Settlement Fund;

    b. Costs of litigation incurred by Class Counsel in the amount of $25,000 (actual costs are $28,110.64 as of January 7, 2015);

    c. Notice and claims administration costs estimated to be $2,092,278 ($1,998,988.85 as of December 15, 2014); and

    d. An incentive award of $1,500 to the named Plaintiff.

4. As part of the Settlement Agreement, previously filed as Exhibit 1 to the Declaration of Abbas Kazerounian In Support of Preliminary Approval of Class Action Settlement and Certification of Settlement Class (Dkt. No. 52:3), Plaintiff and Defendant (hereinafter the "Parties"), agreed that

1  Defendant would pay the following from the Settlement Fund: (i) the settlement administration and notice costs (estimated at $2,092,278); (ii) attorneys' fees not to exceed 25% of the Settlement Fund (iii) costs of litigation not to exceed $25,000; (iv) an incentive award of $1,500 for the named Plaintiff. Settlement Agreement or "SA" § 2.20, 2.31, 5.01, 6.01 and 6.02.

5. The Settlement Agreement was the result of good faith, arm's length settlement negotiations over many months, including a telephonic Early Neutral Evaluation Conference presided over by Magistrate Judge Bernard G. Skomal and three full-day mediation sessions before the Honorable Judge Leo Papas (Ret.). *See* Recitals to SA § 1.02 and 1.03. Plaintiff also Plaintiff conducted substantial confirmatory discovery (including two sets of written discovery, and two Fed. R. Civ. P. 30(b)(6) depositions taken on January 21, 2014 and August 21, 2014), confirming the total number of cell phones called, the efficacy of the processes and methodology used by Comenity Bank to assemble the data, and determining the estimated number of class members. The parties also conducted informal and formal discovery surrounding Plaintiff's claims and Defendant's defenses.

## I. BACKGROUND AND EXPERIENCE

6. Since my admission to the California bar in 2003, I have been engaged exclusively in the area of consumer rights litigation, primarily in the area of fair debt collections, the defense of debt collection lawsuits, and class action litigation under the Telephone Consumer Protection Act ("TCPA") and Fair Debt Collection Practices Act ("FDCPA").

7. Hyde & Swigart has been preliminarily confirmed as class counsel for purposes of this action and to proceed with the class action settlement. [Dkt. No. 54]. My firm, Hyde & Swigart, in which I am a principal, has litigated over 1,200 cases in the past ten years. My firm has three offices in two

states, San Diego, California, Riverside, California and Phoenix, Arizona. Hyde & Swigart has extensive experience in consumer class actions and other complex litigation, including the TCPA. My firm has a history of aggressive, successful prosecution of consumer class actions, specifically under the Fair Debt Collection Practices Act and Telephone Consumer Protection Act.

A. **EXPERIENCE RELEVANT TO THE TELEPHONE CONSUMER PROTECTION ACT**

8. I have filed and litigated several other class actions based on the Telephone Consumer Protection Act in the past three years. The following is a list of other TCPA class actions which I am or have been personally involved in:

   a. *Bellows v. NCO Financial Systems, Inc.*, 07-CV-01413-W (AJB) (S.D. Cal) (One of the first class action settlements under the TCPA in the nation; Hyde & Swigart served as co-lead counsel; final approval granted in 2009);

   b. *Adams v. AllianceOne, Inc.*, 08-CV-0248-JAH (S.D. Cal) (Nationwide TCPA class settlement providing class relief of $40 per claiming class member resulting in over $2,500,000 paid to claiming class members; final approval granted in 2013);

   c. *Gutierrez, et al. v. Barclays Group, et al.*, 10-CV-1012-DMS (BGS) (Common fund created in the amount of $8,262,500 based on the receipt of unsolicited text messages; final approval granted in 2012);

