**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN 249203)
ak@kazlg.com
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Counsel On Signature Page]

Attorneys for the Plaintiff and Proposed
Settlement Class

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CARRIE COUSER, Individually And On Behalf of All Others Similarly Situated,**<br><br>PLAINTIFF,<br><br>V.<br><br>**COMENITY BANK,**<br><br>DEFENDANT. | **Case No.:** 12-cv-02484-MMA-BGS<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date:** April 20, 2015<br>**Time:** 2:30 p.m.<br>**Place:** 3A<br>**Judge:** Hon. Michael M. Anello<br><br>**[Declaration of Abbas Kazerounian; Declaration of Joshua B. Swigart; Declaration of Todd M. Friedman; Declaration of Carrie Couser; Declaration of Patrick M. Passarella]** |

*KAZEROUNI LAW GROUP, APC*
*245 Fischer Avenue, Suite D1*
*Costa Mesa, California 92626*

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................ 1

II. PROCEDURAL HISTORY .......................................... 2

III. THE TCPA AND THE CLASS ALLEGATIONS ............. 3

IV. SETTLEMENT ...................................................... 4

   A. The Fairness Hearing ........................................... 5

   B. Attorneys' Fees, Costs Application, And Incentive Payment ....... 5

   C. Class Action Settlement Terms ............................... 5

      1. Certification of a Fed. R. Civ. P. 23(b)(3) Settlement Class ........................................................... 5

      2. Settlement Fund .......................................... 6

V. ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL 7

   A. CAFA Notice ................................................. 7

   B. Direct Mail Notice Provided ................................. 7

   C. Publication Notice ........................................... 8

   D. Formal Notice Posted On The Settlement Website ............. 9

   E. Claims Procedure, Including Expenses, And Claims Filed ........ 9

      1. Zero Objections and Only 167 Requests For Exclusion . 11

      2. Settlement Checks ...................................... 11

      3. Class Representative's Incentive Payment ............... 12

      4. Attorneys' Fees and Costs .............................. 12

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

5. **Administrator's Expenses For Notice nd Administration** ...................................................................... 13

VI. **THE PROPOSED SETTLEMENT IS FUNDAMENTALY FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED** ...................................................... 13

A. **The Settlement Satisfies The Requirements of Fed. R. Civ. P. 23** 13

B. **The Settlement Should Be Finally Approved By The Court** ...... 14

1. **The Strength of The Lawsuit And The Risk, Expense, Complexity, And Likely Duration of Future Litigation** .. 15

a. *Presence of an arbitration agreement* ............... 16

b. *Some courts in this District have denied motion for class certification in TCPA cases* ..... 17

c. *Trial would present risks to both parties* ........... 17

2. **The Amount Offered In Settlement** ................................ 18

3. **Class Members were provided with the best notice possible, which afforded them an opportunity to choose whether to participate in the Settlement** ........... 19

4. **The Extent of Discovery Completed** ................................ 22

5. **The Experience And Views of Class Counsel** .................. 23

6. **The Reaction of Class Members To The Settlement** ....... 24

VII. **CONCLUSION** ........................................................................ 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

# TABLE OF AUTHORITIES

*Adams v. AllianceOne Receivables Management, Inc.,*
  08-cv-00248 (S.D. Cal. 2008) ........................................................ 18

*Alea London Ltd. v. Am. Home Servs.,*
  638 F.3d 768 (11th Cir. Ga. 2011) .................................................. 3

*Arthur v. Sallie Mae, Inc.,*
  C10-0198-JLR (W.D. Wash.) ................................................ 17, 18

*Barani v. Wells Fargo Bank, N.A.,,*
  12-cv-02999-GPC-KSC .......................................................... 20, 24

*Beecher v. Able,*
  441 F. Supp. 426 (S.D. N.Y. 1977) ................................................ 21

*Bellows v. NCO Financial Systems, Inc.,*
  07-CV-01413-W-AJB (S.D. Cal.) ................................................ 19

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
  603 F.2d 263 (2d Cir. 1979) .......................................................... 17

*Boyd v. Bechtel Corp.,*
  485 F. Supp. 610 (N.D. Cal. 1979) ............................................... 23

*Boyd v. Bank of Am. Corp.,*
  2014 U.S. Dist. LEXIS 162880 (C.D. Cal. Nov. 18, 2014) ........... 16

*Connelly v. Hilton Grand Vacations Co., LLC,*
  294 F.R.D. 574 (S.D. Cal. Oct. 29, 2013) ..................................... 17

*Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) .......................................................... 25

*Ellis v. Naval Air Rework Facility,*
  87 F.R.D. 15 (N.D. Cal. 1980) ................................................ 15, 24

*Girsh v. Jepson,*
  521 F.2d 153 (3d Cir. 1975) .......................................................... 14

///

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

*Grant v. Capital Mgmt. Servs., L.P.*,

 449 Fed. Appx. 598 (9th Cir. Cal. 2011) .................................................... 3

*Hanlon v. Chrysler Corp.*,

 150 F. 3d 1011 (9th Cir. 1998) ...................................... 12, 14, 15

*Hoffman v. Bank of America, N.A.*,

 12-cv-00539-JAH-DHB (S.D. Cal.) ............................................... 20

*In re Bluetooth Headset Products Liability Litig.*,

 654 F.3d 935 ................................................................. 15

*In re Capital One Telephon Consumer Protection Act Litig.*,

 MDL No. 2416 (N.D. Ill. Feb. 12, 2015) .................................. 17

*In re Diamond Foods, Inc.*,

 2014 U.S. Dist. LEXIS 3252 (N.D. Cal. Jan. 10, 2014) ............................ 11

*In re Ferrero Litig.*,

 2012 U.S. Dist. LEXIS 15174 (S.D. Cal. Jan. 23, 2012) ..........................15

*In re Global Crossing Sec. and ERISA Litig.*,

 225 F.R.D. 436 (E.D. Pa. 2000) ...................................... 21

*In re Mego Fin'l Corp. Sec. Litig.*,

 213 F. 3d 454 (9th Cir. 2000).................................... 20, 21

*In re Warner Communications Sec. Litig.*,

 618 F. Supp. 735 (S.D. N.Y. 1985).................................. 14, 23, 25

*Jiffy Lube International, Inc. Text Spam Litig.*,

 654 F.3d 935 (9th Cir. Cal. 2011). .................................. 19

*Jones v. GN Netcom, Inc.*,

 11-MD-02261-JM-JMA. .................................. 15

*Klein v. Vision lab Telecomms. Inc.*,

 399 F. Supp. 2d 528 (S.D.N.Y. 2005)........................... 18

*Lemieux v. Schwan's Home Serv.*,

 2013 U.S. Dist. LEXIS 127032 (S.D. Cal. Sept. 5, 2013) ...................... 3

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

*Linder v. Thrifty Oil Co.,*
    23 Cal. 4th 429 (Cal. 2000) ........................................................................ 22

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998) ................................................................... 23

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,*
    671 F. Supp. 819 (D. Mass. 1987) ....................................................... 15, 24

*Malta v. Freddie Mac & Wells Fargo Home Mortgage, Inc.,*
    10-CV-1290 (S.D. Cal. 2010) ................................................................... 20

