**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Jason A. Ibey Esq. (SBN: 284607)
jason@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Attorneys for the Plaintiff and Proposed Settlement Class

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CARRIE COUSER, Individually and on Behalf of All Others Similarly Situated,**<br><br>PLAINTIFF,<br><br>V.<br><br>**COMENITY BANK,**<br><br>DEFENDANT. | **Case No.:** 12-cv-02484-MMA-BGS<br><br>**DECLARATION OF TODD M. FRIEDMAN IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date:** April 20, 2015<br>**Time:** 2:30 p.m.<br>**Place:** 3A<br>**Judge:** Hon. Michael M. Anello |

# DECLARATION OF TODD M. FRIEDMAN

**I, TODD M. FRIEDMAN, declare:**

1. I am one of the attorneys for the plaintiff in this action, Carrie Couser ("Ms. Couser" or "Plaintiff"). I am an attorney licensed to practice law in the State of California since 2001, the State of Illinois since 2002, and the State of Pennsylvania since 2011. I have been continuously licensed in California since 2001, Illinois since 2002, and Pennsylvania since 2011, and am in good standing with the California State Bar, Illinois State Bar, and Pennsylvania State Bar. I have litigated cases in both state and federal courts in California and Illinois. I am also admitted in every Federal district in California and have handled federal litigation in the federal districts of California.

2. The declaration is based upon my personal knowledge, except where expressly noted otherwise.

3. I submit this declaration in support of the Plaintiff's Motion for Final Approval of Class Action Settlement.

## SUMMARY OF CASE HISTORY AND SETTLEMENT

4. I have been involved in every aspect of this case from inception through the present.

5. Carrie Couser brought this matter to the attention of Class Counsel, and a Complaint was filed in this Court on October 12, 2012.

6. Plaintiff's counsel initiated a thorough investigation, and conducted relevant factual and legal research regarding the merits of the case. The information learned through this investigation was invaluable during settlement negotiations.

7. The Settlement, which is a result of a highly contested action, and which has been pending for over two years, is the result of intensive arms-length

negotiations.

8. Defendant highly contests Plaintiff's allegations in the Complaint. *See* Defendant's Answer, Dkt. No. 4; *see also*, Recitals to Agr. (Dkt. No. 52-3). Specifically, Defendant denies that it placed any calls to Plaintiff or the putative class without their prior express consent. Accordingly, Defendant denies that it violated the TCPA, or that Plaintiff and Putative Class are entitled to any relief. Additionally, Defendant contends that the current Action would not be amenable to class certification, if class certification were sought be Plaintiff and opposed by Defendant.

9. An Early Neutral Evaluation Conference was held on February 1, 2013, before Magistrate Judge Bernard G. Skomal (Dkt. No. 9). The parties also participated in a telephonic Case Management Conference before Magistrate Judge Bernard G. Skomal (Dkt. No. 12).

10. This class action Settlement is in large part a result of the Parties' good faith efforts during mediation. The Parties participated in three full days of mediation before the Honorable Judge Leo S. Papas (Ret.). The Parties also engaged in both formal and informal discovery surrounding Plaintiff's claims and Defendant's defenses. Specifically, Plaintiff served, and Defendant responded to, written confirmatory discovery, with both Interrogatories and Requests for Production of Documents. Additionally, Class Counsel took two Fed. R. Civ. P. 30(b)(6) depositions of a representative of Comenity Bank (one on January 21, 2014 in Columbus, Ohio, and another on August 21, 2014 in Columbus, Ohio), which conformed the efficacy of the processes and methodology used by Comenity Bank to assemble the data and determining the estimated number of Class Members.

11. After reaching an agreement in principle, the parties also engaged in extensive discussions that were necessary to determine the details

surrounding the Settlement, including numerous telephonic conferences.

12. As a result of these negotiations among the parties, the Parties were able to reach an understanding, the terms of which are memorialized in this Settlement Agreement (*see* Dkt. No. 52-3).

13. The class action Settlement reached provides for substantial financial benefit to the Class Members, especially in light of the substantial risk of recovering nothing if the Court were not to grant class certification and the presence of an arbitration agreement. Specifically, the Settlement provides for a Class benefit in the maximum amount of $8,475,000 ("Settlement Fund") (Agr. § 2.20), for the approximately 4.4 million potential Class Members based on Defendant's records.

14. According to the Claims Administrator, there are 331,144 claimants, which includes 298,947 timely and valid claims and 8,967 late claims (through March 10, 2015 only) that the Parties agreed to approve despite being late subject to Court approval. After subtracting the administrative costs ($2,828,668.48), an anticipated incentive awarded to the Class Representative ($1,500), requested attorneys' fees ($2,118,750) and costs ($25,000) from the Settlement Fund of $8,475,000, each claiming should receive a Settlement check in the amount of approximately $11.37.

