# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARRIE COUSER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COMENITY BANK,<br><br>Defendant. | Case No.: 12cv2484-MMA (BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S UNOPPOSED MOTION FOR CY PRES DISTRIBUTION**<br><br>[Doc. No. 96] |

On October 12, 2012, Plaintiff Carrie Couser filed this putative class action alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*. *See* Doc. No. 1. Plaintiff now moves the Court for approval of *cy pres* distribution of remaining settlement funds to certain beneficiaries. *See* Doc. No. 96. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion.

## BACKGROUND

This action is premised on allegations that Defendant contacted Plaintiff on her cellular telephone in an attempt to collect an alleged debt owed by Plaintiff's mother. Plaintiff alleges that Defendant used an automatic telephone dialing system to place multiple calls to her each day, and that she incurred charges for incoming calls. The Parties ultimately entered into a settlement agreement and on May 27, 2015, the Court granted final approval of the class action settlement ("the Settlement"). *See* Doc. No. 91.

For the purposes of settlement, the Court certified the following Settlement Class:

> All persons whose cellular telephone numbers were called by Defendant, released parties, or a third party dialing company on behalf of Defendant or the released parties, using an automatic telephone dialing system and/or an artificial or prerecorded voice, without consent, from August 1, 2010 through May 26, 2014, excluding those persons whose cellular telephone number/s were marked with a "wrong number" code in Defendant's database (which persons are included in the putative class in *Picchi v. World Financial Network Bank, et al.,* Case No.:11-CV-61797, currently pending in the Southern District of Florida).
> Excluded from the Class is Defendant, its parent companies, affiliates or subsidiaries, or any employees thereof, and any entities in which any of such companies has a controlling interest; the judge or magistrate judge to whom the Action is assigned; and, any member of those judges' staffs and immediate families, as well as persons who validly request exclusion from the Settlement Class.

*See* Doc. No. 91.

Further, as part of the Settlement, Defendant was required to establish a non-reversionary Settlement Fund in the amount of $8,475,000.00. After costs and fees were distributed, the Net Settlement Amount was to be distributed *pro rata* to Class Members who had submitted valid and approved claims. Pursuant to the Settlement, the Claims Administrator was to mail Settlement Checks to those Class Members, and any funds not paid out as a result of un-cashed[1] Settlement Checks would be paid as *cy pres* awards to recipients to be agreed upon by the Parties, and upon Court approval. *See* Doc. No. 91.

Now, Plaintiff moves for Court approval of *cy pres* distribution of the remaining balance of the Settlement Fund, which amounts to approximately $871,549.69.[2] *See* Doc. No. 96. Specifically, Plaintiff requests that the balance be divided equally and distributed

---

[1] Claimants were required to cash Settlement Checks within 180 days.
[2] This amount was calculated as of March 8, 2017, and includes earned interest. *See* Doc. No. 96.

to: (1) New Media Rights; (2) Consumer Federation of California; (3) Public Justice Foundation; and (4) Bet Tzedek Legal Services. Defendant Comenity Bank does not oppose this motion.[3]

### LEGAL STANDARD

"[T]he '*cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries.'" *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Nachshin v. AOL, LLC,* 663 F.3d 1034, 1036 (9th Cir. 2011)). "[A] district court should not approve a *cy pres* distribution unless it bears a substantial nexus to the interests of the class members," meaning that the distribution "must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Id.* (citing *Nachshin*, 663 F.3d at 1036); *see also Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990) (setting aside district court's *cy pres* application where distribution to the chosen recipient organization would have "benefit[ed] a group far too remote from the plaintiff class").

### DISCUSSION

Here, "[t]he purpose of the TCPA is to 'protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers.'" *Aboudi v. T-Mobile USA, Inc.*, No. 12CV2169 BTM NLS, 2015 WL 4923602, at *5 (S.D. Cal. Aug. 18, 2015) (quoting *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009)). In enacting the TCPA, Congress sought to protect people from unsolicited, automated phone calls because they cause a nuisance and constitute invasions of privacy. *See Cabiness v. Educ. Fin. Sols.*, LLC, No. 16-CV-01109-JST, 2016 WL 5791411, at *6 (N.D. Cal. Sept. 1, 2016); *Satterfield v.*

---

[3] In fact, Plaintiff's counsel declares under penalty of perjury that Defendant agreed to the four proffered beneficiaries. *See* Doc. No. 96-2, Decl. of Abbas Kazerounian.

*Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

Keeping in mind the foregoing, the Court discusses each of the proffered *cy pres* beneficiaries and their nexus to class interests and TCPA claims in turn below.

### 1. New Media Rights

New Media Rights ("NMR") is a program of California Western School of Law committed to "consumer privacy work." *See* Decl. of Art Neill, Doc. No. 96-3. *Cy pres* funds, if approved, would "support pro bono preventative privacy related legal services for consumers, nonprofits, technology entrepreneurs, and creators across the United States." *See* Decl. of Art Neill. The program "provide[s] direct legal education and services to consumers," including "assisting internet users in understanding their rights regarding unwanted text messages, emails, and phone calls under the TCPA and related privacy laws." *See* Decl. of Art Neill. NMR also advises "technology startups, nonprofits, creators and other small enterprises on how to comply with privacy laws in a consumer friendly way." *See* Decl. of Art Neill. NMR also provides this type of information on its "heavily trafficked" website. In the past, NMR has "drafted recommendations regarding the TCPA and other consumer privacy concerns" to as a member of the Federal Communications Committee's Consumer Advisory Committee. Art Neill, the executive director and founder of NMR, provides specific examples of recommendations the program has made to the FCC, which directly address the TCPA. *See* Decl. of Art Neill.

Based on NMR's previous and current commitment to issues of consumer privacy rights and in particular, the statutory scheme at issue in this action, distribution to NMR would "account for the nature of [Plaintiff's] lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *See Lane*, 696 F.3d at 819. Further, despite that the program is headquartered in San Diego, the program clearly has nationwide impact. *Cf. Nachshin*, 663 F.3d 1034, 1040 (disapproving of *cy pres* distribution in part because the settlement class was nationwide yet "two-thirds of the donations [would] be made to local charities in Los Angeles"). Accordingly, distribution

to NMR is appropriate.

2. *Consumer Federation of California*

According to the executive director of CFC, Richard Holober, the Consumer Federation of California ("CFC") is "a non-profit consumer advocacy organization" which "work[s] to improve state and federal consumer protection laws." *See* Decl. of Richard Holober, Doc. No. 96-4. The organization has advocated for enactment of a financial privacy law, and legislation protecting against identify theft. CFC has also advocated for the protection of cellular phone users' Customer Proprietary Network Information, and "led the fight that stopped a 2015 attack on California's two party consent law for recording or monitoring cellular phone conversation." *See* Decl. of Richard Holober. Further, CFC has testified in regulatory proceedings in support of "restricting insurer access to a motorist's confidential automobile's transponder data," and sponsored a law preventing "rent to own companies from secretly placing spyware on rental computers." *See* Decl. of Richard Holober. CFC has also had a hand in enacting legislation regarding the privacy of information concerning the online activities of public school students, limitations on the usage of toll collection data, limitations on the usage of sensitive passenger information by transportation companies, and legislation regarding California's Confidentiality of Medical Information Act.

While CFC may advocate for worthy causes, the Court is bound by Ninth Circuit precedent requiring that those causes be aligned with class members' interests and the litigation's underlying claims. The TCPA guards against the nuisance and costs of unwanted telephone calls—regardless of the purpose of the call, or any information potentially gathered during that call. CFC's focus appears to be primarily on privacy of information and how certain information is used, rather than on the privacy of individuals from unwelcome contact.[4] Further, Mr. Holober does not state for what purpose the *cy*

---

[4] The Court is also unpersuaded that the sole fact that CFC has previously "joined in a letter to the FCC . . . seeking to maintain the strong protections of the TCPA" sufficiently establishes the requisite nexus.

*pres* funds would be used. Accordingly, based on the declaration provided, the Court cannot be reasonably certain that distribution to CFC would "(1) address the underlying statute[], (2) target the plaintiff class, or (3) provide reasonable certainty that any member will be benefited." *See Nachshin*, 663 F.3d at 1040. The Court declines to approve *cy pres* distribution to CFC.