   d. *Malta, et al. v. Wells Fargo Home Mortgage, et al.*, 10-CV-1290-IEG (BLM) (Served as co-lead counsel for a settlement class of borrowers in connection with residential or automotive loans and violations of the TCPA in attempts to collect on those accounts; obtained a common settlement fund in the amount of $17,100,000; final approval granted in 2013);

e. *Conner v. JPMorgan Chase Bank, et al.*, 10-CV-1284-DMS (BGS) (S.D. Cal.) (preliminarily approved for $11,973,558; awaiting written order finally approving settlement after court finally approved settlement at hearing);

f. *In Re: Midland Credit Management, Inc., Telephone Consumer Protection Act Litigation*, 11-md-2286-MMA (MDD) (S.D. Cal.) (Counsel for a Plaintiff in the lead action, prior to the action being recategorized through the multi-district litigation process; still actively involved in the MDL litigation and settlement process);

g. *In Re: Portfolio Recovery Associates, LLC Telephone Consumer Protection Act Litigation*, 11-md-02295-JAH (BGS) (Counsel for a Plaintiff in the lead action, prior to the action being recategorized through the multi-district litigation process; still actively involved in the MDL litigation and settlement process);

h. *Arthur v. SLM Corporation*, 10-CV-00198-JLR (W.D. Wash.) (Nationwide settlement achieving the then-largest monetary settlement in the history of the TCPA: $24.15 million; final approval granted in 2012);

i. *Lo v. Oxnard European Motors, LLC, et al.*, 11-CV-1009-JLS-MDD (S.D. Cal.) (Achieving one of the highest class member payouts in a TCPA action of $1,331.25; final approval granted in 2012);

j. *Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*, 10-01777-AJB-NLS (S.D. Cal.) (Approved as co-lead counsel and worked to obtain a national TCPA class settlement where claiming class members each received payment in the amount of $70.00; final approval granted in 2013);

k. *Mills v. HSBC Bank Nevada, N.A.*, Case No. 12-CV-04010-SI (N.D. Cal.) (Action was transferred to the Northern District of Illinois and

settlement was preliminarily approved at $39 million.)

l. *Heinrichs v. Wells Fargo Bank, N.A.*, 13-CV-05434-WHA (N.D. Cal.);

m. *Rose v. Bank of America Inc.*, 11-CV-02390-EJD (N.D. Cal) (National TCPA action achieving a settlement of $32 million, final approval granted in August of 2014.)

n. *Sherman v. Kaiser Foundation Health Plan, Inc.*, 13-CV-0981-JAH (JMA) (S.D. Cal.) (preliminarily approved for $5,350,000);

o. *Rivera v. Nuvell Credit Company LLC*, 13-CV-00164-TJH-OP (E.D. Cal);

p. *Foote v. Credit One Bank, N.A. et al.*, 13-cv-00512-MWF-PLA (C.D. Cal.);

q. *Abdeljalil v. GE Capital Retail Bank*, 12−CV−02078−JAH−MDD (S.D. Cal) (motion for class certification filed; decision pending);

r. *Webb v. Healthcare Revenue Recovery Group*, 13-cv-00737–RS (N.D. Cal.);

s. *Gehrich v. Chase bank USA, N.A.,* 1:12-CV-5510 (N.D. IL) – (preliminarily approved for $34,000,000);

t. *Sherman v. Yahoo! Inc.*, 13-cv-00041-GPC-WVG (S.D. Cal.) (defeated defendant's motion for summary judgment);

u. *Lemieux v. EZ Lube, Inc. et al.*, 12-cv-01791-BAS-JLB (S.D. Cal.) (finally approved for $479,364); and

v. *Knutson v. Schwan's Home Service, Inc. et al.*, (preliminarily approved for $ 2,535,280).

9. Many the cases listed above, which have settled, have resulted in the creation of combined common funds and/or distribution to class member in the tens of millions of dollars. The outstanding results mentioned above are a direct result of the diligence and tenacity shown by both myself and Hyde & Swigart in successfully prosecuting complex class actions.