*National Rural Tele. Coop v. DIRECTV, Inc.,*
    221 F.R.D 523 (C.D. Cal. 2004) ........................................................... 15, 21

*Officers for Justice v. Civil Service Comm'n,*
    688 F.2d 615 (9th Cir. 1982) ................................................................. 14, 16

*Picchi v. World Financial Network Bank,*
    Case No. 11-cv-61797 (Pending in So. Dist. Fl) ........................................ 5

*Radcliffe v. Experian Info. Solutions, Inc.,*
    2013 U.S. App. LEXIS 9126 (9th Cir. Mar. 4, 2013) ............................... 12

*Rodriguez v. West Publishing Corp.,*
    563 F.3d 948 (9th Cir. 2009) ..................................................................... 14

*Sabet v. Olde Discount Corp.,*
    2001 WL 1246860 (Ariz. Sup. Ct. 2001) ................................................. 18

*Sherman v. Yahoo! Inc.,*
    997 F. Supp. 2d 1129, 1136 (S.D. Cal. 2014) .......................................... 23

*Silber v. Mabon,*
    18 F. 3d 1449 (9th Cir. 1994)) ................................................................... 20

*Smith v. Microsoft Corp.,*
    2014 U.S. Dist. LEXIS 12799 (S.D. Cal. Jan. 28, 2014) ........................... 17

*Staton v. Boeing Co.,*
    327 F.3d 938  (9th Cir. 2003) .................................................................... 14

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

*Steinfeld v. Discover Fin. Servs.,*

    2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31, 2014) ......................... 25

*Sylvester v. CIGNA Corp.,*

    369 F. Supp. 2d. 34 (D. Me. 2005) ................................................. 20

*Torrisi v. Tucson Elec. Power Co.,*

    8 F.3d 1370 (9th Cir. 1993).......................................................... 15

*West Virginia v. Chas. Pfizer & Co.,*

    314 F. Supp. 710 (S.D. N.Y. 1970)................................................ 17

*Wilson v. Airborne, Inc.,*

    2008 U.S. Dist. LEXIS 110411 (C.D. Cal. Aug. 13, 2008) ........................ 8

*Wojcik v. Buffalo Bills Inc.*

    8:12-cv-02414-SDM-TBM (M.D. Florida April 17, 2014) ....................... 19

**Statutes**

28 U.S.C. § 1715(b).......................................................................7

47 U.S.C § 227 ....................................................................... 3

47 U.S.C § 227(a)(1) .................................................................. 3

47 U.S.C § 227(b)(1)(A) ........................................................... 3, 23

47 U.S.C § 227(b)(1)(A)(iii) ......................................................... 3

47 U.S.C § 227(b)(3)(B).......................................................... 3, 18

47 U.S.C § 227(b)(3)(C)............................................................. 4

**Rules**

Fed. R. Civ. P. 23  ..............................................................13, 23

Fed. R. Civ. P. 23(a) ................................................................13

Fed. R. Civ. P. 23(b) ................................................................13

Fed. R. Civ. P. 23(b)(3) ...........................................................5, 19

Fed. R. Civ. P. 23(c)(2)(B) ....................................................... 19, 20

Fed. R. Civ. P. 23(e) ................................................................ 3

Fed. R. Civ. P. 23(e)(1)(C)....................................................... 14

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

**Secondary Authorities**

David R. Hodas,

    *Enforcement of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and Their Citizens?* 54 Md. L. Rev. 1552 (1995).. 2

Herbert B. Newberg,

    Newberg on Class Actions ( 4th ed. 2002 & Supp. 2002) ........................... 24

Manual for Complex Litigation,

    § 30.42 (4th ed. 2004) ....................................................................24

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

# I.      INTRODUCTION

Carrie Couser ("Couser" and/or "Plaintiff"), the named Plaintiff in this action entitled, *Carrie Couser v. Comenity Bank, et al.,* No.: 12-cv-02484-MMA-BGS (the "Action"), submits this memorandum in support of the Motion for Final Approval of Class Action Settlement. Defendant Comenity Bank ("Comenity" or "Defendant") does not oppose this motion.

This Settlement provides for significant monetary relief for all the Class Members allegedly harmed by Defendant's alleged violations of the Telephone Consumer Protection Act ("TCPA"), which Settlement merits final approval by the Court. The settlement agreement ("Settlement Agreement" and/or "Agreement" and/or "Agr.") provides for a considerable financial benefit of $8,475,000 ("Settlement Fund") to the approximately 4.4 million Settlement Class Members.[1] The Settlement Fund to be paid by Comenity Bank is an "<u>all-in, non-reversionary payment</u>." Agr. at § 2.20 (emphasis added).

Under the Settlement, each Class Member who timely submitted an approved claim will receive a *pro rata* award from the Settlement Fund. *Id.* at § 5.02. As of March 10, 2015, Kurtzman Carson Consultants, LLC ("KCC" and/or the "Claims Administrator") received 298,947 timely claims, and 8,967 late claims that have been accepted by the Parties. *See* Declaration of Patrick M. Passarella ("Passarella Decl."), ¶ 12, filed concurrently; Declaration of Abbas Kazerounian ("Kazerounian Decl."), ¶ 14, filed concurrently.

Every Class Member had the opportunity to receive a *pro rata* share of the Settlement Fund by: (1) submitting a claim via a toll free number, (2) submitting an online claim via the Settlement Website, or (3) submitting a complete Claim Form, received in the mail or downloaded from the Settlement website, to the Claims Administrator. Agr. § 10.02. The Class Members were informed of the Settlement by Direct Mail notice, Publication Notice, the Long Form Notice posted

---

[1] Defined terms are intended to have their meaning in the Settlement Agreement.

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

on the Settlement Website. *See* Agr. §§ 2.21 and 9.01-9.08.

Due to the economics of individually suing for minimal statutory damages of $500, none of the Class Members would likely be able to obtain such recovery on their own. Currently, after subtracting the attorneys' fees and costs, the incentive award to the Class Representative, and the administrative costs from the Settlement Fund, each of the 298,947 timely claims, as well as the 8,967 late claims that have been accepted by the Parties subject to Court approval, is entitled to a Settlement Check in the amount of approximately $11.37. Passarella Decl., ¶ 16; Declaration of Joshua B. Swigart ("Swigart Decl."), ¶ 14; Kazerounian Decl., ¶ 14.

This Settlement also creates an incentive for Defendant and other businesses to comply with the TCPA, which benefits the Class Members, consumers in general, as well as compliant competitive businesses. *See* David R. Hodas, *Enforcement of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and Their Citizens?*, 54 Md. L. Rev. 1552, 1657 (1995) ("[A]llowing a violator to benefit from noncompliance punishes those who have complied by placing them at a competitive disadvantage. This creates a disincentive for compliance."). This is a good settlement that should be given final approval.

## II.   PROCEDURAL HISTORY

Plaintiff filed the initial Complaint ("Compl.") against Comenity Bank on October 12, 2012. [Dkt. No. 1]. Defendant answered on December 20, 2012. [Dkt. No. 4]. On September 5, 2014, Plaintiff filed a Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class ("Preliminary Approval Motion"). [Dkt. No. 52].

On October 2, 2014, the Court granted preliminary approval of the proposed Settlement (*see* Order Granting Motion For Preliminary Approval Of Class Action Settlement Class ("Preliminary Approval Order"), Dkt. No. 54).