15. The Settlement provides that the attorneys' fees (up to 25% of the Settlement Fund) and litigation costs up to $25,000 (Agr. § 6.01), the notice and claims administration expenses (*id.* at § 8.03), and an incentive award to Class Representative ($1,500) (*id.* at § 6.02) will be paid from the Settlement Fund. The Attorneys' fees ($2,118,750) and litigation costs ($25,000) requested are explained in more detail in Plaintiff's Fee Brief (Dkt. No. 63) and supplemental briefing. The Settlement Administration costs of $2,828,668.48 (originally estimated to be $2,092,278) are discussed in more detailed the Declaration of Patrick M. Passarella from KCC,

("Claims Administrator" and/or "KCC") in Support of Motion for Final Approval ("Passarella Decl."); however, it is my understanding that the increase is a direct result of a much larger than anticipated claims rate.

16. In my opinion, the Settlement merits Court approval. Taking into account the burdens, uncertainty and risks inherent in class action litigation, including but not limited to an arbitration agreement with a class action waiver, the Parties have concluded that further prosecution and defense of this action could be protracted, unduly burdensome, and expensive, and that it is desirable, fair, and beneficial to the class that the action now be fully and finally compromised, settled and terminated in the manner and upon the terms and conditions set forth in the Agreement.

17. The named Plaintiff and all of her counsel believe that the claims asserted in the Action have merit. However, taking into account the risks of continued litigation, as well as the delays and uncertainties common in TCPA class action litigation, Class Counsel believe that it is desirable that the Action be fully and finally compromised, settled and terminated now with prejudice, and forever barred pursuant to the terms and conditions set forth in this Agreement. Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable and adequate to the proposed class, and that it is in the best interests of the proposed class to settle the Action. I believe, as each Plaintiff's attorney, that the Settlement should be given final approval.

18. Therefore, Class Counsel is requesting that the Court grant Final Approval of the Settlement, especially following Preliminary Approval (Dkt. No. 54).

## NOTICE GIVEN

19. For the details involved in giving the notice, and administering the claims procedure, and the claims received, see Passarella Declaration, filed concurrently.

20. I am informed that from the Class List of approximately 4.4 million potential Class Members (*see* Agreement, § 5.04) according to Defendant's records provided to the Claims Administrator, Kurtzman Carson Consultants, LLC ("KCC"), successfully identified 3,982,645 Class Members. Accordingly, KCC sent Direct Mail Notice to 3,982,645 Class Members, which equates to approximately 90.5% of the estimated 4.4 million potential Class Members. I am also informed that KCC gave notice of the Settlement by national publication in USA Today. This notice summarized the Settlement, advised the Class Members on how to file claims and directed Class Members to the Settlement Website for further information about the Settlement.

21. I am also informed that as of March 11, 2015, 199,703 postcards were returned as undeliverable. Of the 199,703 returned postcards, 125,489 postcards were re-mailed to appropriate addresses. Additionally, 7,657 postcards were returned with a forwarding address. Of the 7,657 postcards returned with forwarding address, 7,378 postcards were promptly re-mailed to the appropriate forwarding address. Therefore, only approximately 1.6% of the Class Members (i.e., 69,662 out of an estimated 4.4 million potential Class Members did not successfully receive the direct mail notice of the Settlement.

22. The summary notice instructed all persons how to submit a claim with the Claims Administrator by: (i) filing a claim online at the Settlement Website, (ii) by submitting a written claim by U.S. Mail, which was sent with the direct mail notice or was also downloadable from the Settlement Website, or (iii) by making a claim via the toll free telephone number. The summary notice also directed Class Members to the Settlement Website to obtain complete information regarding the case and class settlement. The Settlement Website contained the notices, the claim form, the Settlement

Agreement and Release, the toll-free number (where a claim could also be made), the Complaint, preliminary approval order, and all the papers supporting Class Counsel's motion for fees and costs.

## CLAIMS PROCEDURE

23. The Class Members were provided no less than 90 days to make a claim for a settlement payout.

24. The Claims Administrator put in place a simple, easily followed claims procedure agreed upon in the Settlement Agreement. A claim form could be submitted online, by U.S. Mail, or by calling the toll-free number. *See* Agr. § 10.02. All that was required was the Class Member's full name, the Claim Identification Number assigned to each Direct Mail Notice, if available, and the telephone number allegedly called by Defendant. Class Members were also required to affirm lack of prior express consent to be called under penalty of perjury. Class Members were provided with a claim form with the Direct Mail Notice, which was also available to be downloaded from the Settlement Website.

25. If the claimant's cellular telephone number matches the cellular telephone number on the Notice Database or Class List generated from Defendant's records, that claim will be approved, subject to the limitation that only one claim will be paid to each settlement Class Member per cellular telephone number.

26. Additionally, if a claimant received, completed and returned a claim form (with a Claim ID) to the Claims Administrator, even if the cellular telephone number did not appear on the Class List, that claim will be approved, also subject to the limitation that only one claim will be paid to each settlement Class Member per cellular telephone number. Since Defendant had purged data regarding calls made through its dialer prior to September of 2012, according to deposition testimony from Daniel Gervais,

Defendant did not have an outbound dial list for calls to Class Members prior to that date, yet those persons are still Class Members. Such persons were sent a postcard notice and claim form with a unique Claim ID based upon address information provided by Defendant for persons likely to have been called by Defendant using its dialer, and based upon Defendant's claimed policies and procedures to call persons with delinquent accounts by such means.