### 3. *Public Justice Foundation*

"Public Justice PC pursues high impact lawsuits to combat social and economic injustice, protect the Earth's sustainability, and challenge predatory corporate conduct and government abuses." *See* Decl. of F. Paul Bland, Doc. No. 96-5, ¶ 3. The Public Justice Foundation, a non-profit "charitable membership organization," "supports Public Justice PC's cutting-edge litigation and educates the public about critical public interest issues." *See* Decl. of F. Paul Bland, ¶ 4. Both organizations have their headquarters in Washington, D.C. Public Justice has litigated "issues that are central to the enforcement of the [TCPA]," such as whether "an unaccepted offer of judgment to the named class representative [rendered moot] a class action." *See* Decl. of F. Paul Bland, ¶ 6. Also, Public Justice "filed an amicus brief in *Spokeo, Inc. v. Robins*, No. 13-1339, 2016 U.S. LEXIS 3046 (May 16, 2016)," regarding "Article III challenges to standing in privacy injury cases." *See* Decl. of F. Paul Bland, ¶ 6. Further, Public Justice "provides assistance and information on a pro bono basis to individuals and attorneys who represent individuals and classes who have been harassed by violators of the TCPA," and holds educational events regarding "issues involving challenges to abuses of mandatory arbitration clauses (a major defense in many privacy injury cases)." *See* Decl. of F. Paul Bland, ¶ 7. The executive director of both organizations, F. Paul Bland, declares under penalty of perjury that *cy pres* funds will be used "to further [the organizations'] consumer protection advocacy and education efforts nationwide." *See* Decl. of F. Paul Bland, ¶ 9.

Distribution to the Public Justice Foundation bears a sufficiently "substantial nexus to the interests of the class members," particularly based on the organizations' focus on

issues related to enforcement of the TCPA, such as current Article III standing issues, and assistance to those whose rights under the TCPA may have been violated. *See Lane*, 696 F.3d at 819. Accordingly, the Public Justice Foundation is sufficiently "tethered to the nature of the lawsuit and the interests of the silent class members," such as their interest in redressing violations of the TCPA in federal courts. *See Nachshin*, 663 F.3d at 1039. Further, Public Justice's work benefits consumers nationwide. Thus, the Court approves distribution of *cy pres* funds to the Public Justice Foundation.

    4.    *Bet Tzedek Legal Services*

Lastly, Plaintiff requests the Court approve *cy pres* distribution to Bet Tzedek Legal Services in Los Angeles. Bet Tzedek "is a non-profit legal services program that provides free legal services primarily to low-income residents of Southern California." *See* Doc. No. 96-6, Decl. of Gus T. May, ¶ 4. Gus T. May, the legal director at Bet Tzedek, states that the organization represents clients "in numerous legal areas," such as elder law, (specifically, elder financial abuse), real estate fraud, consumer fraud, debtor's rights, debt counseling, housing and government benefits, employment law, (specifically, wage theft), human trafficking, and "tax problems resulting from fraud against our clients." *See* Decl. of Gus T. May, ¶ 7.

Based on this information, the Court declines to approve *cy pres* distribution to Bet Tzedek. Again, while the organization may support noble causes, *cy pres* beneficiaries must have more than a tenuous connection to the Class and litigation. *See Lane*, 969 F.3d at 821 (stating that in *Nachshin* and *Six (6) Mexican Workers*, "the connection between the cy pres recipients and the absent class members" was "too tenuous"). Here, based on Mr. May's declaration, Bet Tzedek's work appears to be insufficiently related to the absent Class Members' interests and the purpose of the TCPA. The organization provides legal services in a wide variety of areas, the majority of which are unrelated to the invasion of privacy interests contemplated by the TCPA. Also, Bet Tzedek admittedly predominately serves residents of Los Angeles, further diminishing the likelihood that any Class Member in the nationwide Class would indirectly benefit from

the *cy pres* distribution. *See Six (6) Mexican Workers*, 904 F.2d at 1308 (stating that *cy pres* "distribution of unclaimed funds" is meant to "indirectly benefit the entire class"); *see Nachshin*, 663 F.3d at 1040 ("The cy pres distribution also fails to target the plaintiff class, because it does not account for the broad geographic distribution of the class."). Lastly, Mr. May does not describe for what specific purpose the funds would be used for. *See* Decl. of Gus T. May, ¶ 9 (stating only that the funds, if approved, "will directly support these vital legal services"). Unfortunately, for the reasons stated above, the Court declines to approve *cy pres* distribution to Bet Tzedek.

## CONCLUSION

In sum, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for approval of *cy pres* distribution as set forth above, and further **ORDERS** that:

1. New Media Rights and Public Justice Foundation are designated the *cy pres* beneficiaries of the remaining balance of the settlement fund and must share equally in the *cy pres* award; and
2. Kurtzman Carson Consultants, LLC, the claims administrator, must promptly distribute the *cy pres* award to New Media Rights and Public Justice Foundation in equal amounts.

**IT IS SO ORDERED.**

Dated: May 26, 2017

Hon. Michael M. Anello
United States District Judge