10. I was lead counsel in an appeal before the Ninth Circuit Court of Appeals in *Knutson v. Sirius XM Radio*, No. 12-56120 (9th Cir. 2014), which resulted in an order in favor of my client.

### B. HYDE & SWIGART'S OTHER CONSUMER RELATED EXPERIENCE AND RESULTS

11. Hyde & Swigart has extensive experience in other consumer related issues, including California Penal Code § 632, *et seq.*, the Fair Debt Collection Practices Act and other related consumer statutes. A brief summary of a non-inclusive list of notable published decisions are as follows:

   a. *CashCall, Inc. v. Superior Court*, 159 Cal. App. 273 (2008); (Allowing the original plaintiff who lacked standing in a class action to conduct pre-certification discovery of the identities of potential plaintiffs with standing);

   b. *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377 (2011) (Co-lead counsel on a class action involving privacy rights under Cal. Penal Code § 632 et seq. Appeals court reversing the trial courts granting of Defendant's motion for summary judgment after case was certified);

   c. *Engelen v. Erin Capital Management, LLC*, et al., No. 12-55039 (9th Cir. 2013, not for publication, D.C. No.: 3:10-cv-01125-BEN-RBB)(Reversing the lower court's granting of summary judgment to the defendant debt collector on the basis of the bona fide error defense and remanding for further proceedings);

   d. *Sherman v. Yahoo!, Inc.*, 2014 U.S. Dist. LEXIS 13286; 13-CV-0041-GPC-WVG (S.D. Cal.)(TCPA class action where Defendant's motion for summary judgment was denied holding that a single call or text message with the use of an ATDS may be actionable under the TCPA);

   e. *Olney v. Progressive Casualty Insurance Company*, 2014 U.S. Dist. LEXIS 9146 (S.D. Cal.); 13-CV-2058-GPC-NLS (Defendant's motion

to dismiss or in the alternative to strike the class allegations was denied finding that debt collection calls were not exempt from coverage under the TCPA);

f. *Iniguez v. The CBE Group, Inc.*, 2013 U.S. Dist. LEXIS 127066 (E.D. Cal.); 13-CV-00843-JAM-AC (The court denying Defendant's motion to dismiss and to strike class allegations holding that the TCPA applies to any call made to a cellular telephone with an ATDS).

g. *Catala v. Resurgent Capital Servs., L.P.*, 08-CV-2401 NLS, 2010 U.S. Dist. LEXIS 63501 (S.D. Cal.)(Co-lead counsel on a class settlement involving the Fair Debt Collection Practices Act);

h. *Hosseinzadeh v. M.R.S. Assocs.*, 387 F. Supp. 2d 1104 (C.D. Cal. 2005)(Summary judgment was granted *sua sponte* in favor of a debtor where debt collector violated the Fair Debt Collection Practices Act, when its employees failed to disclose the debt collector's identity and the nature of its business in the messages left on the debtor's answering machine). This case has now been followed in at least four different districts throughout the country.

i. *Edstrom v. All Servs. & Processing*, 2005 U.S. Dist. LEXIS 2773 (N.D. Cal. 2005)(Numerous omissions from a letter sent by a debt collector to members of a homeowners association, and a statement requiring any dispute to be put in writing, violated 15 U.S.C. § 1692g(a) of the FDCPA and Cal. Civ. Code §1788.17. The FDCPA required strict compliance; actual confusion on debtors' part was not required);

j. *Forsberg v. Fid. Nat'l Credit Servs.*, 2004 U.S. Dist. LEXIS 7622 (S.D. Cal. 2004)(Plaintiff alleged sufficient facts to support his claim that a collection company, in its initial communication, did not comply with the statutory requirements for notice of validation of debts under the FDCPA);

k. *Sparrow v. Mazda Am. Credit*, 385 F. Supp. 2d 1063 (N.D. Cal. 2005) (Court struck Defendant's counter claim of the underlying debt in a fair debt action based on lack of subject matter jurisdiction);