On January 9, 2014, Plaintiff timely filed a Motion for Attorneys' Fees,

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

Costs and Incentive Payment (the "Fee Brief). [Dkt. No. 63]. Concurrently with this filing, Plaintiff files supplemental briefing in support of the Fee Brief. The Fee Brief was filed 30 days prior to the objection deadline so that the Class Members could have a reasonable opportunity to object to the Fee Brief if they so desired.

Pursuant to Rule 23(e), the Plaintiff seeks final certification and approval of the proposed class action settlement, as well as approval of the Fee Brief. Specifically, the Plaintiff requests the Court enter a Final Judgment and Order of Dismissal With Prejudice similar to the proposed order submitted with this motion.

## III.   THE TCPA AND THE CLASS ALLEGATIONS

The TCPA is essentially a strict liability statute. *Alea London Ltd. v. Am. Home Servs.*, 638 F.3d 768, 776 (11th Cir. Ga. 2011). The statute prohibits calls to cell phones using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice without prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii).

Plaintiff alleges that Defendant violated the TCPA by contacting Plaintiff and the Class on their cellular telephones without "prior express consent," using an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1) and prohibited by 47 U.S.C. § 227(b)(1)(A). Compl., ¶¶ 10, 15, 21, 27-30 and 31-34; *see also* Recitals to Agr. On behalf of herself and others similarly situated, Plaintiff asserted two TCPA claims against Defendant. *See* Compl., ¶¶ 27-34. Prior express consent is an affirmative defense to claims under § 227(b)(1)(A)(iii) alleged here. *See Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed. Appx. 598, 600, at fn. 1 (9th Cir. Cal. 2011); *see also Lemieux v. Schwan's Home Serv.*, 2013 U.S. Dist. LEXIS 127032, *18 (S.D. Cal. Sept. 5, 2013).

Plaintiff alleged that Defendant committed negligent violations of the TCPA. Compl., ¶¶ 27-30. For this first claim, on behalf of herself and the putative class, Plaintiff sought $500 per violation and injunctive relief under 47 U.S.C. § 227(b)(3)(B). *Id.* at ¶ 29. For this second claim, Plaintiff sought for herself and the putative class $1,500 per violation and injunctive relief under 47 U.S.C. §

227(b)(3)(B) and § 227(b)(3)(C). *Id.* at ¶ 33.  Defendant answered and denied all of the allegations and liability. *See* Dkt. No. 4; *see also* Recitals to Agreement.

## IV.   SETTLEMENT

In an earnest attempt to settle the Action and avoid the risks inherent in proceeding to trial, the Parties discussed settlement on numerous occasions. As noted by the Preliminary Approval Motion, which was approved by this Court (Dkt. No. 54), the Agreement resulted from extensive arm's length negotiations, including an Early Neutral Evaluation before Magistrate Judge Bernard G. Skomal and three full-day mediations sessions before Hon. Judge Leo S. Papas (Ret.). Dkt. No. 52, 16:2-25; Agr. § 1.03; *see also* Kazerounian Decl., ¶¶ 9-10. Prior to those conferences/mediations, the Parties engaged in both formal and informal discovery surrounding Plaintiff's claims and Defendant's defenses. Agr. § 1.03; *see also* Kazerounian Decl., ¶ 10; Swigart Decl., ¶ 10.  Working independently of the Court, the Parties also participated in direct discussions about possible resolution of this litigation, including numerous telephonic conferences. *Id.* Specifically, Class Counsel engaged in extensive discussions that were necessary to determine the details  surrounding the terms of the potential Settlement. *Id.* As a result, the Parties were able to reach a Settlement. Kazerounian Decl., ¶ 10; Swigart Decl., ¶ 10; Declaration of Todd M. Friedman ("Friedman Decl."), ¶ 10.

The time and effort spent on settlement negotiations,  as well as the time spent with Judge Papas (Ret.) in the settlement process and Magistrate Judge Bernard G. Skomal, militate  in favor of preliminary approval of the proposed Settlement, as they strongly  indicate there was no collusion. *See* Preliminary Approval Order, Dkt. No. 54; *see also* Kazerounian Decl., ¶¶ 9 and 10.  It has been over two years since this Action was filed; the Action was filed October 12, 2012. [Dkt. No. 1]. The efforts of Class Counsel to reach a compromise in the form of a proposed class settlement proved fruitful; after over one year since the case was initially filed, the Parties were able to reach an understanding, the terms of which

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

are memorialized in the Agreement. *See* Kazerounian Decl., ¶¶ 7-10; Swigart Decl., ¶¶ 7-10; Friedman Decl., ¶¶ 7-10.  Plaintiff also took two depositions of Defendant in Ohio as part of confirmatory discovery. Kazerounian Decl., ¶ 10.

## A.    The Fairness Hearing

This motion is being filed thirty days prior to the Fairness Hearing is set for April 20, 2015 at 2:30 p.m. Dkt. No. 54,  ¶ 8.

## B.    Attorneys' Fees, Costs Application, And Incentive Payment

At the Fairness Hearing, the Court will also consider the Fee Brief filed on January 9, 2015 (Dkt. No 63), requesting $2,118,750 in attorneys' fees, which represents 25% of the total Settlement Fund (*id.*; Agr. § 6.01); costs of litigation in the amount of $25,000 (*id.*; Agr. § 6.01); and an incentive payment of $1,500 to the named Plaintiff (*id.*; Agr. § 6.02). *See* Kazerounian Decl., ¶ 12.

The Plaintiff respectfully requests that the Court enter an Order similar to the Final Judgment and Order of Dismissal With Prejudice submitted with this motion, which includes a provision for such requested attorneys' fees, costs, incentive payment, and payment for claims administration.

## C.    Class Action Settlement Terms

The significant terms of the proposed settlement are as follows:

## 1.    Certification of a Fed. R. Civ. P. 23(b)(3) Settlement Class

The Preliminary Approval Order confirmed the following persons are in the Settlement Class:

> All persons whose cellular telephone numbers were called by Defendant, released parties, or a third party dialing company on behalf of Defendant or the released parties, using an automatic telephone  dialing system and/or an artificial or prerecorded voice, without consent, from August 1, 2010 through May 26, 2014, excluding those persons  whose cellular telephone number/s were marked with a "wrong number" code in Defendant's database (which persons are included in the putative  class in *Picchi v. World Financial Network Bank, et al.*, Case No.: 11- CV-61797, currently pending in the Southern District of Florida.)

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

> Excluded from the Class is Defendant, its parent companies, affiliates or subsidiaries, or any employees thereof, and any entities in which any of such companies has a controlling interest; the judge or magistrate judge to whom the Action is assigned; and, any member of those judges' staffs and immediate families, as well as persons who validly request exclusion from the Settlement Class.

*See* Preliminary Approval Order, Dkt. No. 54, at 2:13-23; Agr. § 2.08.