27. If a Settlement Class Member submits a claim and qualifies for a monetary payment, he or she is a "Qualified Class Member," except as necessary to resolve issues related to denied settlement Claims pursuant to Section 11.01 of the Agreement, or to evaluate requests for exclusion and/or respond to objections.

## CLAIMS FILED AND PAYMENT TO BE MADE

28. There were a total of 331,144 claims, which includes 298,947 timely and valid claims and 8,967 late claims that the Parties agreed to accept subject to Court approval.[1] This equates to a participation rate of approximately 7.7% of the 3,982,645 Class Members that were sent the Direct Mail Notice. Upon final approval, it is my understanding that KCC will issue compensation in the form of the Settlement Checks to the claiming Class Members within 30 days of the Effective Date, i.e., the date when the Judgment has become final as provided in Section 14.01 of the Agreement. Agr. § 11.02. If any Settlement checks are returned, the Claims Administrator shall attempt to obtain a new mailing address for that Settlement Class Member by taking the steps described in Section 9.01 of the Agreement; if, after a second mailing, the Settlement check is again returned, no further efforts need be

---

[1] The Parties agreed upon March 10, 2015 as the cut-off date for the late claims that were to be accepted, as well as four late requests for exclusion.

FRIEDMAN DECL. IN SUPP. OF MTN. FOR
FINAL APPROVAL OF SETTLEMENT                7                CASE NO.: 12-cv-02484-MMA-BGS

taken by the Claims Administrator to resend the check. Each Settlement check will be negotiable for 180 days after it is issued.

## OPT OUTS AND OBJECTIONS

29. Class Members were permitted to opt-out or to file an objection. *See,* Agr. §§ 12.01 and 12.02. KCC has received 167 timely requests for exclusion (opt-outs), which includes four late opt-outs that the Parties have agreed to accept subject to Court approval. Five Class Members submitted an objection to the Settlement. However, all five objections have since been withdrawn, which means there are no objections to the Settlement. Plaintiff's attorneys took the deposition of two of the objectors, one in San Francisco, California, and the other in the State of New York, prior to these two individuals deciding to withdraw their objection from the Settlement. Additionally, Class Counsel met with counsel for two of the objectors prior to those objectors deciding to withdraw their objections to the Settlement.

30. Each of the five objectors requested, and were permitted to, exclude themselves from the Class.

31. The deadline to submit a Request for Exclusion or Object was February 9, 2015.

32. The Fee Brief was filed 30 days prior to the deadline to object or opt-out of the Class.

33. I believe that the very low number of opt-outs, 167 from the approximately 4.4 million potential Class Members, highly supports the adequacy of the proposed Settlement.

34. Letters were submitted by some of the Class Members, however, these letters do not appear to Class Counsel to be an objection to the Settlement. The letter filed at Dkt. No. 60 by Sophia Delucia requested additional compensation from Settlement in light of personal circumstances, but did not include language of an objection to the fairness or adequacy of the

Settlement as a whole. Also, the letter filed at Dkt. No. 66 by Donald Richards concerned seeking assistance with filing a claim form.

35. Therefore, I believe that, overall, the Class Members have responded very favorably to the Settlement.

## ADEQUACY OF SETTLEMENT

36. This is a statutory damages case, and I believe that this Action will have a deterrent effect on Defendant and similar businesses. The Agreement provides for a maximum benefit of $8,475,000 to the Class Members, which is a significant sum of money in terms of TCPA class action settlements. The Net Settlement Fund available to pay Class Members is $3,501,081.52, which was determined by subtracting the anticipated Class Representative incentive award ($1,500.00), Class Counsels' requested fees ($2,118,750), Class Counsels' litigation expenses ($25,000), and the Settlement Administration costs of $2,828,668.48 from the $8,475,000 Settlement Fund. Based on the available net Settlement Fund and the 307,257 valid claims (which includes the 8,967 late claims that were also accepted by the parties subject to Court approval), this equates to each Qualified Class Member receiving a Settlement payment of approximately $11.37.

37. As a result, in my opinion, based upon the many years of experience in civil litigation and several years of experience in litigating class actions (including TCPA class actions), and based upon the facts of this case, the number of class members, and the other circumstances, I believe this settlement, with an approximately 7.7% claims rate (307,914 of 3,982,645), is fair and reasonable. Therefore, I believe the settlement merits Court approval.

38. Those persons not in the Class could not file a claim for a monetary payment, but I believe they will also benefit from the Settlement because

the Settlement will likely serve as a deterrent to future violations of the TCPA.

## CLASS COUNSEL EXPERIENCE

39. I have outlined my experience in the Declaration of Todd M. Friedman in Support of Motion for Award of Attorney's Fees, Costs and Incentive Payment to be heard at the same time as this motion (Dkt. No. 63-9), as well as supplemental briefing, and I will not be repeating it here for sake of brevity.

I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on March 20, 2015.

By: /s/ Todd M. Friedman
    Todd M. Friedman