l. *Geoffroy, et al. v. Washington Mutual Bank,* 484 F. Supp. 2d 1115 (S.D. Cal. 2007)(Court striking down Defendant's arbitration agreement as both procedurally and substantively unconscionable);

m. *Yang v. DTS Financial Group*, 07-CV-1731-JLS (WMc) (Holding that for profit debt settlement companies are covered under the FDCPA and can be construed as "debt collectors" under 15 U.S.C. § 1692a(6));

n. *Mason v. Creditanswers,* 2008 U.S. Dist. LEXIS 68575; (Holding that a forum selection clause causing a California consumer to litigate its claims seems contrary to the polices advanced by certain consumer protection statutes).

o. *Myers v. LHR, Inc.*, 543 F.Supp.2d 1215 (2008) (Recognizing actual and statutory damages in the amount of $92,000 in a default judgment based on violations of the State and Federal collection statutes);

p. *Yates v. Allied Intl Credit Corp.*, 578 F. Supp. 2d 1251 (2008) (Holding a debtors claim based on the FDCPA stemming from the filing of a false police report was not subject to the litigation privilege under Cal. Civ. Code § 47(b));

q. *Owings v. Hunt & Henriques, et al.*, 2010 U.S. Dist. LEXIS 91819 (S.D. Cal.) (Recognizing that the Service Members Civil Relief Act applies to California National Guard Members and that the debt collection attorney's false declaration the court violates the FDCPA);

r. *Heathman v. Portfolio Recovery Assocs., LLC*, 2013 U.S. Dist. LEXIS 98742 (S.D. Cal. 2013)(Holding that failing to properly list and disclose the identify of the original creditor in a state collection pleading is a violation of the Fair Debt Collection Practices Act under 15 U.S.C. §

1692e)).

C. ADDITIONAL RELEVANT TRAINING, SPEAKING/TEACHING ENGAGEMENTS AND ASSOCIATIONS

12. I have undergone extensive training in the area of consumer law and the Telephone Consumer Protection Act. The following is a list of recent training conferences I attended, some of which I have presented:

a. National Consumer Law Conference; Oakland, CA – 2003;

b. National Consumer Law Conference (FDCPA Mini-Conference); Kansas City, MO – 2004;

c. National Consumer Law Conference; Boston, MA – 2004;

d. Five-day extensive one-on-one training with The Barry Law Office; San Diego, CA –2005;

e. Three-day FDCPA Mini-Conference; Minneapolis, MN – 2005;

f. Four-day extensive one-on-one training with The Barry Law Office; Minneapolis, MN – 2005;

g. Four-day National Association of Consumer Advocates Conference; Minneapolis, MN – 2005;

h. Four-day National Consumer Law Center Conference; Nashville, TN – 2008;

i. Three-day National Consumer Law Center Conference; Portland, OR - 2008;

j. Speaker at a Three-day National Consumer Law Center Conference; San Diego, CA - 2009;

k. Speaker at ABA/JAG presentation to military service members and counsel; MCRD, San Diego CA – 2010;

l. Speaker at ABA teleconference on defending consumer credit card debt and related issues; San Diego, CA – 2010;

m. Three-day National Consumer Law Center Conference; Seattle, WA -

2011;

n. Two-day FDCPA Mini-Conference; New Orleans; LA - 2012;

o. Two-day National Consumer Law Center Conference on the FDCPA; Seattle, WA - 2012;

p. National Consumer Law Center Conference, National Convention; Baltimore, MD - 2013;

q. Speaker at ABA National Conference, Business Litigation Section; Trends in Consumer Litigation; San Francisco, CA - 2013;

r. Speaker at National Consumer Law Center; Nuts and Bolts of TCPA Litigation; San Antonio, TX - 2014;

s. Speaker at San Diego County Bar Association; Convergence of the FDCPA and Consumer Bankruptcy; San Diego, CA - 2014;

t. Guest Speaker at California Western School of Law; Consumer Law class - 2014;

u. 8th Annual Class Action Seminar; San Francisco, CA - 2014;

v. Attendee at Consumer Attorneys of California – Sept. of 2014; and

w. Speaker at San Diego County Bar Association – 2014.