### 2. Settlement Fund

The Settlement establishes a fund of $8,475,000, which Defendant will become obligated to pay if the Settlement gains Final Approval. Agr. § 2.20. Payments from the Settlement Fund are in the form of a *pro rata* settlement check ("Settlement Check"), which will be mailed to each of the Class Members who made a valid and approved claim. Agr. § 5.02; *see* Passarella Decl., ¶¶ 15 and 17. Class Members who made an untimely claim, but otherwise provided all the appropriate information by March 10, 2015 (Kazerounian Decl., p. 7, n.1), upon Court approval, will also receive a *pro rata* share of the Settlement Fund. Kazerounian Decl., ¶¶ 14, and 25-26: *see also* Passarella Decl., ¶¶ 12, 15 and 17.

Each of the 298,947 Class Members that submitted a timely and valid claim, as well as the 8,967 Class Members that submitted late yet accepted claims upon Court approval, will receive a Settlement Check in the amount of approximately $11.37. Passarella Decl., ¶¶ 12 and 17; Kazerounian Decl., ¶¶ 14 and 36. KCC will send the Settlement Checks via U.S. mail no later than thirty (30) days after the Judgment has become final ("Effective Date"), as provided under the Agreement. Agr. § 11.02. Each Settlement Check will be negotiable for one 180 days after it is issued. *Id.* Any funds not paid out as the result of un-cashed Settlement checks shall be paid out as a *cy pres* award, to a recipient to be agreed to by the Parties and approved by the Court, as set forth in § 8.05(f) of the Agreement.

///

///

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

## V.   ACTIVITY IN THE CASE AFTER PRELIMINARY APPROVAL

The Claims Administrator's compliance is described below.

### A.   CAFA Notice

The CAFA notice was mailed on September 15, 2014 by KCC, in compliance with 28 U.S.C. § 1715(b). Passarella Decl., ¶ 6.

### B.   Direct Mail Notice Provided

KCC complied with the notice procedure set forth in the Preliminary Approval Order (Dkt. No. 54, ¶ 9). As required by the Preliminary Approval Order, KCC mailed individual postcard notices (Exhibit B to Passarella Decl.) by direct mail to the settlement Class Members that included a summary of the Settlement's terms and instructions for making a claim. Passarella Decl., ¶ 10. The direct mail notice also informed the Class Members of the Settlement Website address (http://www.CouservComenitySettlement.com) and the Claims Administrator's toll-free telephone, where Class Members could obtain further information about the Settlement and also make a claim. *See id*. at ¶ 7.

As part of the preparation for mailing, all names and addresses contained in the Class were processed against the National Change of Address ("NCOA") database, maintained by the United States Postal Service ("USPS"), for purposes of updating and confirming the mailing addresses of the Class Members before mailing the Notice postcard. *See id*. at ¶ 8. To the extent an updated address for an individual identified as a Class Member was found in the NCOA database, the updated address was used for the mailing of the Notice Packet. *Id.* From the Defendant's list of approximately 4.4 million potential Class Members provided by Defendant to KCC (Agr. § 8.02), 3,982,645 Class Members were identified by KCC and sent direct mail notice. *See* Passarella Decl., ¶¶ 7, 8 and 11.

As of March 11, 2015, 199,703 postcards were returned as undeliverable. *Id.* at ¶ 11.  Of the 199,703 returned postcards 125,489 postcards were re-mailed to appropriate addresses. *Id.* Additionally, 7,657 postcards were returned as

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

1  undelivered, but containing a forwarding address. Passarella Decl., ¶ 11. Of the

2  76,57 postcards returned with forwarding address, 7,378 postcards were promptly

3  re-mailed to the appropriate forwarding address. *Id*. Only approximately 1.6% of

4  the total Class Members (i.e., 69,662 out of the estimated 4.4 million potential

5  Class Members) did not successfully receive the direct mail notice of the

6  Settlement. *Id*. at ¶ 12. Looked at another way, approximately 90.5% of the Class

7  Members for whom address information was known (3,982,645 of est. 4.4 million)

8  were sent direct mail notice (*see id*. at 10), which satisfies due process. *See e.g.,*

9  *Wilson v. Airborne, Inc*., 2008 U.S. Dist. LEXIS 110411, *13-14 (C.D. Cal. Aug.

10  13, 2008) (court granted final approval of settlement where measurements used to

11  estimate notice reach suggested that 80% of adults learned of the settlement).

12  **C.   Publication Notice**

13  To provide notice to the Class Members for whom there are no names and

14  addresses, KCC gave notice of the Settlement by national publication in USA

15  Today. Agr. § 9.03; Passarella Decl., ¶ 9 (Exhibit A thereto). This notice

16  summarized the Settlement, advised the Class Members on how to file claims and

17  directed Class Members to the Settlement Website for further information about

18  the Settlement. Agr. § 9.03; Kazerounian Decl., ¶ 20. Thus, Class Members also

19  received notice via national publication.

20  **D.   Formal Notice Posted On The Settlement Website**

21  In compliance with the Preliminary Approval Order, KCC posted on the

22  Settlement Website the detailed and full notice in a question and answer format

23  (*see* Exhibit C to Passarella Decl.), which explained the case, the proposed

24  settlement and each Class Members' options regarding the proposed settlement.

25  *See* Passarella Decl., ¶ 5.  Among other things, the website contains the Complaint,

26  Settlement Agreement, the Preliminary Approval Order, the Fee Brief, the toll free

27  number and a downloadable claim form. *See* Passarella Decl. at ¶ 8. The

28  Settlement Website provided notice of the proposed Settlement to the Class

Members, in addition to the Direct Mail Notice.

### E.    Claims Procedure, Including Expenses, And Claims Filed

All Class Members were provided no less than 90 days to make a claim for a Settlement payout. Kazerounian Decl., ¶ 23; Swigart Decl., ¶ 23; *see also* Passarella Decl., ¶¶ 10 and 14; Agr. § 2.05.  The procedure for submitting a claim was made as easy as possible – a claim form could be submitted online via the Settlement Website, by U.S. Mail, or by calling the toll-free number. *See* Agr. § 10.02. Class Members were provided with a claim form (Exhibit B to Passarella Decl.) with the Direct Mail Notice, which was also available to be downloaded from the Settlement Website. *See* Passarella Decl., ¶¶ 5 and 7; Kazerounian Decl., ¶¶ 24; Swigart Decl., ¶ 24.

All that was required was the Class Member's full name, the Claim Identification Number assigned to each Direct Mail Notice, if available, and the telephone number allegedly called by Defendant. *Id.* at § 10.03; *see also* Kazerounian Decl., ¶ 21; Swigart Decl., ¶ 21.  If the claimant's cellular telephone number matched the cellular telephone number on the Notice Database or Class List generated from Defendant's records, that claim would be approved, subject to the limitation that only one claim would be paid to each settlement Class Member.[2] *Id.* If a settlement Class Member submitted a claim and qualified for a monetary payment, he or she was a "Qualified Class Member," except as necessary to resolve issues related to denied Settlement Claims pursuant to Section 11.01 of the Agreement, or to evaluate requests for exclusion and/or respond to objections. *Id.*

In total, KCC received 307,914 valid and timely claims from the Class Members (which includes 8,967 late claims accepted by the Parties subject to Court approval). Passarella Decl. ¶ 12; Kazerounian Decl., ¶ 14; Swigart Decl., ¶ 14.  This equates to a claims rate of 7.7% from the 3,982,645 Class Members that were sent the Direct Mail Notice. Passarella Decl., at ¶ 12.