13. I am a member in good standing of the following local and national associations:

a. National Association of Consumer Advocates;

b. Federal Bar Association, Southern District of California Chapter;

c. San Diego County Bar Association;

d. Riverside County Bar Association;

e. San Bernardino County Bar Association;

f. Enright Inns of Court (2011-2014);

g. American Association for Justice;

h. Public Justice.

14. Therefore, I believe that my experience and years in practice are sufficient

to justify my hourly billing rate in this case of $595 per hour, which has been approved before in *Connor v. JP Morgan Chase Bank et al.* and *Lemieux v. EZ Lube, Inc.*

### D. EXPERIENCE OF HYDE & SWIGART'S STAFF

15. Hyde & Swigart employs a highly qualified staff of paralegals, law clerks, and legal assistants. In particular my paralegal, Eva Dickey, graduated Manga Cum Laude from North Arizona University and has completed and ABA approved paralegal program at UCSD. Since joining Hyde & Swigart in 2013, Ms. Dickey has worked directly under my supervision on a variety of complex class actions including this action.  However, the hours for paralegal work and support staff have been zeroed and are not included in the fee request.

### II. OVERVIEW OF HYDE & SWIGART'S EFFORTS IN THIS ACTION

### A. CONTINGENT NATURE OF ACTION

16. This action, filed on October 12, 2012, required Hyde & Swigart to spend time on this litigation that could have been spent on other matters. At various times during the litigation of this class action, this lawsuit has consumed my time as well as my firm's resources. My firm has not been paid anything for our work on this case since it was filed.  It is my opinion that law firms in such a position expect to receive a multiplier in cases such as these because of the risk taken, the extent to which firms are unable to take on other cases, the delay in getting paid and the costs we have to advance.

### III. HYDE & SWIGART'S LODESTAR

17. Hyde & Swigart has maintained contemporaneous time records since the commencement of this action.  Hyde & Swigart has worked a total of

---

SWIGART DECL. IN SUPP. OF MTN. FOR ATTORNEYS' FEES, COSTS AND INCENTIVE PAYMENT
CASE NO. 12-CV-02484-MMA-BGS              11

239.80 attorney hours for a total lodestar of $142,681.[1] This figure includes an additional estimated 45 hours for preparing the final approval hearing papers, appearing at the hearing, responding to anticipated objections by class members and overseeing the settlement administration. Of course, if more than 45 hours are needed, that would increase my lodestar.

a. All attorneys and staff at Hyde & Swigart are instructed to maintain contemporaneous time records reflecting the time spent on this and other matters. The regular practice at Hyde & Swigart is for all attorneys and staff to keep contemporaneous time records, maintained on a daily basis, and describing tasks performed in 0.1 hour increments. Firm policy requires all staff to enter their time into an electronic timekeeping system on a daily basis. I review and audit the time on a regular basis.

b. Hyde & Swigart's lodestar will grow as we continue to finalize the settlement process and close the litigation. The claims period will last for 20 days, and Hyde & Swigart's commitment of time and labor to this case will continue until (and likely beyond) that date, especially since the deadline to opt-out or object is 30 days away. Hyde & Swigart will continue to assist Class members with individual inquiries, will oversee the claims resolution process, and Class Counsel will help resolve Class member challenges to the result of their claims submissions. Judging by previous experiences, these responsibilities will require dozens of hours of work by Class Counsel over the coming months.