---

[2] Class Members were permitted to make one claim per cell number. Agr. § 10.01.

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

For the period of August 1, 2010 to September of 2012, data regarding Defendant's calls using its dialer was purged.[3] However, based on Defendant's policies and procedures of calling delinquent accounts, Defendant estimates with 95% accuracy that it called Class Members who had delinquent accounts on their cell phone during Class Period but prior to September of 2012; Defendant does not know whether all of such cell phone numbers were in fact called using its dialer. *See* Exhibit E, 23:15-24:5, 38:2-5, 45:23-46:14; 72:25-73:20, 74:2-75:13, 75:17-76:21, 78:19-22.[4] Those persons, who were sent a claim form with a Claim ID, and returned the claim form completed, are entitled to make a claim, as they are likely part of the group for which dialer information was purged.

There were 62,622 claims that were made via mail with a Claim ID where the cell phone number provided did not match the dial list provided to the Claims Administrator by Defendant. *See* Passarella Decl., ¶ 12.  Those claims are most likely part of the group of persons for whom the data was purged in terms of the outbound dial list, and they should be paid a pro rata award from the Settlement. *See* Kazerounian Decl., ¶ 21.  Defendant created the total universe of cell phone numbers by adding the purged group of approximately 2.3 million with the group called after September of 2012, which was a little over 2 million. Exhibit E, 47:13-21, 79:18-80:6, 82:11-83:1.[5]

KCC will issue compensation in the form of the Settlement Checks to the Qualified Class Members within 30 days of the Effective Date, i.e., the date when the Judgment has become final as provided in Section 14.01 of the Agreement. Agr. § 11.02; *see also* Kazerounian Decl., ¶ 28; Swigart Decl., ¶ 28. If any Settlement Checks are returned, the Claims Administrator shall attempt to obtain a new mailing address for that Settlement Class Member by taking the steps

---

[3] Defendant maintained data for dialer calls after September of 2012. Exhibit E, 47:13-21, and 82:12-15.

[4] Exhibits are to the Declaration of Abbas Kazerounian unless otherwise stated.

[5] Defendant has address information for 95% of the Class. Exhibit E, 39:9-40:2.

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

described in Section 9.01 of the Agreement; if, after a second mailing, the Settlement check is again returned, no further efforts need be taken by the Claims Administrator to resend the check. *Id.* Each Settlement check will be negotiable for 180 days after it is issued. *Id.*

### 1.   Zero Objections and Only 167 Requests For Exclusion

Class Members were permitted to opt-out or to file an objection. *See* Agr. § 12.01; Kazerounan Decl., ¶ 29; Swigart Decl., ¶ 29; *see also* Passarella Decl., ¶ 14. KCC has received five Objections and 167 timely Requests for Exclusion. Passarella Decl., ¶ 14. However, all five objections have since been withdrawn and the objectors have requested exclusion from the Settlement. Kazerounian Decl., ¶¶ 29 and 30; Passarella Decl., ¶ 14; *see also* Dkt. Nos. 64, 76, 77, 78 and 79. Consequently, there are no objections to the Settlement. The deadline to submit a Request for Exclusion or Object was February 9, 2014. Passarella Decl., ¶ 14.

The low number of opt-outs (167 of est. 4.4 million) highly supports the adequacy of the proposed Settlement. *Id. See In re Diamond Foods, Inc.*, 2014 U.S. Dist. LEXIS 3252, *9 (N.D. Cal. Jan. 10, 2014) ("Also supporting approval is the reaction of class members to the proposed class settlement. After 67,727 notices were sent to potential class members, there have been only 29 requests to opt out of the class and no objection to the settlement or the requested attorney's fees and expenses.").

### 2.   Settlement Checks

The net Settlement Fund available to pay Class Members is $3,501,081.52, which was determined by subtracting the anticipated Class Representative incentive award of $1,500.00, Class Counsels' requested fees of $2,118,750, Class Counsels' litigation expenses of $25,000, and the Settlement Administration costs (actual costs of $2,828,668.48; estimated to be $2,092,278) from the Settlement Fund. Passarella Decl., ¶ 17; Kazerounian Decl., ¶ 36; Swigart Decl., ¶ 36; Friedman Decl., ¶ 36. Based on the available net Settlement Fund and the 298,947

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

valid and timely claims, as well as the 8,967 late yet accepted claims subject to Court approval, this equates to each Claimant receiving approximately $11.37. Passarella Decl., ¶ 16; Kazerounian Decl., ¶ 36.

### 3.   Class Representative's Incentive Payment

Pursuant to the Agreement and the Preliminary Approval Order, and subject to Court's final approval, Defendant has agreed that the Plaintiff may be paid from the Settlement Fund an incentive award of up to $1,500, in recognition of Plaintiff's service as the Class Representative. Agr. § 6.02; *see also* Preliminary Approval Order, Dkt. No. 52, at ¶ 11. The Court should approve the $1,500 incentive payment to compensate Plaintiff for her time and efforts in litigating this case on behalf of the Class because it is in in line with the Ninth Circuit's directive/s in *Radcliffe v. Experian Info. Solutions, Inc*., 2013 U.S. App. LEXIS 9126 (9th Cir. Mar. 4, 2013).   Plaintiff Couser's efforts in this litigation are outlined in Plaintiff's declarations filed at Dkt. Nos. 52-9 and 63-11. *See also* Declaration of Carrie Couser ("Couser Decl."), ¶ 3,  filed concurrently.

### 4.   Attorneys' Fees and Costs

The Agreement permits Class Counsel to file an application for attorneys' fees, not to exceed 25% of the Settlement Fund (the benchmark in the Ninth Circuit is 25%, *Hanlon*, 150 F.3d at 1029), as well as litigation costs to be paid from the Settlement Fund, not to exceed $25,000. Agr. § 6.01. That amount of Attorneys' fees requests ($2,118,750) and litigation costs ($25,000) sought to date by Class Counsel is explained in more detail in Plaintiff's Fee Brief (*see* Dkt. No. 63) and the supplemental briefing. The Court should approve the award of the requested attorneys' fees and costs to compensate Class Counsel for their time and efforts in litigating this case on behalf of the Class and the named Plaintiff, having obtained good results for the Class. *See* Kazerounian Decl., ¶¶ 16, 17 and 36; ¶¶ 16, 17 and 36. This is especially true where the actual costs incurred by Class Counsel exceed $25,000, and is $32,560.79 as of March 13, 2015. *See*

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

Kazerounian Decl., p. 7, n.1. Much of these additional expenses were incurred in addressing objections by some of the Class Members, which included taking the deposition of one objector in California and one in New York, and meetings with counsel for two other objectors. *See* Kazerounian Decl., ¶¶ 10 and 29.

### 5. Administrator's Expenses For Notice and Administration

Defendant has agreed to pay all costs of notice and claims administration from the Settlement Fund. *See* Agr. § 8.03; Passarella Decl., ¶ 17. The total claims administration costs are $2,828,664.48. Passarella Decl., ¶ 17.

## VI. THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED

The Court has already preliminarily found the requirements of Fed. R. Civ. P. 23 are satisfied. *See generally*, Preliminary Approval Order, Dkt. No. 54. The relevant factors demonstrate that the proposed Settlement should be finally approved as fair, reasonable and adequate.