18. It is my understanding that co-counsel Abbas Kazerounian and Jason A. Ibey at the Kazerouni Law Group, APC, have incurred a total of 302.3 hours of attorney time, which includes an expected additional 40 hours for preparing the final approval hearing papers, appearing at the hearing and

---

[1] The hourly attorney rate sought and used in this lodestar calculation is $595.

|   |   |
|---|---|
| 1 | overseeing the settlement administration. Further, it is my understanding that Mr. Kazerounian's hourly billing rate is $560, that Mr. Ibey's hourly billing rate is $365, and that Kazerouni Law Group, APC, has to date incurred fees in the amount of $157,178.50. |
| 19. | Further, it is my understanding that co-counsel Todd M. Friedman at the Law Offices of Todd M. Friedman, P.C. has incurred 224.4 hours of attorney time, which includes an expected additional 25 hours for preparing the final approval hearing papers, appearing at the hearing and overseeing the settlement administration. It is also my understanding that Mr. Friedman's hourly billing rate is $535, and that Mr. Friedman has to date incurred fees in the amount of $120,054. |

### IV. HYDE & SWIGART'S COSTS

20. Hyde & Swigart maintains all books and records regarding costs expended on each case in the ordinary course of business, which books and records evidence which checks have issued on each case and/or which accounts payable are associated with each matter. I have reviewed the records of costs expended in this matter.

21. Hyde & Swigart has incurred $9,175.49 in expenses related to the present action, which includes filing fees; service and courier fees; mediation fees; and Federal Express or messenger charges. It is my understanding that Kazerouni Law Group, APC has incurred $14,038.55 in litigation costs and Law Offices of Todd M. Friedman, P.C. has incurred $4,896.60 in litigation costs. The total $28,110.64 in ligation costs (as of January 7, 2015) exceeds the $25,000 in costs authorized by the Settlement Agreement, which means that Class Counsel are taking a loss of $3,110.64. SA § 6.01.

### V. REASONABLENESS OF HOURLY RATES

22. Hyde & Swigart's hourly rates are reasonable in respect to the ranges

---

SWIGART DECL. IN SUPP. OF MTN. FOR ATTORNEYS' FEES, COSTS AND INCENTIVE PAYMENT
CASE NO. 12-CV-02484-MMA-BGS                    13

charged by comparable law firms in the State of California.[2]

23. From 2009 through present Hyde & Swigart's approved hourly rate has steadily increased. Different rates have been approved based on the complex or non-complex nature of the litigation. For non-complex matters, courts have regularly awarded an hourly rate for partners between $355 - $395.[3] For complex matters, Hyde & Swigart's reasonable billing rate has been approved by the Courts from $395 - $595.[4] This Court recently approved my hourly rate at $545 in a class action that was filed and litigated beginning in 2010. *See Malta v. Wells Fargo Home Mortgage*, 10-CV-1290-BEN (NLS) [Dkt. 92]. The hourly rate sought in this matter is $595 per hour, which reflects a modest increase in my hourly rate attributable to an additional four (4) years of experience litigating complex class actions since the *Malta* action was filed and litigated.

## VI. OVERVIEW OF WORK PERFORMED BY HYDE & SWIGART AND THE CONTINGENT NATURE OF THE ACTION

24. To provide the Court with an overview of the work done by Hyde & Swigart in this case, without requiring the review of our voluminous time

---

[2] *See* Survey from the National Law Journal in 2012, submitted as Exhibit A to the Declaration of Abbas Kazerounian, filed concurrently.

[3] *See Basinger-Lopez v. Tracy Paul & Associates, et al.*, C-08-5192 SBA (N.D. Cal.) [Dkt. 14]; *Bellows v. NCO Financial Systems, Inc.*, 07-CV-01413 W(AJB) (S.D. Cal) [Dkt. 42]; *Dillon v. United Processing, Inc.*, 08-CV-1235 JM(NLS) (S.D. Cal.) [Dkt. 14].