### A. The Settlement Satisfies The Requirements of Fed. R. Civ. P. 23

The Rule 23(a) and (b) factors were previously analyzed and applied by the Parties in their Joint Motion for Preliminary Approval (*see* Dkt. Nos. 52). As the Court ruled in its Preliminary Approval Order, this case satisfies the Fed. R. Civ. P. 23 requirements. *See* Preliminary Approval Order, Dkt. No. 54, at ¶ 4.

Since preliminary approval, Plaintiff has continued to serve as an adequate Class Representative by reviewing documents and submitting declarations in support of motions, including the present motion; and Plaintiff supports final approval of the proposed settlement. *See* Couser Decl., ¶¶ 3, 4, 7 and 8. Moreover, Class Counsel have also continued to adequately represent the interests of the Class Members and the named Plaintiff, having, among other things, timely filing the Fee Brief on January 9, 2015 (Dkt. No. 63), addressing objections, and assisting with settlement administration. Kazerounian Decl., ¶¶ 10 and 29.

///

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

## B.     The Settlement Should Be Finally Approved By The Court

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco,* 688 F.2d 615, 623 (9th Cir. 1982). "The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C).  The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998).

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir. 2003). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice,* 688 F.2d at 625.  The Court must balance against the continuing risks of litigation and the immediacy and certainty of a substantial recovery. *See Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975); *In re Warner Communications Sec. Litig.,* 618 F. Supp. 735, 741 (S.D. N.Y. 1985).

The Ninth Circuit has long supported settlements reached by capable opponents in arms' length negotiations.  In *Rodriguez v. West Publishing Corp.,* 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressed the opinion that courts

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

should defer to the "private consensual decision of the [settling] parties." *Id.* at 965, citing *Hanlon*, 150 F.3d at 1027 (9th Cir. 1998).   The district court must exercise "sound discretion" in approving a settlement. *See Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981). However, "where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc*., 671 F. Supp. 819, 822 (D. Mass. 1987); *In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 15174, *6 (S.D. Cal. Jan. 23, 2012) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.") (citing *Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

Application of the relevant factors here confirms that the proposed settlement should be finally approved. Notably, this Settlement was reached with the assistance of experienced mediator Hon. Judge Leo Papas (Ret.), which shows a lack of collision between the Parties. *See Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 948 (9th Cir. Cal. 2011). Based on the facts of this case, Class Counsel and the named Plaintiff agree that this settlement is fair and reasonable; among other things, the settlement will avoid costly and time-consuming additional litigation and the need for trial. Swigart Decl., ¶¶ 13, 17, 18, and 36; Kazerounian Decl., ¶¶ 13, 17, 18, and 36; Friedman Decl., ¶¶ 13, 17, 18, and 36; Couser Decl., ¶¶ 5, 7 and 8.

### 1.   The Strength of The Lawsuit And The Risk, Expense, Complexity, And Likely Duration of Further Litigation

Defendant has raised numerous defenses to the class claims.  *See* Recitals to Agr.; *see also* Defendant's Answer, Dkt. No. 4. Defendant contends that its defenses have merit and would defeat the claims of the putative class. *Id*. Defendant specifically disputes that it placed any calls to Plaintiff or the putative

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

class members without their consent and that it violated the TCPA, or that Plaintiff and the putative class members are entitled to any relief from Defendant. *See* Recitals to Agr., at § 1.02; Exhibit E, 40:19-22. Additionally, Defendant contends that the current Action would not be amenable to class certification, if class certification were sought be Plaintiff and opposed by Defendant. *Id.* If successful, this would present a substantial risk that the class members would receive nothing. However, settlement eliminates any further risk and expense for the Parties.

Considering the potential risks and expenses associated with continued prosecution of the Action, the probability of appeals by both sides from any significant orders on the merits or class certification, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation and the presence of an arbitration agreement, the proposed settlement is fair, reasonable, and adequate. *See* Recitals to Agr.; Swigart Decl., ¶¶ 16, 16 and 17; Kazerounian Decl., ¶¶ 13, 16 and 17; *see also* Course Decl., ¶¶ 5 and 7. As the Ninth Circuit has made clear, the very essence of a settlement agreement is compromise, "a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . ." *Officers for Justice*, 688 F.2d at 624.

### a.   *Presence of an arbitration agreement*

The presence of an arbitration clause in the cardholder agreements (which includes a class action waiver, Exhibit F (COM 000062) for many of the Class Members (Exhibit E, 43:23-44:9) presents a major risk in seeking class certification and successfully litigating the action in a court of law. *See Boyd v. Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 162880, *14 (C.D. Cal. Nov. 18, 2014) ("[c]ertain class members signed arbitration or severance agreements that Defendant could attempt to enforce, potentially reducing the size of the class. *Id.* It is not clear that

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

the Plaintiff could have maintained its class status through trial. The Settlement protects the class from these additional risks."). Despite the presence of the arbitration agreement, Defendant has agreed to a Settlement Fund of $8,475,000.

**b.** ***Some courts in this District have denied motions for class certification in TCPA cases***

While Class Counsel believe strongly in the merits of the claims brought on behalf of the Class (*see* Agr. § 3.02), they also recognize that any case encompasses risks and that settlements of contested cases are preferred in this circuit (*id.* at 3.03). For example, the courts in this district have denied motions for class certification of TCPA actions. *See Smith v. Microsoft Corp.*, 2014 U.S. Dist. LEXIS 12799, *2 (S.D. Cal. Jan. 28, 2014); *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 579 (S.D. Cal. Oct. 29, 2013). Even if Plaintiff were to prevail at trial, risks to the class remain. *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D. N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

"Courts have split on class certification in TCPA cases, increasing the risk of maintaining the class action through trial." *Arthur v. Sallie Mae, Inc*., 2012 U.S. Dist. LEXIS 132413, *4 (W.D. Wash. Sept. 17, 2012). One court has assumed "the average TCPA case carries a 43% chance of success," *In re Capital One Telephone Consumer Protection Act Litigation*, MDL No. 2416, p. 37 (N.D. Ill. Feb. 12, 2015) [Exhibit H]. This factor weighs in favor of granting final approval.

**c.** ***Trial would present risks to both parties***

Importantly, the real possibility of losing at trial makes this settlement an acceptable compromise. "If this case were to proceed without settlement, the resulting litigation would be complex, lengthy and expensive. The Settlement eliminated a substantial risk that the Class would walk away empty-handed after

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

trial." *Sabet v. Olde Discount Corp.*, 2001 WL 1246860, at *3 (Ariz. Sup. Ct. 2001) (Steinle, J.) (internal citations omitted.)

### 2.   The Amount Offered In Settlement

The Agreement requires Defendant provide a Settlement Fund of $8,475,000. Agr. § 2.20.  Each valid and approved claim is entitled to a *pro rata* share of the Settlement Fund, after administrative costs, an incentive award to the Class Representative, and attorneys' fees and cost are deducted. Agr §§ 5.02, 6.01, 6.02 and 8.03; Kazerounian Decl., ¶ 14; Swigart Decl. ¶ 14. This is a non-reversionary settlement. Agr. 2.20.  Uncashed checks will be distributed to a *cy pres* recipient to be approved by the Court. *See id.* at 11.02.