[4] *Lemiuex v. Global Credit & Collection Corp.*, 08-CV-1012-IEG (POR) [Dkt. 46]; *Malta v. Wells Fargo Home Mortgage*, 10-CV-1290-BEN (NLS) [Dkt. 92]; *Adams v. AllianceOne, Inc.*, 08-CV-0248-JAH (WVG) [Dkt. 137]; *Gutierrez v. Barclays Group, et al.*, 10-CV-1012-DMS-BGS [Dkt. 57]; *Conner v. JPMorgan Chase Bank, et al.*, 10-CV-1284-DMS (BGS) (S.D. Cal.); *Lemieux v. EZ Lube, Inc. et al.*, 12-cv-01791-BAS-JLB (S.D. Cal.) [Dkt. No. 83].

---

**SWIGART DECL. IN SUPP. OF MTN. FOR ATTORNEYS' FEES, COSTS AND INCENTIVE PAYMENT**
**CASE NO. 12-CV-02484-MMA-BGS**              14

records themselves, I divide my firm's work into specific phases that track the progress of the litigation from our initial investigation through settlement.

25. *Initial Case Investigation and Pleadings*. Hyde & Swigart spent approximately 6.8 hours on combined initial case investigation, research, and pleadings. Such efforts included: consulting with co-counsel regarding factual and legal research into the merits of the TCPA claims; discussing the facts with our client; consult with co-counsel regarding research on the Defendant, including whether Defendant had been investigated for any prior TCPA violations of similar sort; and, review and revise Complaint and Defendant's Answer.

26. *Discovery*. Hyde & Swigart spent approximately 58.6 hours on discovery which included the following: preparing Plaintiff's initial disclosures; review of the Defendants initial disclosures; draft subsequent sets of written discovery; multiple written and telephonic meet and confer conferences with opposing counsel in regards to discovery extensions and disputes; reviewing documents provided by Defendant's in response to requests for production, and reviewing deposition transcripts.

27. *Settlement Negotiations and Settlement Approval*. Hyde & Swigart spent approximately 116.1 hours negotiating settlement over many months and seeking the Court's approval of the settlement thereafter. This included the following: preparing for an Early Neutral Evaluation Conference and Case Management Conference, and preparing for and attending three full-day mediation sessions; negotiating specific settlement details subsequent to establishing general settlement terms through mediation; preparing the settlement agreement including claims and notice forms, preparing the Motion for Preliminary Class Approval, and preparing this Motion.

28. *Claims Administration and Responding to Class Member's Inquires*. Hyde

& Swigart spent approximately 12.5 hours responding to class member's inquires and consulting with the Claims Administrator and Defendant's counsel regarding notice, claims, and website issues.

29. *Anticipated Additional Hours Expended for Overseeing Settlement Administration and Final Approval.* I anticipate Hyde & Swigart will incur an additional 45 hours for preparing the final approval hearing papers, appearing at the hearing, and overseeing the settlement administration, including addressing any objections by settlement Class Members.

### VII. CAREFUL REVIEW OF HYDE & SWIGART'S LODESTAR

30. I personally reviewed the time reported in this action for all attorneys for all attorneys, law clerks, paralegals, and other personnel. I have not included and I am not making a request of the time spent by support staff at Hyde & Swigart in this matter.

### VIII. INCENTIVE AWARD SOUGHT

31. As set forth in the Motion, the named class representative is applying for a modest incentive award. The Class Representative, Ms. Carrie Couser, has been active in this litigation and provided critical information to her counsel, which made the successful litigation of this matter possible. Ms. Couser assisted with the factual investigation in his claims, responded to discovery requests, reviewed settlement proposals and made herself available for settlement negotiations which took place over many months.

32. The $1,500 incentive award sought by Ms. Couser is modest for serving as class representative. SA § 6.02.

33. Based on the amount of work and involvement by Plaintiff, the small incentive award in this case is justified.

I declare under penalty of perjury of the laws of California and the United States that the foregoing is true and correct, and that this declaration was executed

in San Diego, CA on January 7, 2015.

By:   /s/ Joshua B. Swigart
      Joshua B. Swigart