Each of the 298,947 timely claimants, as well as the 8,967 late claimants whose claims have been accepted by the Parties as of March 10, 2015 and will be counted subject to Court approval, is entitled to a Settlement Check in the amount of approximately $11.37. *See* Passarella Decl., ¶¶ 12 and 16; Kazerounian Decl., ¶¶ 14, 25 and 26. This payment is a significant win for Class Members who only had to take a few minutes to submit a claim, either online, by mail or by telephone. Agr. § 10.02. As a breakdown of the method of claims submission, 275,488 claims were received by mail, 7,891 by toll-free number, and 47,765 via the Settlement Website. Passarella Decl., ¶ 12.  Class Members were able to avoid the time, expense and risk associated with bringing their own individual TCPA action, where they could at most receive an award of $500 per negligent violation (47 U.S.C. § 227(b)(3)(B)), with no provision for recovery of attorneys' fees (*Klein v. Vision lab Telecomms. Inc.*, 399 F. Supp. 2d 528, 542-43 (S.D.N.Y. 2005)).

The relief afforded to the Class Members here is in line with the relief given in other similar TCPA class settlements. *See Arthur v. Sallie Mae, Inc.*, C10-0198-JLR (W.D. Wash.) (Class members were to receive between $20 and $40 dollars per claim).[6]  In *Adams v. AllianceOne Receivables Management, Inc.*, 08-CV-

---

[6] *See Rose v. Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 121641, *31 (N.D. Cal.

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

0248-JAH-WVG, Dkt. No. 115 and 137 (S.D. Cal.), class members received up to $40 per claim in a TCPA settlement.

In particular, and unlike *Jiffy Lube*, this Settlement provides actual cash value to the recovering Class Members.  In *Jiffy Lube International, Inc. Text Spam Litigation*, 11-MD-02261-JM-JMA, Judge Miller authorized and finally approved a similar TCPA class settlement where each class member received a single voucher for an oil change, valued at $20.00 – final approval was granted on February 20, 2013 (Exhibit A to Kazerounian Decl.).  The Court in *Wojcik v. Buffalo Bills Inc*., No. 8:12-cv-02414-SDM-TBM, Dkt. No. 79 (M.D. Florida August 25, 2014) recently finally approved a settlement in a TCPA action with a gift card value of $57.50 to $75.00 for each class member, redeemable at Buffalo Bills stores. [Exhibit B]. However, here, the Settlement provides for an actual cash recovery of approximately $11.37 instead of a gift card that could only be used at a certain chain of stores.

In *Bellows v. NCO Fin. Sys*., 07-CV-1413-W-CAB (S.D. Cal.), Judge Whelan finally approved a TCPA class action settlement on December 22, 2008, (Dkt. No. 38) where only 29 class members submitted a claim, each entitled to a $70.00 settlement payment, amounting to a total payment from the $950,000 settlement fund to class members of $2,030. Exhibit C to Kazerounian Decl.  Here, there were 307,257 Class Members that submitted an approved claim to their pro rata share of the Settlement Fund.

Those persons not in the Class could not file a claim for a monetary payment, but will also benefit from the Settlement because the Settlement will serve as a deterrent to future violations of the TCPA. *See* Kazerounian Decl., ¶ 24.

///

///

///

2014), referring to the amount per claim in the *Arthur* settlement.

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

### 3.    Class Members were provided with the best notice possible, which afforded them an opportunity to choose whether to participate in the Settlement

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice practicable" under the circumstances.  Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18 F. 3d 1449, 1454 (9th Cir. 1994).  Final approval of the Settlement should be granted with an approximately 7.7% of the Class Members who were sent a direct mail notice submitting a valid claim, which is a high claims rate. This is especially the case when considering the terrific notice provided to the Class Members, i.e., 98.3% of the Class Members with known addresses successfully received direct mail notice (3,912,983 of 3,982,645). *See* Passarella Decl., ¶¶ 10-11.

This is a consumer case and consequently subject to lower claims rates than other types of cases. *See e.g.*, *In re Mego Fin'l Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000); *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d. 34, 44 (D. Me. 2005) (Signal, C.J.) ("'Claims made' settlements regularly yield response rates of 10 percent or less.")). However, this case is exceptional, as similar settlements typically yield a claims rate of 1 to 3%. *See Malta v. Freddie Mac & Wells Fargo Home Mortgage, Inc.*, No. 10-CV-1290 (S.D. Cal. 2010) (claims rate of approximately 3% in TCPA class settlement, finally approved on June 21, 2013); *Barani v. Wells Fargo Bank, N.A.*, 12-cv-02999-GPC-KSC, Dkt. No. 32 (S.D. Cal. Mar. 6, 2015) (finally approving TCPA class action settlement where only 1.18% of the class members filed a claim). Moreover, in *Hoffman v. Bank of America, N.A.,* No. 3:12-cv-00539-JAH-DHB (S.D. Cal.), a call recording case finally approved by Judge Houston on November 6, 2014, only 916 of the 1,454,181 class members filed claims for a pro rate amount of a settlement fund of $2,600,000, representing a claims rate of a fraction of 1%. Exhibit D to Kazerounian Decl. Therefore, a claims rate of 7.7% is excellent for this type of settlement.

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

It is well-settled that a proposed settlement may be accepted where the recovery represents a fraction of the maximum potential recovery. *See e.g.*, *Nat'l Rural Tele. Coop v. DIRECTV, Inc.*, 221 F.R.D 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of strength of the claims"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving a settlement that comprised one-sixth of plaintiffs' potential recovery).

After removing duplicate mailing addresses and missing, incomplete or invalid data, the Claims Administrator identified 3,982,645 Class Members from the approximately 4.4 million potential Class Members identified by Defendant's records (explained above). *See* Passarella Decl., ¶¶ 7-8, and 10. Accordingly, Class Counsel, through KCC, sent Direct Mail notice to approximately 90.5% of the 4.4 million Class Members with known addresses (*see id.* at ¶ 10), which was excellent notice and the best notice practicable for the Class Members. Publication Notice was also available through a national edition of USA Today. *Id.* at ¶¶ 5 and 11.

Furthermore, the claims process was easily achieved, as claimants could make a claim by submitting a claim through the Settlement Website, by U.S. mail, or via the toll-free telephone number. Agr. § 10.02. All that was required was the Class Member's full name, the Claim Identification Number assigned to each Direct Mail Notice, if available, and the telephone number allegedly called by Defendant. *Id.* at § 10.03; *see also* Kazerounian Decl., ¶ 24; Swigart Decl., ¶ 24. Class Members were also required to affirm lack of prior express consent to be called under penalty of perjury. *See* Dkt. No. 52-3, Ex. A; Kazerounian Decl., ¶ 24.

As the court held in *Beecher v. Able*, 441 F. Supp. 426, 429 (S.D. N.Y.

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

1977), where a much smaller number of claims were made in a class action than expected, "[i]n such circumstances, the settlement agreement should not lightly be set aside merely because subsequent developments have indicated that the bargain is more beneficial to one side than to the other."  Moreover, as the *Linder* Court explained, "…it is firmly established that the benefits of certification are not measured by reference to individual recoveries alone. Not only do class actions offer consumers a means of recovery for modest individual damages, but such actions often produce several salutary by-products, including a therapeutic effect upon those [entities] who indulge in [illegal] practices, aid to legitimate business enterprises by curtailing illegitimate [conduct], and avoidance to the judicial process of the burden of multiple litigation involving identical claims." *Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 445 (Cal. 2000) (internal quotations omitted).

Regardless of the number of claims, either potential or submitted, the Defendant was required to pay $8,475,000 to settle the Action. Agr. § 2.20. Each valid claimant here is entitled to a *pro rata* share from the Settlement Fund. In the context of the facts surrounding this Action, such an amount represents a significant value, especially when considering the realistic range of recovery for a single class member where maximum statutory damages for a negligent violation is only $500 without any provision for recovery of attorney's fees, and the presence of an arbitration agreement for account holders. Moreover, this payment, and the expense of defending this Action, would likely discourage any future behavior that could potentially violate the TCPA. As a consequence, the Court should finally approve the amount offered in this settlement as fair and reasonable.

### 4.    The Extent of Discovery Completed

The proposed Settlement is the result of intensive arms-length negotiations over many months, including an Early Neutral Evaluation Conference and a telephonic Case Management Conference before Magistrate Judge Bernard G. Skomal. Agr. § 1.03; Kazerounian Decl., ¶ 9.  The parties also engaged in three (3)

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

full-day mediation sessions before Hon. Judge Leo Papas (Ret.). *Id*. Prior to those conferences, the Parties engaged in both formal and informal discovery surrounding Plaintiff's claims and Defendant's defenses. Class Counsel also took two deposition of Defendant pursuant to Fed. R. Civ. P. 30(b)(6) in Columbus, Ohio. *Id.* The Parties also participated in direct discussions about possible resolution of this litigation, including numerous telephonic conferences, which ultimately resulted in a general understanding of the Settlement terms. Kazerounian Decl., ¶¶ 8 and 10. After reaching an agreement in principle, Class Counsel engaged in extensive discussions necessary to determine the details surrounding the Settlement. *Id.* at ¶ 10.

The important information needed in these cases is how many cell phones were contacted during the Class Period and what types of consent Defendant was relying upon. This information was obtained through both formal and informal discovery. *See* Recitals to Agr § 1.03. Thus, the litigation here had reached the stage where "the parties certainly have a clear view of the strengths and weaknesses of their cases." *Warner Communications*, 618 F. Supp. at 745. Considering that two of the main disputed issues between the Parties are legal (i.e., Did Defendant obtain consent to make the calls?; and is a class action maintainable under Fed. R. Civ. P. 23?), and not factual in nature, the Parties have exchanged sufficient information to make an informed decision about settlement. *See Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1239 (9th Cir. 1998). The alleged used of an ATDS (47 U.S.C. § 227(b)(1)(A)) to place the calls is a factual question for a jury that presents a risk to both sides. *See Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 1129, 1136 (S.D. Cal. 2014).

## 5. The Experience And Views of Class Counsel

"The recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this action is fully warranted because

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

the settlement is the product of arm's length negotiations conducted by capable, experienced counsel. *See M. Berenson Co.*, 671 F. Supp. at 822; *Ellis*, 87 F.R.D. at 18 ("that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); 2 *Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual for Complex Lit.,* Fourth § 30.42.

Here, it is the considered judgment of experienced counsel that this settlement is a fair, reasonable and an adequate settlement of the litigation. *See* Swigart Decl., ¶ 16; Kazerounian Decl., ¶ 16; Friedman Decl., ¶ 16. Class Counsel are experienced consumer class action lawyers. *See* Dkt. Nos. 63.  Notably, Judge Curiel, in recently finally approving the TCPA settlement in *Barani*, rstated, "[a]ll of the attorneys for the plaintiffs are very seasoned, between the Kazerouni Law Group and Hyde & Swigart, in handling not only class actions but specifically class actions under the TCPA." Exhibit G.

This Settlement was negotiated at arms' length by experienced and capable Class Counsel who now recommend its approval. *See* Recitals to Agr. §§ 1.03 and 1.04; Swigart Decl., ¶¶ 10 and 16; Kazerounian Decl., ¶¶ 10 and 16. Moreover, the Settlement was reached after the assistance of both Judge Leo S. Papas (Ret.) and Magistrate Bernard G. Skomal. *Id.* at § 1.03.  Given their experience and expertise, Class Counsel are well-qualified to not only assess the prospects of a case, but also to negotiate a favorable resolution for the class. Swigart Decl., ¶ 39; Kazerounian Decl., ¶ 39; Friedman Decl., ¶ 39. Class Counsel have achieved such a result here in this TCPA class action, and unequivocally assert that the proposed Settlement should receive final approval. Swigart Decl., ¶ 16; Kazerounian Decl., ¶ 16; Friedman Decl., ¶ 16.

### 6.   The Reaction of Class Members To The Settlement

The fact that there are now zero objections, and only 167 requests for exclusion (*see* Exhibit D to Passarella Decl., ¶ 14) from the estimated 4.4 million Class Members (*see id.*), is important in evaluating the fairness, reasonableness

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

and adequacy of the settlement – which supports approval of the settlement. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *Warner Communications*, 618 F. Supp. at 746. *See also Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855, *21 (N.D. Cal. Mar. 31, 2014) (only specific objections or comments from 9 class members, and 239 out of the approximately 8 million class members chose to opt out). Some of the Class Members filed a letter with the Court regarding the Settlement (Dkt. Nos. 60 and 66); however, these letters are not understood by Class Counsel to constitute an objection to the Settlement. Kazerounian Decl., ¶ 35. Thus, there has been virtually no resistance to the Settlement. Kazerounian, ¶ 36.  Further, the Class Representative supports the motion.  Couser Decl., ¶ 8.

## VII.   CONCLUSION

In sum, the Parties have reached this Settlement following extensive arms' length negotiations, including with the assistance of both Judge Leo S. Papas (Ret.) and Magistrate Judge Bernard G. Skomal.  The Settlement is fair and reasonable to the Class Members who were afforded notice that complies with due process.  For the foregoing reasons, Plaintiff respectfully requests that the Court:

- Grant final approval of the proposed settlement;
- Order payment from the settlement proceeds in compliance with the Court's Preliminary Approval Order and the Agreement;
- Grant the Motion For Attorney's Fees, Costs and Incentive Payment;
- Enter the proposed Final Judgment and Order of Dismissal With Prejudice submitted herewith; and,
- Retain continuing jurisdiction over the implementation, interpretation, administration and consummation of the Settlement.

Dated: March 20, 2015                    **KAZEROUNI LAW GROUP, APC**
                                         By: /s/ Abbas Kazerounian
                                             ABBAS KAZEROUNIAN, ESQ.

KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626

**HYDE & SWIGART**

Joshua B. Swigart, Esq. (SBN: 225557)

josh@westcoastlitigation.com

2221 Camino Del Rio South, Suite 101

San Diego, CA 92108

Telephone: (619) 233-7770

Facsimile: (619) 297-1022

*Attorneys for Plaintiff*

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

Todd M. Friedman, Esq. (SBN: 216752)

tfriedman@attorneysforconsumers.com

324 S. Beverly Dr., #725

Beverly Hills, CA 90212

Telephone: (877) 206-4741

Facsimile: (866) 633-0228

*Attorneys for Plaintiff*